UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADVANCED ACCESS CONTENT SYSTEM
LICENSING ADMINISTRATOR, LLC,

          Plaintiff,

v.

LANNY SHEN d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., SUNREG
TECHNOLOGIES LTD. d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., FENG TAO
d/b/a DVDFAB AND FENGTAO SOFTWARE
INC., SHEN XINLAN d/b/a AUDIO-DVD
CREATOR, and JOHN DOE, JANE DOE and/or
XYZ COMPANY d/b/a DVDFAB, RIPPERBLU-
RAY.COM, DVDFABB.COM and
DVDFFAB.COM,

          Defendants.

Civil Action No.
14 Civ. 1112 (VSB)

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO
AMEND INJUNCTION
PURSUANT TO RULE 59(e)**

---

        Defendant Feng Tao d/b/a Fengtao Software, by his undersigned attorneys, submits this memorandum of law and the accompanying Declaration of Nancy J. Mertzel in support of Feng Tao's motion to amend the Order entered March 4, 2014 (Docket #21) granting a preliminary injunction (the "Injunction") to clarify that it does not apply extraterritorially.

## FACTUAL BACKGROUND

        Counts I and II of the Complaint purport to assert claims for violations of Sections 1201(a)(2) and 1201(b) of the Digital Millennium Copyright Act ("DMCA"). The Complaint alleges that certain products sold by defendants violate plaintiff's rights under

the DMCA. The Complaint alleges, upon information and belief, that defendants "are located and operate in China" (¶ 20), and that defendants "promote the DVDFab Software globally and expansively." (¶ 22) The Complaint further alleges that defendants offer, provide and traffic in DVDFab Software "throughout the world." (¶ 23)

Plaintiff's motion papers also indicate that defendants offer products other than the DVDFab Software, such as DVD Copy, DVD Ripper, DVD Creator, Blu-ray Creator, Video Converter, and 2D to 3D Converter (the "Unrelated Products"). See Declaration of Nancy Mertzel in Support of Motion to Amend Injunction, Exhibit 3 (Exhibit A of Declaration of Matthew Hewlett in Support of Motion for Preliminary Injunction, page 4).

Based upon plaintiff's allegations, and the facts set forth in plaintiff's moving papers, the Court granted plaintiff's motion for a preliminary injunction, and issued the Injunction.

Paragraph 2(a) of the Injunction prohibits those named from engaging in Circumventing Activities (defined therein).[1] On its face, the prohibition is not limited to Circumventing Activities in connection with the United States. As such, the provision appears to apply to activities that have no connection with the United States.

Paragraph 3 of the Injunction prohibits Defendants from conducting or participating the Circumventing Activities "through any website, social media or social networking site or service, or other online service or platform, or through any offline means" without regard to whether such sites, services or platforms have any connection

---

[1] Paragraph 2(a) prohibits those named from "manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof capable of circumventing the AACS Technology – including but not limited to: i) DVDFab Blu-ray Ripper (3D plus); ii) DVDFab Blu-ray Copy; iii) DVDFab Blu-ray to DVD Converter; iv) DVDFab HD Decrypter; v) Passkey for Blu-ray; and vi) Passkey Lite (collectively, the "DVDFab Software") (the "Circumventing Activities").

2

with the United States. On its face, the prohibition is not limited to Circumventing Activities in connection with the United States. As such, it appears to apply to activities that have no connection with the United States.

Paragraph 4 of the Injunction orders Defendants to "disable and cease use of the DVDFab Domain Names, the DVDFab Websites, and the social media or online service accounts associated with, and any pages, profiles, or channels located at, the following URLs: facebook.com/dvdfab, twitter.com/DVDFabber, youtube.com/user/dvdfabber and plus.google.com/+dvdfabber (the "DVDFab Social Media Accounts"). On its face, the provision is not limited to activities in connection with the DVDFab Software or the United States. As such, the provision appears to apply to use in connection with the Unrelated Products, and to activities that have no connection with the United States.

Paragraph 5 of the Injunction orders domain name registries and/or registrars to "temporarily disable" the DVDFab Domain Names, and "make them inactive and non-transferable" pending further order from the Court. On its face, the provision is not limited to use of the DVDFab Domain Names for activities in connection with the DVDFab Software or the United States. As such, the provision appears to apply to use of the DVDFab Domain Names in connection with the Unrelated Products, and to activities that have no connection with the United States.

