**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

---

ADVANCED ACCESS CONTENT SYSTEM
LICENSING ADMINISTRATOR, LLC,

                Plaintiff,

        v.

LANNY SHEN d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., SUNREG
TECHNOLOGIES LTD. d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., FENG TAO
d/b/a DVDFAB AND FENGTAO SOFTWARE
INC., SHEN XINLAN d/b/a AUDIO-DVD
CREATOR, and JOHN DOE, JANE DOE and/or
XYZ COMPANY d/b/a DVDFAB, RIPPERBLU-
RAY.COM, DVDFABB.COM and
DVDFFAB.COM,

                Defendants.

NO. 14-cv-1112 (VSB)

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT FENG TAO d/b/a DVDFAB AND FENGTAO SOFTWARE INC.'S**
**MOTION TO AMEND INJUNCTION PURSUANT TO RULE 59(e)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

    A.    Defendants' Circumvention Software and Business Model ................................. 3

    B.    Defendants' Acts in Violation of the Preliminary Injunction Order...................... 5

ARGUMENT ............................................................................................................. 13

    A.    Feng Tao Lacks Standing to Make this Motion and Otherwise Admits
             Liability............................................................................................. 13

    B.    Feng Tao Fails to Make the Requisite Showing to Modify the Preliminary
             Injunction Order Under Rule 59(e)..................................................... 15

         1.    This Court Did Not Overlook Controlling Decisions Causing Clear
                 Error or Manifest Injustice........................................................ 16

         2.    This Court Did Not Overlook Factual Matters Constituting Clear
                 Error or Manifest Injustice........................................................ 18

CONCLUSION........................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnold v. Geary*,
   No. 09–CV–7299, 2013 WL 5951489 (S.D.N.Y. Nov.7, 2013) .............................................15

*Bose Corp. v. Silonsonnic Corp.*,
   413 F. Supp. 2d 339 (S.D.N.Y. 2006).....................................................................................17

*Centrifugal Force, Inc. v. Softnet Comm'n, Inc.*,
   No. 08 Civ. 5463, 2009 WL 1059647 (S.D.N.Y. Apr. 17, 2009)...........................................16

*Chanel Inc. v. Lin*,
   No. C-09-4996, 2010 WL 2557503 (N.D. Cal. May 7, 2010)...........................................21, 23

*Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.*,
   843 F.2d 600 (1st Cir. 1988) ..................................................................................................19

*Curb v. MCA Records, Inc.*,
   898 F.Supp. 586 (M.D. Tenn. 1995) .......................................................................................18

*CyberMedia, Inc. v. Symantec Corp.*,
   19 F.Supp.2d 1070 (N.D. Cal. 1998) ......................................................................................18

*Directv, Inc. v. Rosenberg*,
   No. 02 Civ. 2241, 2004 WL 345523 (S.D.N.Y. Feb. 24, 2004) .............................................14

*DISH Network L.L.C. v. Sanchez*,
   No. 11-cv-1485, 2012 WL 2090439 (E.D. Cal. June 8, 2012) ...............................................14

*Dixon v. Ragland*,
   No. 03 Civ. 826, 2007 WL 4145453 (S.D.N.Y. Sept. 11, 2007)............................................13

*Elrod v. Busch Entertainment Corp.*,
   No. 09cv164, 2011 WL 2600461 (E.D. Va. June 1, 2011).....................................................14

*Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*,
   995 F. Supp. 468 (D.N.J. 1998) ..............................................................................................18

*Griffin Industries, Inc. v. Petrojam, Ltd.*,
   72 F. Supp. 2d 365 (S.D.N.Y. 1999)........................................................................................15

*Gucci America, Inc. v. Wang*,
   No. C-09-5969, 2011 WL 31191 (N.D. Cal. Jan. 3, 2011).....................................................21

*I.C.C. v. Smith*,
    82 F. Supp. 39 (E.D. Pa. 1949) ...............................................................14

*Imagineering, Inc. v. Van Klassens, Inc.*,
    851 F. Supp. 532 (S.D.N.Y. 1994)...........................................................25

*In re Crazy Eddie Secs. Litig.*,
    948 F.Supp. 1154 (E.D.N.Y.1996) ...........................................................15

*Jellybean Entertainment, Inc. v. Usnile LLC*,
    No. 13-cv-144, 2013 WL 3283845 (S.D. Cal. June 26, 2013) ...........................13, 26

*Kiesgen v. St. Clair Marine Salvage, Inc.*,
    724 F. Supp. 2d 721 (E.D. Mich. July 12, 2010)......................................14

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    133 S.Ct. 1351 (2013)............................................................................16, 17

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
    729 F.3d 99 (2d Cir. 2013)......................................................................15

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    No. C 07-3952, 2010 WL 5598337 (N.D. Cal. Mar. 19, 2010)...................18

*McGraw-Hill Companies, Inc. v. Ingenium Techs. Corp.*,
    375 F. Supp. 2d 252 (S.D.N.Y. 2005)......................................................17

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..................................................25

*NFL v. Primetime 24 Joint Venture*,
    No. 98 CIV. 3778, 1999 WL 163181 (S.D.N.Y. Mar. 24, 1999) ..................17, 18

*Pinterest, Inc. v. Jin*,
    No. C 12-4586, 2013 WL 5460821 (N.D. Cal. Sept. 30, 2013) ..................21

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
    No. 06 CIV. 0777, 2014 WL 1100140 (S.D.N.Y. Mar. 19, 2014) ................15

*Rolex Watch U.S.A., Inc. v. Jones*,
    99 CIV. 2359, 2002 WL 596354 (S.D.N.Y. Apr. 17, 2002)........................23

*S.E.C. v. McNulty*,
    137 F.3d 732 (2d Cir. 1998)....................................................................14

*Shropshire v. Canning*,
    809 F. Supp. 2d 1139 ..............................................................................18

*Stephens v. Shuttle Assocs. LLC*,
    547 F. Supp. 2d 269 (S.D.N.Y. 2008)................................................................15

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
    24 F.3d 1088 (9th Cir. 1994) ........................................................................18

*Trans World Airlines, Inc. v. Hughes*,
    449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds sub nom Hughes Tool Co.*
    *v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973)................................................13

*Transamerica Life Ins. Co. v. Shubin*,
    No. 11-cv-1958, 2012 WL 5364645 (E.D. Cal. Oct. 31, 2012)........................................13, 14

*Tu v. TAD Systems Tech. Inc.*,
    No. 08-CV-3822, 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009) ......................................15

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002)................................................................17

*Warner Bros. Ent. Inc. v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008)................................................................19

*Well Made Toy Mfg. Corp. v. Lotus Onda Industrial Co., Ltd.*,
    No. 02 Civ. 1151, 2003 WL 42001 (S.D.N.Y. Jan. 6, 2003)..........................................16

*WPIX, Inc. v. ivi, Inc.*,
    765 F. Supp. 2d 594, 620-21 (S.D.N.Y. 2011) ......................................................19

**Federal Statutes**

17 U.S.C. § 101, *et seq.* (the "Copyright Act") ................................................3, 16, 21

17 U.S.C. § 1201................................................................................14

17 U.S.C. § 1203................................................................................21

**Rules**

Federal Rule of Civil Procedure 55 ................................................................14

Federal Rule of Civil Procedure 59 ............................................................3, 15, 25