Paragraph 6 of the Injunction orders third party service providers, including payment processors, to "cease or disable providing such services to: a) Defendants in relation to the DVDFab Software and/or any other products or services that circumvent the AACS Technology; and b) any and all of the DVDFab Domain Names, the DVDFab Websites and DVDFab Social Media Accounts." On its face, the provision is not limited to provision of services in connection with the United States. As such, the provision appears to apply to activities that have no connection with the United States.

## ARGUMENT

### I. RULE 59(E) PERMITS MODIFICATION OF THE INJUNCTION

This Court has authority to modify the Injunction pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which provides for "[a] motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). Further, "an 'interlocutory order granting a preliminary injunction is a judgment within the meaning of the rule 4(a)(4) provision relating to a motion under Rule 59 to alter or amend the judgment." *Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 400 (2d Cir. 2000).

Rule 59(e) requires that a motion to alter or amend a judgment be filed no later than 28 days after entry of the judgment. Here, the Injunction was entered on March 4, 2013 (Docket #21), so the motion is timely. Fed. R. Civ. P. 59(e).

It is within this Court's discretion whether to modify the injunction. *Weight Watchers Intern., Inc. v. Luigino's*, Inc. 423 F.3d 137, 141 (2d Cir. 2005) ("[t]he decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction."). As set forth below, the Injunction should be modified because of it applies extraterritorially.

### II. UNITED STATES COPYRIGHT LAW DOES NOT APPLY EXTRATERRITORIALLY

It is well-established that the Copyright Act does not apply extraterritorially. As Justice Ginsberg noted last year, "The Copyright Act, it has been observed time and again, does not apply extraterritorially." *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S.Ct. 1351, 1376 (2013), Ginsberg, J. dissenting (citations omitted). *See* 7 Patry on Copyright, § 25:88 ("Acts committed overseas are never governed by the U.S. Copyright Act because the Act is not extraterritorial.").

4

This principle is consistent with the presumption that United States laws in general do not apply extraterritorially. The Supreme Court reiterated this principle just a few years ago in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S.Ct. 2869, 2877 (2010):

> It is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) *(Aramco)* (quoting *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949)). This principle represents a canon of construction, or a presumption about a statute's meaning, rather than a limit upon Congress's power to legislate, see *Blackmer v. United States*, 284 U.S. 421, 437, 52 S.Ct. 252, 76 L.Ed. 375 (1932). It rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign matters. *Smith v. United States*, 507 U.S. 197, 204, n. 5, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993). Thus, "unless there is the affirmative intention of the Congress clearly expressed" to give a statute extraterritorial effect, "we must presume it is primarily concerned with domestic conditions." *Aramco, supra,* at 248, 111 S.Ct. 1227 (internal quotation marks omitted). The canon or presumption applies regardless of whether there is a risk of conflict between the American statute and a foreign law, see *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173–174, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993). When a statute gives no clear indication of an extraterritorial application, it has none.

The Second Circuit recognized that the former Copyright Act does not apply extraterritorially nearly sixty years ago. "Then too the rule that we are adopting is in harmony with the settled law that a copyright has no extra-territorial effect. Until we have a uniform international law of literary property, it will be much more convenient to determine the effect of each act by the law of the place where the right of property is sought to be exercised." *Capitol Records v. Mercury Records Corp.*, 221 F.2d 657, 662 (2d Cir. 1955) (internal citations omitted).

Applying this doctrine, the Second Circuit affirmed a final judgment on copyright damages for performances of the show Jesus Christ Superstar, finding that the

court "properly excluded the Canadian performances." *Robert Stigwood Group Ltd. v. O'Reilly v. Contemporary Mission Inc.*, 530 F.2d 1096, 1101 (2d Cir. 1975) ("Copyright laws do not have extraterritorial operation.").

The same is true under the current Copyright Act. *See Well Made Toy Mfg. Corp. v. Lotus Onda Industrial Co., Ltd.*, 2003 WL 42001, at *5 (S.D.N.Y. Jan. 6, 2003) ("Infringing acts which take place entirely outside of the United States are not actionable under United States copyright laws. A finding of direct infringement under United States copyright law must be based, at least in part, on a predicate infringing act in the United States.").[2]

The Ninth Circuit has also recognized that the Copyright Act does not apply extraterritorially. In its *en banc* decision in *Subafilms, Ltd. v. MGM-Pathe Comm. Co.*, the court vacated a permanent injunction on the grounds that the Copyright Act does not apply extraterritorially, holding as follows:

> The "undisputed axiom" that the United States' copyright laws have no application to extraterritorial infringement predates the 1909 Act. There is no clear expression of congressional intent in either the 1976 Act or other relevant enactments to alter the preexisting extraterritoriality doctrine. Indeed, the *Peter Starr* court itself recognized the continuing application of the principle that "infringing actions that take place entirely outside the US are not actionable in US federal courts."