Federal Rule of Civil Procedure 65 ................................................................21

**Other Authorities**

4 M. Nimmer & D. Nimmer, Copyright § 17.02 (2012) ................................................16

10A Charles Alan Wright et al., Federal Practice and Procedure § 2688 (3d ed. 2013) ..........................................................................................................14

Contracting Parties > WIPO Copyright Treaty, http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=16.............................20

Copyright Law of the People's Republic of China, Article 48(6) ...............................................21

David Price, Sizing the Piracy Universe, NetNames (Sept. 2013) ..................................................23

Directive 2001/29/EC of the European Parliament and of the Council of 22 May 2001 on the harmonisation of certain aspects of copyright and related rights in the information society, http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:32001L0029:EN:HTML, Article 6 ..........................................................................................................23

S. Rep. No. 105-190............................................................................................24

WIPO Copyright Treaty, http://www.wipo.int/treaties/en/ip/wct/trtdocs_wo033.html, Art. 11 ......................20

U.S. Copyright Office Summary, The Digital Millennium Copyright Act of 1998 (Dec. 1998), http://www.copyright.gov/legislation/dmca.pdf .................................................24

Plaintiff Advanced Access Content System Licensing Administrator, LLC ("AACS LA" or "Plaintiff"), by its undersigned attorneys, submits this memorandum of law in opposition to Defendant Feng Tao d/b/a Fengtao Software's ("Feng Tao" or "Feng Tao Defendant") motion to amend the Order for preliminary injunction entered March 4, 2014 [Doc. No. 21] (the "Preliminary Injunction Order" or "Order").

## PRELIMINARY STATEMENT

This motion to "amend" the Preliminary Injunction should be denied because there are no grounds to eviscerate the Order as Defendant requests.  There has been no intervening change of law and no cases the Court overlooked.  There is no new evidence—except evidence that Defendants are actively disobeying the Order.  The only error and manifest injustice to avoid would be caused by the amendment Defendant seeks.

Feng Tao Defendant comes to this Court for the first time, over thirty days after having been first served with the Complaint and papers in support of AACS LA's motion for preliminary injunction, and weeks after receiving notice of the Preliminary Injunction Order, seeking relief that would effectively invalidate the Preliminary Injunction Order.  While this is the first appearance before this Court by anyone on behalf of Defendants,[1] they took multiple actions in an attempt to frustrate, and in violation of, the Preliminary Injunction well before now and continue to take actions in violation of the Preliminary Injunction today.

Specifically, after receiving notice on March 5, 2014 of the Preliminary Injunction Order, a fact that Feng Tao does not contest, Defendants continued to offer for sale and sell the illegal DVDFab Software.  Once third party service providers to Defendants and their DVDFab Websites received actual notice of the Order and took action pursuant to the terms of the Order—

---

[1] Capitalized terms not defined herein are given the meaning assigned to them in AACS LA's Memorandum of Law in Support of its Motion for Preliminary Injunction, dated Feb. 21, 2014 [Doc. No. 11] (its "PI Brief") or the Memorandum of Law in Support of Motion to Amend Injunction Pursuant to Rule 59(e) dated April 1, 2014 [Doc. No. 29] ("Feng Tao Brief").

beginning with Verisign (.com and .net registries) and Neustar (.us registry) on March 10, Facebook on March 11, Avangate (the payment processor) on March 17, Google with respect to Google+ and YouTube on March 21 and Twitter on April 1—DVDFab Group could no longer conduct business as usual.  Defendants then attempted to counteract the third party service providers' actions by (a) moving their illegal business to different websites, including new websites serviced by registries outside the United States, (b) creating a new brand name, BluFab under which to sell circumvention software, and (c) even threatening—through a person who failed to identify himself except to say he was speaking on behalf of Defendants—to distribute the DVDFab software for free (in order to further harm AACS LA) if AACS LA did not agree to restore Defendants' business.

        After their attempts to circumvent the Order failed, Defendants now, while retaining their cloak of anonymity and through a person/entity identified only as "Defendant Feng Tao d/b/a Fengtao Software", come before this Court seeking leave to amend or modify the Preliminary Injunction Order to clarify that it does not apply extraterritorially or to products other than the defined DVDFab Software, such as DVD Copy, DVD Ripper, DVD Creator, Blu-ray Creator, Video Converter, and 2D to 3D Converter (the "Additional Products").[2]  Specifically, Feng Tao requests that this Court remove any restriction on: (1) sales of any products (DVDFab Software or Additional Products) outside the United States; and (2) Defendants' use of DVDFab Domain Names, Social Media Accounts and third party service providers to the DVDFab Websites.[3] Feng Tao's request is improper, without any support in the law or the factual record before this Court.

---

[2] Feng Tao Brief at 2.
[3] Feng Tao Brief at 8.

In the first instance, Feng Tao does not have standing to appear before the Court and bring this or any other motion beyond a motion to vacate the entry of default entered against Defendants on March 18, 2014.

Further, by their default, Defendants have admitted to the allegations in the Complaint, which make out their liability for manufacturing, importing, offering to the public, providing and trafficking in DVDFab Software into the United States in violation of multiple provisions of the Copyright Law of the United States, 17 U.S.C. § 101, *et seq.* (the "Copyright Act"), as well as the damage and irreparable harm to AACS LA if Defendants' acts are left unaddressed. Even now, Feng Tao cannot and does not contest these allegations on the merits.

If this Court reaches the substance of Feng Tao's motion under Rule 59(e) to modify the Preliminary Injunction Order, it should be denied. Feng Tao has failed to present any previously overlooked facts or law that would demonstrate a need to correct a clear error or prevent manifest injustice. Indeed, the only injustice that would result from granting Feng Tao's request is to AACS LA because what Feng Tao is seeking will, in effect, eviscerate the Order and leave AACS LA without any effective remedy from the irreparable harm caused and continuing to be caused by Defendants' illegal acts.

## STATEMENT OF FACTS[4]

### A.     Defendants' Circumvention Software and Business Model

DVDFab Software clearly circumvents AACS Technology,[5] a fact that Feng Tao does not deny and DVDFab Group boasts in its marketing materials and product manuals.[6] The

---

[4] A full statement of facts is set forth in the complaint in this action (Doc. No. 2, the "Complaint"), as well as the PI Brief and supporting declarations and exhibits. Many of the facts are also reflected in the Court's findings on the record at the March 4, 2014 hearing on Plaintiff's motion for preliminary injunction.

[5] Transcript of Proceedings before Hon. Judge Broderick, dated Mar. 4, 2014 [Doc. No. 24] ("PI Hearing Tr.") at 7:20-8:5, 10:20-23, 11:6-7; Declaration of Donald Leake, Jr., dated Feb. 11, 2014 ("Leake Decl."), ¶ 9.

[6] PI Brief at 10; Declaration of Matthew Hewlett, dated Feb. 19, 2014 ("Feb. 19 Hewlett Decl."), ¶¶ 6-10, 13-19, 22-32, Exs. A-E, I, K.