*Subafilms, Ltd. v. MGM-Pathe Comm. Co.*, 24 F.3d 1088, 1095-1096 (9th Cir. 1994) (internal citations omitted).

Accordingly, courts have limited injunctions to the United States. *See Danjaq LLC v. Sony Corp.*, 1998 WL 957053 (C.D.Cal. July 29, 1998), *aff'd* 165 F.3d 915

---

[2] The *Well-Made Toy* decision was issued in the context of a motion to dismiss for lack of subject matter jurisdiction. However, courts have subsequently recognized that limitations on the extraterritorial reach of statutes should be considered an ingredient of the claim, rather than an issue of subject matter jurisdiction. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006); *Lauritzen v. Larsen*, 345 U.S. 571 (1953).

(9th Cir. 1998) ("the scope of the injunction must be limited to Defendants' domestic activities."). *See also CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d. 1070, 1079 (N.D.Cal. Sept. 4, 1998) ("There appear to be no reported cases, however, in which the extraterritorial manufacture and distribution of infringing products was *enjoined* on the basis of copyright infringement occurring within the United States... Accordingly, the injunction will apply only to infringing activity occurring within the United States.").

Courts have recognized an exception to this basic principle when part of an act occurs in the United States. *See Sheldon v. MGM Pictures Corp.*, 106 F.2d 45 (2d Cir. 1939) (profits obtained from unauthorized copies of a copyrighted film shown overseas, where the negatives were produced in America, took the form of property whose situs was the US and therefore our law seized upon them and imposed upon them a constructive trust). For example, in *Richard Feiner and Co., Inc. v. BMG Music Spain*, 2003 WL 740605, at *2 (S.D.N.Y. Mar. 4, 2003) the court explained that "an exception exists where the defendant commits a predicate act of infringement within the U.S." "For the exception to apply, a plaintiff must show that the conduct (1) took place in the United States and (2) was in violation of the Copyright Act." *Roberts v. Keith*, 2009 WL 3572962, at *4 (S.D.N.Y. Oct. 23, 2009). Plaintiff has not alleged or shown any basis for application of this exception. With regard to sales that take place wholly outside of the United States, plaintiff has not alleged or shown a predicate act of infringement in the United States sufficient to warrant extraterritorial application of the Copyright Act.[8] Accordingly, as discussed more fully below, the injunction should be modified to clarify that it is limited to the United States.

---

[8] By this motion, Feng Tao is not challenging the injunction to the extent that it prohibits sales of the DVDFab Software to the United States or prohibits the Circumventing Activities from taking place in the United States.

### III. THE INJUNCTION SHOULD BE MODIFIED TO CLARIFY ITS SCOPE

By its terms, the Injunction is not limited to activities that take place in the United States, to sales to the United States, or to activities that have any connection whatsoever to the United States. Taken literally, the Injunction prohibits sales that take place wholly within China, sales from China to countries other than the United States, and sales of the Unrelated Products.

For example, shutting down the DVDFab Domain Names and enjoining the payment processors prevents defendant Feng Tao from using such domain names and payment processors for sales of the Unrelated Products, and for sales of the DVDFab Products outside the United States. In addition, the Injunction appears to prohibit using foreign language sites, services and platforms that are intended for potential consumers outside of the United States, and to promote sales outside the United States. Because the Injunction appears to extend extraterritorially, it should be modified.

### CONCLUSION

For the reasons set forth herein, defendant Feng Tao urges the Court to modify the injunction to clarify that it is limited to the United States and does not prohibit sales outside the United States, and to remove the restrictions on the DVDFab Domain Names, DVDFab Social Media Accounts, and the third party service providers.

Dated: New York, New York  
April 1, 2014

SCHOEMAN UPDIKE KAUFMAN  
STERN & ASCHER LLP

By: _/s/ Nancy J. Meitzel_  
Nancy J. Meitzel  
551 Fifth Avenue  
New York, New York 10176  
(212) 661-5030

*Attorneys for Defendant Feng Tao d/b/a Fengtao Software*