DVDFab Software was promoted, offered for sale and sold globally and expansively by DVDFab Group through a network of at least twenty-seven (27) DVDFab Websites all linked to one another as well as social media accounts on Twitter, Facebook, YouTube and Google+.[7]

The United States is a primary market for DVDFab Group, with over 550,000 people visiting DVDFab.com from the United States each month, accounting for an estimated 35.2% of visitors to the site, the largest share of any country.[8]  Similarly, 22% of Facebook's and 29% of Twitter's audiences are in the United States.[9]  All of the DVDFab websites—most of which were in English and accepting payment in U.S. dollars and by major credit cards—were under United States top-level domains, .com, .net and .us; were and are accessible from the United States; and offered for sale and/or sold the DVDFab Software into and throughout the United States.[10]  Even the websites whose domains were not registered with United States registries and were not written in English (*i.e.* under the top-level domains .de and .jp) directed the purchaser of DVDFab Software to DVDFab.com to purchase DVDFab Software license keys that are needed to access DVDFab Software.[11]  Payments for purchases of DVDFab Software from DVDFab.com were processed by, and purchasers received confirmation emails from, Avangate, a digital commerce solution provider with an office in the United States.[12]

To evade detection and reduce risk, Defendants—despite the United States being their primary market—operated the DVDFab Websites outside of the United States, concealed their own identities and used false business names and incomplete identification information in the Whois database in connection with the websites, including registering some of the domain names to fake entities and/or individuals with purported contact information in British Columbia,

---

[7] Complaint ¶ 22; PI Hearing Tr. 8:5-14; Feb. 19 Hewlett Decl. ¶¶ 6, 11-21, 23-24, Exs. A, H-J.
[8] Feb. 19 Hewlett Decl. ¶¶ 6, 11, 13, Ex. A, G & I.
[9] Apr. 21 Hewlett Decl. ¶ 16, Ex. I.
[10] Complaint ¶¶ 6-10, 14, 23; Feb. 19 Hewlett Decl. ¶¶ 6 & 13, Exs. A & I.
[11] Feb. 19 Hewlett Decl. ¶ 10, Ex. F.
[12] *Id.* ¶ 8, Ex. C.

Canada and Japan.[13]  Defendants communicated with potential customers solely via the DVDFab

Websites and/or via email and did not provide identifiable names or true physical addresses on

DVDFab Websites.[14]

DVDFab Group created brand awareness for its DVDFab Software through the DVDFab

Websites and social media directed to the United States.  As a result of its Internet promotional

activity, marketing and sales, Defendants have received great acclaim for DVDFab Software

from reviewers and consumers around the Internet as an excellent product to quickly circumvent

Blu-ray and DVD copy protection and "rip" the protected content free of that protection, such as:

- "DVDfab is a crazy good dvd, blu ray ripping tool. It is easy to use and within minutes (yes minutes) you can rip a blu ray to your hard drive in any format you want. MP4, mpeg2, and even ISO files. I hope this software is legal . . . ."

- "When it comes to decrypting/hacking Blu-ray discs and DVDs, DVDfab is about as good as it gets. DVDfab Blu-ray Ripper well deserves its high reputation in decryption, and it handles not only AACS, BD+, Region code restriction, but also Cinavia protected Blu-rays. By taking advantage of CUDA accelerating, the conversion time is greatly shorted. If you want to rip a Blu-ray to MKV and keep 2 audio language and external subtitles, DVDfab would be your choice."[15]

**B.**   **Defendants' Acts in Violation of the Preliminary Injunction Order**

AACS LA filed its Complaint in this action on February 21, 2014 and simultaneously

moved for preliminary injunction against Defendants and the DVDFab Websites.[16]  On February

24, 2014, AACS LA, served—pursuant to court order via email using the email addresses

Defendants used for communicating with customers and those listed in the Whois database—the

Summons, Complaint and preliminary injunction motion papers, including an Order to Show

Cause noticing a hearing for March 4, 2014.[17]  Feng Tao does not deny having received notice of

this action or having been properly served with those documents.  Despite having received

---

[13] Complaint ¶ 3; Feb. 19 Hewlett Decl. ¶¶ 23-24, Ex. K.
[14] Complaint ¶ 3; Feb. 19 Hewlett Decl. ¶¶ 6, 13, 32, Exs. A & I.
[15] Apr. 21 Hewlett Decl. ¶ 20, Ex. M.
[16] Complaint; Order to Show Cause for Preliminary Injunction, dated Feb. 21, 2014 [Doc. No. 4].
[17] Affidavit of Service of Omar Johnny, dated Feb. 25, 2014 [Doc. No. 16]; Feb. 19 Hewlett Decl. ¶ 8.

notice, Defendants failed to appear at, or contact AACS LA prior to, the hearing.[18]  At the scheduled hearing, this Court, after considering argument and evidence of record, issued findings of fact and conclusions of law and entered the Preliminary Injunction Order.[19]

The Preliminary Injunction Order, *inter alia*, (1) enjoins and restrains Defendants from "manufacturing, importing offering to the public, providing, or otherwise trafficking in any" circumvention technology, including but not limited to the DVDFab Software (the "Circumventing Activities") and moving or destroying merchandise, documents or electronic files (the "DVDFab Group Injunction Provisions"); (2) requires that Defendants "not conduct or participate in any of the Circumventing Activities through any website, social media or social networking site or service, or other online service or platform, or through any offline means" and that they disable those domain names, websites and social media accounts (the "DVDFab Group Operations Provisions"); and (3) requires that third-party service providers receiving actual notice of the Preliminary Injunction Order cease providing services enabling Defendants' Circumventing Activities, including through domain names, websites and social media accounts and by processing payments (the "Service Provider Provisions").[20]

On March 5, 2014, AACS LA served the Preliminary Injunction Order on Defendants.[21] Feng Tao does not deny having received notice of the Preliminary Injunction Order.[22]  On that same day, AACS LA also served notice of the Preliminary Injunction Order on third party registries.[23]  Despite having been served with the Preliminary Injunction Order, Defendants continued business as usual until March 10, 2014 when VeriSign and Neustar disabled access to

---

[18] PI Hearing Tr. 2:1-20.
[19] *Id.* 6:6-14:7.
[20] Preliminary Injunction Order at 1-4.
[21] Affidavit of Service of Omar Johnny, dated Mar. 6, 2014 [Doc. No. 22].
[22] *See* Feng Tao Br.
[23] Declaration of George P. Wukoson, dated Apr. 21, 2014 ("Apr. 21 Wukoson Decl."), ¶ 4.

the .com, .net and .us DVDFab Websites.[24]  In apparent response to the United States registries

disabling their domains:

1.  DVDFab.jp[25] and DVDFab.de, formerly Japanese and German language websites,
    began automatically redirecting to an English language website located at
    en.DVDFab.jp and DVDFab.cn was registered to a new, as yet unknown, entity
    having a contact email of frankosee@hotmail.com.[26]  The website at DVDFab.cn
    was and remains an English language website.[27]

2.  Press coverage announced that DVDFab was "back on new URLs" and "now
    available on the domain names en.dvdfab.jp and dvdfab.cn *where it's business as
    usual*," and that DVDFab was offering a 20% discount until March 16, 2014.[28]

3.  A person identifying himself only as "Frank," potentially the registrant for
    DVDFab.cn, frankosee@hotmail.com, contacted AACS LA's counsel purportedly
    to discuss settlement terms.[29]  When asked, Frank refused to provide any further
    details of his identity except to say that he was not an attorney and that he was
    calling from China. Frank said that DVDFab was the largest circumvention
    software maker and it could align all other major circumvention software makers
    to allow AACS LA a one to three weeks exclusivity delay on introducing
    circumvention software in exchange for AACS LA restoring the DVDFab
    Websites and business.[30]  Frank stated that if AACS LA refused the deal,
    DVDFab Defendants would distribute the software for free, thereby rendering
    AACS LA irrelevant.[31]

On March 11, Facebook disabled the DVDFab Facebook page.[32]  On March 12, 2014,

DVDFab Group announced through email to its customers, including those in the United States:

1.  That their "portal site DVDFab.com was temporarily blocked by some third party
    organizations in the States, misleadingly convincing people that DVDFab Was
    Down, which was not the case!"

2.  "We believe people shall have this right! That's why despite DVFab.com [sic]
    was temporarily suspended, all the developers and every single staff in DVDFab
    Team will continue to work hard to make DVDFab products better and better.
    Our new official website is not www.dvdfab.cn.  Nothing have been changed
    except the 'dot com'."

---

[24] Apr. 21 Hewlett Decl. ¶ 6, Ex. A.
[25] DVDFab.jp has since been disabled.  *Id.* ¶ 6, 11, Ex. F.
[26] Identified as 北京世纪高蓝科技有限公司 ("Blue Technology Co., Ltd. Beijing Century").  *Id.* ¶ 8, Ex. B.
[27] *Id.* ¶ 8, Ex. C.
[28] *Id.* ¶ 21, Ex. N (emphasis added).
[29] Apr. 21 Wukoson Decl. ¶ 5.
[30] *Id.*
[31] *Id.*
[32] *Id.* ¶ 6.

3. Release of a new version of the DVDFab Software.[33]

On that same day, DVDFab Group also:

1. Encouraged users, using its Twitter account, to promote DVDFab Software and its evasion of the Preliminary Injunction Order by "tweeting" the hashtag phrases #ILikeDVDFab and #DVDFabComeBack, and "Dear all, DVDFab.com was blocked by third party. We need your help, please RT this to make #DVDFabComeBack Thank you!"; "DVDFab will keep updating. #DVDFabComeBack #ILikeDVDFab"; and "#DVDFabComeBack We now use the new domain name dvdfab.cn We won't let you down. Trust us and RT this. Thanks!"[34]

2. Began operating a website at ILikeDVDFab.com, which domain had been registered the day before, prominently featuring an illustration of their monkey mascot, depicted below, shackled and crying, allowing users to click a button to tweet "#DVDFabComeBack I love this software and I need DVDFab come back!"[35]



3. Published a timeline of events on ILikeDVDFab.com, as follows:

**Background:**

March 10, 2014, Judge Broderick from a New York federal court ruled the suspension of DVDFab, a small Chinese software developer headquartered in Beijing, several of its domains and social media accounts, accusing the latter violating copyright protections of AACS and other movie studios in the States.

**What Was Affected?**

Several hours after the Order had been put into effect, people from around the world were reporting that www.dvdfab.com, our portal site, was no longer accessible. As it turned out, our website had been blocked…

---

[33] Apr. 21 Hewlett Decl. ¶ 19, Ex. L.
[34] *Id.* ¶ 17, Ex. J.
[35] *Id.* ¶ 15, Ex. H.

March 11, the DVDFab Facebook Fanpage was removed…

**What We Have Done?**

Nothing. With our history as a software developer we have had only one mission in mind: To provide customers the world's best DVD, Blu-ray, video backup and conversion solution for private LEGAL purposes (personal use at home) ONLY. The value of people's entertainment has been greatly improved thanks to the existence of DVDFab software and being able to back their legally purchased media up.

**What We Will Do Next?**

In order to protect the interests of our existing customers, we have already recovered all the normal businesses to www.dvdfab.cn. At the same time, we promise to reverse the situation through every possible effort. DVDFab Team as a whole, will stick to the same mission in the years to come, to better your entertainment life. We shall not perish from this earth![36]

On March 15, 2014, Defendants registered the domain name BluFab.cn and later began operating a website to sell the DVDFab Software at that domain name, simply re-branding the DVDFab Software "BluFab."[37]

On March 17, 2014, DVDFab Group, in a forum at the newly established website, explained "Due to some reasons, we have rebranded DVDFab into BluFab, you will get identical or even better features and functionalities. Thanks again for your continuous support! Stay with us, and we will not let you down!"[38]  Press coverage that same date stated, "DVDFab has been rebranded to BluFab today," quoted DVDFab Group's announcement, and further stated, "While we have no official statement from DVDFab, it would be very obvious that the name change is related to the recent seizure of the DVDFab.com domain. Due to an injunction from an American court the domain name was shut down."[39]

Pursuant to the Order, Avangate ceased providing services central to Defendants' circumvention business, including processing payments, for DVDFab Group's websites on

---

[36] *Id.*
[37] *Id.* ¶ 9, Exs. B & D.
[38] *Id.* ¶ 21 Ex. P.
[39] *Id.*

March 17, 2014, Google disabled the YouTube and Google+ accounts for DVDFab Group on

March 21, and Twitter disabled the DVDFab Group account on April 1, 2014.[40]  Thereafter,

DVDFab Group created new profiles on Facebook and Twitter entitled "Ilikedvdfab" and use

these new social media accounts to promote the sale of its DVDFab Software, including with

copyrighted images from blockbuster American motion pictures, and its continued evasion of the

Preliminary Injunction Order, for example:[41]



DVDFab Group also continues to operate a Facebook profile and page entitled "DVDfab" and

Google+ profiles and pages entitled "DVDFab" and "Feng Tao."[42]

Feng Tao submitted the current motion, failing to provide any clarity as to the identity of

Feng Tao, as a natural person or otherwise (other than through the use of the pronoun "he"), his

nationality, his role in DVDFab Group, or the identities or nationalities of the other members of

DVDFab Group.  It is not clear from the motion whether this self-proclaimed "defendant" is one

or more of the named Defendants in this action.

Defendants have continued and continue today to operate the domain name at

DVDFab.de, which initially redirected to an English-language page at en.DVDFab.jp, and once

---

[40] Apr. 21 Wukoson Decl. ¶¶ 7-9.
[41] Apr. 21 Hewlett Decl. ¶ 18, Ex. K.
[42] *Id.*

the registry ceased providing services to DVDFab.jp, now redirects to de.DVDFab.cn.[43]  On or before April 3, 2014, DVDFab Group began operating a website at a domain it had previously registered at FabImg.net to sell the DVDFab Software.[44]  As a result, DVDFab Group now operates websites at DVDFab.cn, BluFab.cn, FabImg.net, and DVDFab.de (which all share the same IP address), all the home pages of which mirror each other and the former websites located at DVDFab.com, DVDFab9.com, DVDFab.net, DVDFabb.com, DVDFfab.com, and DVDFab.jp (except that DVDFab Group's seasonal promotions have been updated since the latter websites were taken down), e.g.:[45]



DVDFab.com (Feb. 14, 2014, Before Preliminary Injunction Order)



DVDFab.cn (Apr. 15, 2014, After Preliminary Injunction Order)



FabImg.net (Apr. 15, 2014, After Preliminary Injunction Order)



BluFab.cn (Apr. 15, 2014, After Preliminary Injunction Order)

---

[43] The DVDFab.de website remains active and accessible despite that Plaintiff served this Court's Order on DENIC, the registry for .de, on March 5, 2014.  Apr. 21 Hewlett Decl. ¶ 11, Ex. F; Apr. 21 Wukoson Decl. ¶ 4.
[44] Apr. 21 Hewlett Decl. ¶ 7, 10, Exs. B & E.
[45] Feb. 19 Hewlett Decl. Exs. A & I; Apr. 21 Hewlett Decl. ¶¶ 7-13, Ex. C-E.

Internet users may freely download the DVDFab Software from DVDFab.cn, DVDFab.de, and FabImg.net (and the "BluFab" software from BluFab.cn) and purchase license keys for the DVDFab Software from DVDFab.cn using U.S. dollars.[46]

DVDFab Group has made conflicting statements about whether it will continue selling the DVDFab Software and whether its BluFab software will circumvent AACS Technology on Blu-ray discs.  DVDFab Group stated through a forum posting on March 20, 2014 that DVDFab would no longer be sold to new customers but that BluFab would be, and that the "two brands" would "coexist simultaneously," with existing DVDFab customers continuing to receive updates, concluding their "lifetime licenses shall never expire!"[47]  Through another forum post the next day, DVDFab Group announced that its BluFab software "will no longer decrypt any DVD and Blu-ray protections," and that announcement was covered by the press, but DVDFab Group later edited that forum post to remove it.[48]  One DVDFab customer has speculated that DVDFab Group would "sell a product 100% conforming to the law: BLUFAB" so that they could do so without legal interference but use the same enabling keys for DVDFab and BluFab, leaving it up to the customer to download and activate DVDFab with the BluFab license key.[49]  On April 15, 2014, DVDFab announced through a forum post that "full updated decryption capability" would from that date forward only be available for customers that have purchased DVDFab Software licenses.[50]

Notwithstanding DVDFab Group's continued illegal acts, the Preliminary Injunction Order has had a deterrent effect on other traffickers of software designed to circumvent the AACS Technology.  On March 13 and 14, 2104, two different producers of such software,

---

[46] Apr. 21 Hewlett Decl. ¶¶ 7-10, 14, Exs. C-E & G.
[47] *Id.* ¶ 21, Ex. Q.
[48] *Id.* ¶ 21, Ex. R.
[49] *Id.* ¶ 21, Ex. Q.
[50] *Id.* ¶ 21, Ex. S.

Aiseesoft (producer of "Aiseesoft Blu-ray Ripper" and other circumvention products) and LG

Software Innovations (producer of "1 CLICK BLURAY COPY") announced that they would

cease producing such illegal circumvention software, the former removing downloads of the

software from its website and ceasing support for existing copies and the latter ceasing

development of the software then in a late testing stage and specifically referring to AACS LA's

action against DVDFab Group, stating, "It was once thought that companies that were situated

outside the U.S. could operate with impunity; this no longer appears to be the case."[51]

## ARGUMENT

### A.  Feng Tao Lacks Standing to Make this Motion and Otherwise Admits Liability

Feng Tao "cannot elect to default and then defend on the merits;" that is he "cannot have

[his] cake and eat it too."[52]  The Clerk of Court's entry of default cuts off a defendant's right to

appear in an action and thus "motions, except to set aside default, filed after default are

precluded."[53]  Thus, the entry of default against Defendants by the Clerk of Court—which Feng

Tao has not contested, moved to vacate or even referenced in his papers—cut off Defendants'

---

[51] *Id.* ¶ 21, Ex. O.

[52] *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 64 (2d Cir. 1971) (internal quotation marks omitted), *rev'd on other grounds sub nom Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973).

[53] *Dixon v. Ragland*, No. 03 Civ. 826, 2007 WL 4145453, at *1 n.3 (S.D.N.Y. Sept. 11, 2007) (Defendants "have no standing to make the instant motion, since judgment by default was entered against them."), *report and recommendation adopted in part and declined to be adopted in unrelated part*, 2007 WL 4116488 (S.D.N.Y. Nov. 16, 2007); *see also Jellybean Entertainment, Inc. v. Usnile LLC*, No. 13-cv-144, 2013 WL 3283845, at *3 (S.D. Cal. June 26, 2013) (internal quotation marks and brackets omitted); *Transamerica Life Ins. Co. v. Shubin*, No. 11-cv-1958, 2012 WL 5364645, at *2 (E.D. Cal. Oct. 31, 2012) ("The Clerk of Court's entry of default cuts off a defendant's right to appear in an action."); *DISH Network L.L.C. v. Sanchez*, No. 11-cv-1485, 2012 WL 2090439, at *10 (E.D. Cal. June 8, 2012) (in a DMCA anti-circumvention case, holding "Defendant's ability to present evidence on issues other than unliquidated damages or defend against the merits of the lawsuit has been curtailed by the entry of default against Defendant" and "a defaulted party loses his standing before the court"); *Elrod v. Busch Entertainment Corp.*, No. 09cv164, 2011 WL 2600461, at *2 (E.D. Va. June 1, 2011) ("The general effect of the entry of default under Rule 55(a) is that the defaulting defendant loses his standing in court, his right to receive notice of the proceedings, and his right to present evidence at the final hearing."); *Kiesgen v. St. Clair Marine Salvage, Inc.*, 724 F. Supp. 2d 721, 728 (E.D. Mich. July 12, 2010) ("A party in default may not plead to otherwise proceed until the default is set aside."); *I.C.C. v. Smith*, 82 F. Supp. 39, 40 (E.D. Pa. 1949) (denying motion for dissolution of preliminary injunction because defendant "is still technically in default and cannot press the motion"); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688 (3d ed. 2013) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." (citing cases)).

standing to appear before this Court or to bring this motion or any other motion except to set

aside that default.  If Feng Tao wishes to move to modify the preliminary injunction order, his

only recourse is to first show good cause for setting aside the entry of default under Federal Rule

of Civil Procedure 55(c).[54]   Courts consider three factors in determining whether to vacate a

default judgment: (1) willfulness of the default, (2) presentation of a meritorious defense, and (3)

potential prejudice to the opposing party.[55]  "[T]he district court [] has discretion to deny the

motion to vacate if it is persuaded that the default was willful and is unpersuaded that the

defaulting party has a meritorious defense."[56]  While Feng Tao does not advance any arguments

to set aside the default, the facts set forth herein show that any such arguments would be futile

because: (1) the default was undeniably willful, given that Defendants advertised their

knowledge of the proceeding and the injunction through tweets, press releases and a website

tracking AACS LA's enforcement efforts (at ILikeDVDFab.com); and (2) Defendants have not

even attempted to present a meritorious defense.

Even if Feng Tao had standing to bring this motion without setting aside the default,

Defendants have crucially admitted liability under each prong of Sections 1201(a)(2) and

1201(b)(1) of the DMCA.  Due to the entry of default, all of the factual allegations of the

Complaint against Defendants, except those relating to damages, are taken as true,[57] conclusively

establishing Defendants' liability given AACS LA's well-pled allegations.  Feng Tao

additionally has not otherwise contested the facts as detailed by this Court at the March 4, 2014

---

[54] *Transamerica*, 2012 WL 5364645, at *2; Wright et al., Federal Practice and Procedure § 2688.
[55] *Directv, Inc. v. Rosenberg*, No. 02 Civ. 2241, 2004 WL 345523, at *2 (S.D.N.Y. Feb. 24, 2004).
[56] *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).
[57] *Reiseck v. Universal Commc'ns of Miami, Inc.*, No. 06 CIV. 0777, 2014 WL 1100140, at *2-3 (S.D.N.Y. Mar. 19, 2014); *Tu v. TAD Systems Tech. Inc.*, No. 08-CV-3822, 2009 WL 2905780, at *1 (E.D.N.Y. Sept. 10, 2009); *In re Crazy Eddie Secs. Litig.*, 948 F.Supp. 1154, 1160 (E.D.N.Y.1996).

hearing and contained in Plaintiff's moving papers for preliminary injunction, including supporting declarations and exhibits.[58]

### B.    Feng Tao Fails to Make the Requisite Showing to Modify the Preliminary Injunction Order Under Rule 59(e)

Relevant to the facts in this case, to prevail on its motion for reconsideration under Rule 59(e), the movant must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[59]  To demonstrate clear error or manifest injustice, "a request for reconsideration . . . must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court."[60]  These criteria are strictly construed against the moving party to avoid repetitive arguments on issues that have been considered fully by the court.[61]  This is because "[r]econsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."[62]

Feng Tao has not presented newly discovered evidence or a change of controlling law and thus appears to only argue that this Court clearly erred or caused manifest injustice because it overlooked existing controlling decisions or factual matters that would reasonably alter this Court's entry of the Preliminary Injunction Order.

---

[58] PI Hearing Tr. 10:1-12:18; Complaint ¶¶ 23-43; PI Brief at 13-17.
[59] *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).
[60] *Stephens v. Shuttle Assocs. LLC*, 547 F. Supp. 2d 269, 279-80 (S.D.N.Y. 2008).
[61] *Griffin Industries, Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999).
[62] *Arnold v. Geary*, No. 09–CV–7299, 2013 WL 5951489, at *2 (S.D.N.Y. Nov.7, 2013) (internal quotation marks omitted).

1.      **This Court Did Not Overlook Controlling Decisions Causing Clear Error or Manifest Injustice**

Feng Tao argues that in entering the Preliminary Injunction Order this Court overlooked the general rule that the Copyright Act does not have extraterritorial operation.[63]  In support of his argument, Feng Tao cites to several cases, including the recent Supreme Court case *Kirtsaeng v. John Wiley & Sons, Inc.*[64] and cases in the Second Circuit and in this District, all recognizing the principle that United States laws, including the Copyright Act, generally do not apply extraterritorially.[65]  Feng Tao's argument is procedurally out of time and based on cases decided well before the Order issued.  Defendants made a deliberate choice not to appear and assert the argument and cases at the time of the hearing.  But even if the argument could be considered at this stage, as a matter of substance, it must fail.

There are important qualifications[66] to the general principle that illegal "acts that take place entirely outside of the borders of the United States are not actionable under" the Copyright Act.[67]  Such qualifications include where a foreign defendant commits acts abroad that are "felt within the United States" or a predicate act in violation of the Copyright Act taking place "in the United States can justify the application of United States copyright laws to substantive acts of infringement in a territory beyond our borders."[68]  The Supreme Court's opinion in *Kirtsaeng*, which rejected a geographical limitation on the first sale doctrine and found that it applies to copyrighted works lawfully made abroad, for example, notes that while the Act does not

---

[63] Feng Tao Brief at 4-7.
[64] 133 S.Ct. 1351 (2013).
[65] Feng Tao Brief at 4-7 (citing, e.g., *Capitol Records v. Mercury Records Corp.*, 221 F.2d 657, 662 (2d Cir. 1955); *Well Made Toy Mfg. Corp. v. Lotus Onda Industrial Co., Ltd.*, No. 02 Civ. 1151, 2003 WL 42001, at *5 (S.D.N.Y. Jan. 6, 2003)).
[66] 4 M. Nimmer & D. Nimmer, Copyright § 17.02 pp. 17-18, 17-19 (2012).
[67] *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08 Civ. 5463, 2009 WL 1059647, at *9 (S.D.N.Y. Apr. 17, 2009); *see also Well Made Toy*, 2003 WL 42001, at *5.
[68] *Centrifugal Force*, 2009 WL 1059647, at *9.

16

instantly protect an American copyright holder from unauthorized infringement taking place abroad, the Act is also not automatically "inapplicable to copies made abroad."[69]

In a recent decision in this District relevant to the instant matter, the court in *McGraw-Hill Companies, Inc. v. Ingenium Techs. Corp.*, involving copyright infringement on an Internet site, found that "an injunction that applies to activities felt within the United States" does not violate the limitation on extraterritorial application of copyright law.[70]  That court cited with approval an earlier decision finding that a motion to dismiss a claim under the Copyright Act based on extraterritoriality "border[ed] on the frivolous" where "the allegedly infringing material was accessible from computers within the United States and [the plaintiff was] prepared to prove that the defendants' alleged copyright infringement had an effect within the United States."[71]  In a number of other instances, courts have remedied violations of the Copyright Act whose effects were felt in the United States through injunctions reaching actions beyond the United States.  For example, in *NFL v. Primetime 24 Joint Venture* the Second Circuit upheld an injunction against retransmission of telecasts of NFL football games outside the U.S. to remedy illegal retransmission of those telecasts in Canada.[72]  Similarly, in *Bose Corp. v. Silonsonnic Corp.*, a court in this District enjoined the defendant's use of the plaintiff's copyrights or trademarks on websites to sell its goods throughout the world outside the United States and Canada.[73]  In at least two additional cases, courts have held that Internet data activity and sales into the United States are sufficient to bring acts emanating from abroad within the jurisdiction of the Copyright Act.[74]

---

[69] *Kirtsaeng*, 133 S.Ct. at 1359, 1371.
[70] 375 F. Supp. 2d 252, 257 (S.D.N.Y. 2005).
[71] *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 225 (S.D.N.Y. 2002).
[72] 211 F.3d 10, 11, 13 (2d Cir. 2000).
[73] 413 F. Supp. 2d 339, 341 (S.D.N.Y. 2006).
[74] *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146 (uploading materials to YouTube servers in the United States sufficient for Copyright Act jurisdiction and defendant's protests that he did not know servers were in U.S.

Feng Tao's legal argument fails to account for the particulars of remedying Internet-based violations of the Copyright Act or more recent cases in this Circuit, such as *McGraw Hill*, *NFL* and *Bose*.  Feng Tao instead relies on the Ninth Circuit case *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*[75] and a post-*Subafilms* Ninth Circuit case, *CyberMedia, Inc. v. Symantec Corp.*,[76] where the court suggested that "it is unclear whether" it could enjoin distribution of the infringing product on foreign soil or order a recall outside the United States but suggests that it could award damages for foreign sales.[77]  Neither of these cases is controlling for this Court and the 1994 Ninth Circuit *Subafilms* decision and its progeny have been criticized by courts in this Circuit and otherwise in contemporaneous decisions for ignoring the economic realities of electronic communication in a global marketplace and the economic incentives underpinning the Copyright clause designed to encourage creation of new works.[78]  In a decision later affirmed by the Second Circuit, the *NFL* district court criticized the Ninth Circuit's rejection in *Subafilms* of the Second Circuit rule that where a defendant infringing a work takes "a step in the process by which a protected work wends its way to its audience" in the United States "although not the only, or the final, step," is an infringement and the Copyright Act applies.[79]

### 2.    This Court Did Not Overlook Factual Matters Constituting Clear Error or Manifest Injustice

Feng Tao's circular reasoning—that because the language of the Preliminary Injunction Order does not: (1) limit prohibited Defendants' actions to their sales of DVDFab Software

---

are of no moment); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. C 07-3952, 2010 WL 5598337, at *2-3 (N.D. Cal. Mar. 19, 2010) (sale of goods to customers in the United States, including plaintiff's investigator, brought acts of infringement within jurisdiction of the Copyright Act), *aff'd in part and vacated in unrelated part*, 658 F.3d 936 (9th Cir. 2011).
[75] 24 F.3d 1088 (9th Cir. 1994)
[76] 19 F.Supp.2d 1070 (N.D. Cal. 1998).
[77] 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998).
[78] *See NFL v. Primetime 24 Joint Venture*, No. 98 CIV. 3778, 1999 WL 163181, at *3 (S.D.N.Y. Mar. 24, 1999); *Curb v. MCA Records, Inc.*, 898 F.Supp. 586, 595 (M.D. Tenn. 1995); *Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 476 (D.N.J. 1998).
[79] *NFL*, 1999 WL 163181, at *2.

within the United States; (2) otherwise allow Defendants' actions that have no connection to the

United States; or (3) carve out sales of Additional Products (that do not circumvent AACS LA

technology, although they circumvent other technological measures for copyright protection)

within or without the United States, then the Court presumably overlooked these facts in

rendering its Order[80]—must  fail.  Feng Tao did not and cannot point to the factual record as

support for this argument and did not introduce any evidence contrary to the record.  Feng Tao

suggests that to remedy this, the Court should specifically limit the Order to actions within the

United States, exclude Additional Products, delete the DVDFab Group Operations Provisions

and the Service Provider Provisions, returning Defendants' access to DVDFab.com and the other

websites, the social media accounts, and all of DVDFab Group's other platforms.  Feng Tao's

position is neither supported by Defendants' actions in this case or the relevant law.  Indeed, this

Court considered all relevant factual matters (none of which are now contested by Feng Tao) as

indicated by the record at the preliminary injunction hearing[81] and the facts in this case support

the scope of the Preliminary Injunction Order.

"[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability

to offer its infringing product," and even permanent destruction of a business based on selling

illegal products is "not a legally recognized harm."[82]  Feng Tao has not demonstrated any

legitimate interest in sales of DVDFab Software, whether purportedly wholly outside the United

States or "Additional Products," which are designed either to circumvent DVD copy and access

protection technology (*i.e.* the CSS technology), or to perform certain secondary functions that

---

[80] Feng Tao Brief at 8.
[81] PI Hearing Tr. at 3:5-14:7.
[82] *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 620-21 (S.D.N.Y. 2011); *see also Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) ("The only possible harm to Defendant is the loss of the chance to sell an infringing book, but the law does not protect this type of hardship."); *Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'")

are complementary to the core illegal video content "ripping" function of DVDFab's

circumvention of the technical protection measures inherent in AACS protection for Blu-ray

discs and CSS protection for DVDs.

It is well established that, similar to the DVDFab Software, DVDFab Group's DVD

circumvention software, including software that circumvents CSS protections, violates the anti-

trafficking provisions of the DMCA.[83]  Thus DVDFab Group has no legitimate interest in selling

the Additional Products in the United States.  Furthermore, no overseas jurisdiction has any

interest in allowing sales of the DVDFab Software or the Additional Products.  It is undisputed

that this circumvention software additionally violates:

- the laws of many of the other countries, including Japan and Germany, that have implemented the WIPO Copyright Treaty, which requires adequate protection and effective legal remedies against "circumvention of effective technological measures;"[84]

- the EU Directive on the Harmonization of Certain Aspects of Copyright and Related Rights in the Information Society, which requires that member states provide "adequate legal protection against the circumvention of any effective technological measures" and which contains anti-circumvention provisions mirroring those in the DMCA;[85] and

- the Copyright Law of the People's Republic of China, which prohibits any entity from "intentionally circumventing or sabotaging the technological measures adopted by a copyright owner or an owner of the rights related to the copyright to protect the copyright or the rights related to the copyright in the work or the

---

[83] PI Hearing Tr. at 12:8-18 (referring to cases); PI Brief at 15-17 (citing *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 215-17, 227 (S.D.N.Y. 2000); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 459-60 (2d Cir. 2001); *RealNetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 641 F. Supp. 2d 913, 932-36 (N.D. Cal. 2009); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085 (N.D. Cal. 2004)).
[84] WIPO Copyright Treaty, http://www.wipo.int/treaties/en/ip/wct/trtdocs_wo033.html, Art. 11; Contracting Parties > WIPO Copyright Treaty, http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=16 (Declaration of George P. Wukoson, dated Feb. 18, 2014 ("Feb. 18 Wukoson Decl."), Ex. D).
[85] Directive 2001/29/EC of the European Parliament and of the Council of 22 May 2001 on the harmonisation of certain aspects of copyright and related rights in the information society, http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:32001L0029:EN:HTML, Article 6 (Feb. 18Wukoson Decl. Ex. E).

products sound recording or video recording, without permission of the owner, except where otherwise provided for in laws or administrative regulations."[86]

The scope of the Preliminary Injunction Order to include the Service Provider Provisions in this case is appropriate to remedy the harms of DVDFab Group's illegal circumvention software.  The facts on record show the long history of DVDFab Group's evasion of AACS LA's enforcement efforts, and thus support that the Order is proper in scope, including directing others who received actual notice of the Order to take actions to disable and/or discontinue services that only serve to aid and abet Defendants' illegal activities.  The relevant law, including section 1203 of the DMCA, Federal Rule of Civil Procedure 65 and this Court's inherent equitable power, allow for orders directed to third parties as a means of providing interim relief.[87]  Similar orders to third parties to disable services have been justified "to prevent further" illegal activity and as "likely necessary to effectuate the purposes of the injunction."[88]

The present case illustrates the necessity of the Service Provider Provisions to counter Defendants' distribution of circumvention software via the Internet, in violation of the Copyright Act.  Because Defendants conduct business entirely over the Internet, their uses of third-party services—*e.g.* to market on their websites and Facebook and to receive payment for sales of DVDFab Software—are integral to Defendants' illegal activities.  Defendants are deliberately disobeying the Preliminary Injunction and attempting to evade its effects by engaging with new service providers and URLs.  The only effective way to address Defendants' misconduct is to maintain the orders as to third parties.  No change is warranted.  Indeed the change requested

---

[86] Copyright Law of the People's Republic of China, http://www.wipo.int/wipolex/en/text.jsp?file_id=186569, Article 48(6) (Feb. 18 Wukoson Decl. Ex. F).
[87] PI Brief at 22-25.
[88] *Pinterest, Inc. v. Jin*, No. C 12-4586, 2013 WL 5460821, at *4 (N.D. Cal. Sept. 30, 2013); *see also Gucci America, Inc. v. Wang*, No. C-09-5969, 2011 WL 31191, at *15 (N.D. Cal. Jan. 3, 2011); *Chanel Inc. v. Lin*, No. C-09-4996, 2010 WL 2557503, at *12 (N.D. Cal. May 7, 2010).

would restore Defendants' ability to conduct their illegal activities freely in contempt of the Order.

Additionally, Feng Tao's representations that its activities are wholly outside the United States are not supported by the record.  As recounted above, DVDFab Group marketed, offered for sale and sold this plainly illegal software to the United States using the Internet, specifically its network of websites, social networking accounts and Internet affiliates, and through the employment of United States-based domain registries and a payment processor doing business in the United States.  DVDFab's marketing activities using social media platforms operated by United States service providers and statistics for traffic to DVDFab Websites show that the United States was its primary market, and the reputation it now enjoys as the source of acclaimed circumvention software was acquired through its heavy marketing of the DVDFab Software to the United States' consumers and the subsequent sales in this country.[89]

DVDFab Group continues its illegal activities today in violation of the Preliminary Injunction Order through any evasive means available to it.  While DVDFab Group has feigned operating exclusively outside the United States, it continues to take actions in and targeted to the United States that assist the continued sale of its illegal circumvention software in the United States.  Thus, DVDFab Group's actions clearly continue to be felt within the United States. Specifically Defendants:

- retooled their foreign domain name websites for a United States audience in response to the disabling of its United States domain names by first  causing its .jp and .de domain names to forward by default to the English language version of the .jp site, and when the .jp site was disabled, erecting an English-language "official website" at DVDFab.cn;

- aggressively promote sites to the United States using US-based social media, at least one US-based website and through English-language forum posts, press

---

[89] *See* discussion *supra* Statement of Facts, Part A.

> releases and tweets, including many of still photographs of blockbuster American motion pictures; and

- built DVDFab Software's strong brand reputation through Defendants' substantial activities directed to and taking place in the United States, including marketing and sales of the infringing DVDFab Software.[90]

Given the internationally-accessible Internet-based nature of DVDFab Group's business, the "virtually limitless number of customers available" to it through its websites[91] and the hundreds of millions of Internet users in the United States, DVDFab Group cannot now undo United States ties it created through its massive marketing and sales within the United States. Nor can DVDFab Group wall off the United States from the effects of its sales of illegal circumvention software. This is because the DVDFab Software's essential purpose is to strip off technical protections and thereby "rip" content from Blu-ray discs. In so doing, the software renders that content "in the clear" and readily subject to unauthorized copying and distribution, including via illegal uploading of the content to Internet websites around the world. Circumvention of technical protection measures facilitates the present epidemic of widespread infringement of films, video games and other copyrighted content; indeed the uploading, downloading and streaming of such infringing content made up 11.35% of North American Internet bandwidth in 2013.[92]

This latter harm is highly salient in this anti-circumvention action. The purpose behind the anti-circumvention laws both in the United States and the anti-circumvention obligations set forth in the relevant provisions of the WIPO treaties is to supplement the protection of underlying copyright rights and to promote the legitimate exercise of those rights in the Internet and digital age. The U.S. Copyright Office Summary of the Digital Millennium Copyright Act

---

[90] *See* discussion *supra* Statement of Facts, Parts A & B.
[91] *Rolex Watch U.S.A., Inc. v. Jones*, 99 CIV. 2359, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002)
[92] David Price, Sizing the Piracy Universe, NetNames, at Appendix B, part C, PDF page 100 (Sept. 2013), http://copyrightalliance.org/sites/default/files/2013-netnames-piracy.pdf (Apr. 21 Wukoson Decl., Ex. A).

of 1998 declares of WIPO treaty member states' obligations written in "virtually identical

language," "to prevent circumvention of technological measures used to protect copyrighted

works, and to prevent tampering with the integrity of copyright management information":

> These obligations serve as technological adjuncts to the exclusive rights granted by
> copyright law. They provide legal protection that the international copyright community
> deemed critical to the safe and efficient exploitation of works on digital networks.[93]

> The legislative history of the DMCA similarly states:

> Due to the ease with which digital works can be copied and distributed worldwide
> virtually instantaneously, copyright owners will hesitate to make their works readily
> available on the Internet without reasonable assurance that they will be protected against
> massive piracy. Legislation implementing the treaties provides this protection and creates
> the legal platform for launching the global digital on-line marketplace for copyrighted
> works.[94]

The anti-circumvention provisions of the international treaties and their codification in

legislation throughout the world, including in the United States via the DMCA, explicitly

recognize the critical role that technical protection measures serve not only in protecting

copyrighted works in the digital age (including against unauthorized access), but also in

facilitating a robust, Internet-based legitimate marketplace for the sale and distribution of high

value copyrighted works.  The purpose of providing legal protections against the unauthorized

circumvention of technical protection measures is to deter the use of content legitimately

distributed to consumers as a major source of Internet-based infringement of copyrighted works.

Illegal circumvention devices, such as the DVDFab Software, directly contribute to widespread,

global infringement of copyrighted works over the Internet.

Even if Feng Tao had feigned compliance with the Preliminary Injunction Order, which

he has not done, this Court should not lift the effective provisions of the Preliminary Injunction

---

[93] U.S. Copyright Office Summary, The Digital Millennium Copyright Act of 1998, at 3 (Dec. 1998),
http://www.copyright.gov/legislation/dmca.pdf (Apr. 21 Wukoson Decl. Ex. B)
[94] S. Rep. No. 105-190, at 8, reprinted at http://digital-law-online.info/misc/SRep105-190.pdf (Apr. 21 Wukoson
Decl. Ex. C).

Order based on purported voluntary compliance because courts must be skeptical of those claiming contrition, which they can easily reverse after denial of an injunction,[95] and "[a]ny doubts in respect of the reach of appropriate injunctive relief should be resolved in favor of an innocent plaintiff and against a willful infringer."[96]

Feng Tao has presented no equitable need to amend the Preliminary Injunction Order, let alone the clear error or manifest injustice required under Rule 59(e). He has not even argued that the Preliminary Injunction Order creates any hardship or supplemented the factual record with any evidence of its effects on Defendants' business, the nature of which remains unclear. While Feng Tao has made no showing of manifest injustice to Defendants, granting his motion would work a clear injustice to AACS LA. Defendants' offer for sale and sale of the DVDFab Software irreparably harms AACS LA. Feng Tao's suggested remedy—to limit the language in the Order to not prohibit sales outside the United States and remove restrictions on the DVD Fab Domain Names, DVDFab Social Media Accounts and third-party service providers—would eviscerate the order and render it practically ineffective.

## CONCLUSION

Based upon the foregoing, Plaintiff AACS LA respectfully requests that this Court deny Defendant Feng Tao's motion to modify the Preliminary Injunction Order.

Dated:   New York, New York
         April 21, 2014

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:   /s/ G. Roxanne Elings

G. Roxanne Elings
(RoxanneElings@dwt.com)
George Wukoson

---

[95] *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1221-22 (C.D. Cal. 2007).
[96] *Imagineering, Inc. v. Van Klassens, Inc.*, 851 F. Supp. 532, 541 (S.D.N.Y. 1994), *aff'd in part and vacated in unrelated part*, 53 F. 3d 1260 (Fed. Cir. 1995).

(GeorgeWukoson@dwt.com)
1633 Broadway, 27th Floor
New York, New York 10019
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

(*pro hac vice* applications concurrently
filed)
James D. Nguyen
(jimmynguyen@dwt.com)
Sean M. Sullivan
(seansullivan@dwt.com)
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

*Attorneys for Plaintiff Advanced Access
Content System Licensing Administrator,
LLC*