UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADVANCED ACCESS CONTENT SYSTEM
LICENSING ADMINISTRATOR, LLC,

                Plaintiff,

      v.

LANNY SHEN d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., SUNREG
TECHNOLOGIES LTD. d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., FENG TAO
d/b/a DVDFAB AND FENGTAO SOFTWARE
INC., SHEN XINLAN d/b/a AUDIO-DVD
CREATOR, and JOHN DOE, JANE DOE and/or
XYZ COMPANY d/b/a DVDFAB, RIPPERBLU-
RAY.COM, DVDFABB.COM and
DVDFFAB.COM,

                Defendants.

Civil Action No.
14 Civ. 1112 (VSB)

**REPLY MEMORANDUM OF
LAW IN SUPPORT OF MOTION
TO AMEND INJUNCTION
PURSUANT TO RULE 59(e)**

Defendant Feng Tao d/b/a Fengtao Software ("Tao"), by his undersigned attorneys, submits this reply memorandum of law, and the accompanying Reply Declaration of Feng Tao in Support of Motion to Amend Injunction ("Tao Reply Decl."), in further support of Feng Tao's motion to amend the Order entered March 4, 2014 (Docket #21) granting a preliminary injunction (the "Injunction") to clarify that it does not apply extraterritorially.

## PRELIMINARY STATEMENT

Plaintiff AACS-LA's opposition mischaracterizes Tao's motion. The motion challenges the Injunction to the extent that it applies extraterritorially. Defendant Tao did

not, as AACS-LA claimed, make "representations that its activities are wholly outside the United States" and has not "feigned operating exclusively outside the United States." To the contrary, Tao's moving papers indicate that Fengtao Software has discontinued sales of the Accused Products to the United States. The motion merely seeks relief to the extent that the Injunction applies to sales that have no connection with the United States, and sales of the Unrelated Products.

In response to AACS' mischaracterization of the facts, Tao has submitted a declaration. Tao describes Fengtao Software's sales that have no connection to the United States, and how the Injunction interferes with those sales as well as sales of products that do not violate any rights of Plaintiff. Tao Reply Decl. ¶ 2. He also explains that if AACS-LA has its way, Fengtao Software will be completely shut down and erased from the Internet, unable to conduct business that does not violate AACS' rights and does not violate United States law. Tao Reply Decl. ¶ 3.

**Fengtao Software's Non-US Sales**

Fengtao Software is based in China. The business does not have offices in the United States, does not have any servers in the United States, and does not have employees in the United States. Its software was developed in China and is sold from China. Tao Reply Decl. ¶ 4.

The overwhelming majority of Fengtao Software's worldwide sales are to purchasers located outside the United States. In fact, approximately 65% of Fengtao Software's worldwide sales of the following products listed in the Injunction are to locations outside the United States: (1) DVDFab Blu-ray Ripper (3D plus); (2) DVDFab Blu-ray Copy; (3) DVDFab Blu-ray to DVD Converter; (4) DVDFab HD Decrypter; (5) Passkey for Blu-ray; and (6) Passkey Lite (collectively, the "Accused Software"). Sales that originate in China to

2

purchasers located outside the United States do not have any connection to the United States.  Tao Reply Decl. ¶ 5-6.

**The Unrelated Products**

A substantial portion of Fengtao Software's worldwide sales are for products that do not circumvent technological measures developed or licensed by AACS-LA.  These products include the following: DVD Copy, DVD Ripper, DVD Creator, Blue-ray Creator, Video Converter, and 2D to 3D Converter (the "Unrelated Products").  These products have nothing to do with AACS.  Tao Reply Decl. ¶ 7.

**The Injunction Prevents Sales of Unrelated
Products, and Sales Outside the United States**

As worded, the Injunction is not limited geographically, and appears to be global in scope.  This prohibits and interferes with Fengtao Software's sales of the Accused Products outside the United States.  It also interferes with Fengtao Software's sales of the Unrelated Products. As a result, Fengtao Software is being substantially harmed, in ways that are unrelated to any claims of AACS-LA relating to violations of United States law. Tao Reply Decl. ¶ 8.

The Injunction required domain name registries and registrars to disable, render inactive and render non-transferable the following domain names that were used to promote sales of Fengtao Software's products: DVDFab.com, DVDFab.net, DVDIdle.com, 3d-video-converters.com, 3dBluRay-ripper.com, Blu-Ray-ripper.us, Blu-Ray-Software.us, BluRayripper.jp, BluRaysbs3d.com, BluRaysoft.jp, CopyBluRay.us, DVDFab.jp, DVDFab9.com, DVDvideosoft.jp, kopiersoftware.com, macBluRaycopy.com, mourlife.com, readtechnews.com, sbs3d.com, sbs3dconverter.com, sbs3dcopy.com, sbs3dripper.com, tracehotnews.com, videoconverter.jp, wollytech.com, xn--dvd-ti4bzc1jla2oj3ne.com, 2d-3d-converter.com, copyDVDsoftware.us, sbs3dcreator.com, DVDFab.de, audio-dvd-creator.com,

ripperBluRay.com, DVDFabb.com and DVDFfab.com (the "DVDFab Domain Names").  Tao Reply Decl. ¶ 9.

Many of the DVDFab Domain Names were registered under generic top level domains ("gTLDs") such as .com and .net.  Registration of these TLDs is not limited to users in the United States.  Websites accessible through gTLD domains are not limited to sites intended for users located in the United States.  To the contrary, these are *generic* TLDs widely used and registered by businesses located outside the United States.  Tao Reply Decl. ¶ 10.

Several of the DVDFab Domain Names were registered under country code TLDs ("ccTLDs") such as .jp and .de.  These ccTLD domains have no connection to the United States.  Tao Reply Decl. ¶ 11.  Four of the DVDFab Domain Names were registered under the .us ccTLD.  Fengtao Software is not seeking to release the .us domain name registrations from the Injunction.  Tao Reply Decl. ¶ 12.

By rendering the DVDFab Domain names inactive, the Injunction prevents Fengtao Software from using them for sales of the Unrelated Products, and from using them for sales of the Accused Products outside of the United States.  Tao Reply Decl. ¶ 13.

The Injunction also prohibits third parties from providing mission critical services to Fengtao Software.  For example, it prohibits payment processors from processing payments for Fengtao Software.  As a result of the Injunction, such parties have discontinued *all* services to Fengtao Software.  Tao Reply Decl. ¶ 14.

By causing the third party service providers to discontinue all services, the Injunction is interfering with Fengtao Software's ability to make sales of the Unrelated Products, and to make sales of the Accused Products outside of the United States.  Tao Reply Decl. ¶ 15.

**Fengtao Software's Cessation of Sales**

AACS-LA claims that Fengtao Software is in contempt of the Injunction because it is continuing sales to the United States. This is not true. In compliance with the Injunction, Fengtao Software has discontinued sales of the Accused Products to the United States. Fengtao Software has intentionally programmed its systems to reject sales from the United States. Tao Reply Decl. ¶ 16.

AACS's only evidence that Fengtao Software is continuing to sell the Accused Products is a single sale shown in Exhibit G to the Hewlett Declaration (Docket #33-9). However, inspection of Exhibit G indicates that the computer was running Chinese versions of Windows and Microsoft Office. Feng Tao's staff also traced the transaction details and confirmed that the purchase originated from a computer in China. Tao Reply. Decl. ¶ 17 and Exhibit 1. Because the purchaser's computer was located in China, Exhibit G does not show a sale to the United States. Instead, it confirms that the Accused Software is not being sold to the United States because AACS-LA had to get someone in China to make the purchase. Tao Reply Decl. ¶ 18.

**Harm to Fengtao Software**

The Injunction is causing severe harm to Fengtao Software that is unrelated to any activities accused of violating United States law. As described in the Tao Reply Declaration, due to the Injunction, the DVDFab Domain Names cannot be used for sales of the Accused Products to customers outside the United States, for sales of the Unrelated Products, or for customer support. This is extremely detrimental to Fengtao Software because customers and potential customers are familiar with these domain names. The Injunction also caused Fengtao Software's payment processor to discontinue processing all transactions, not just transactions related to the Accused Products. This prevented the business from making any sales at all for approximately two weeks. As a result of the

5

Injunction, Fengtao Software has lost and is continuing to lose substantial sales of the Accused Products outside the United States, and sales of the Unrelated Products. Tao Reply Decl. ¶ 19.

## ARGUMENT

### I.   TAO'S MOTION TO MODIFY THE INJUNCTION IS PROPERLY BEFORE THE COURT

AACS's argument that Tao's motion is not properly before the Court due to the default is incorrect. Even in cases involving entry of default judgments, the Second Circuit has repeatedly held that defendants are entitled to be heard, notwithstanding their default. For example, in *Brock v. Unique Racquetball and Health Clubs, Inc.*, the court held that the defendant was entitled "to be heard concerning the nature and details of the judgment to be entered..." 786 F.2d 61, 65 (2d Cir. 1986). Similarly, in *City of New York v. Mickalis Pawn Shop, LLC*, the Court of Appeals explained,

> The defendants did not, by defaulting, forfeit the right to challenge the lawfulness of the injunctions. See *Finkel*, 577 F.3d at 83 n. 6; *Brock*, 786 F.2d at 65; see also *Spamhaus Project*, 500 F.3d at 603-04 (vacating permanent injunction imposed after default judgment as violative of Rule 65(d)); *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir.1975) (vacating permanent injunction imposed after default judgment).

645 F.3d 114, 143 (2d Cir. 2011). In the same way, Defendant Tao is entitled to be heard with regard to the scope of the Injunction.

Plaintiff's argument that Tao lacks standing due to the default is also unavailing. Tao has sought leave to file a motion to vacate the default. Additionally, Plaintiff failed to cite any binding Second Circuit authority for this proposition, and the only case Plaintiff cited from the Southern District of New York arose *after* the court had granted plaintiff's motion for a default judgment. *See Dixon v. Ragland*, No. 03 Civ. 826, 2005 WL 2649484 at *4 (S.D.N.Y. Oct. 14, 2005) (granting motion for default judgment).

Given that there has been no default judgment entered in this case, *Dixon* and the other cases cited by Plaintiff that involve default judgments are readily distinguishable.

Plaintiff's argument that Defendant Tao has admitted liability is also without merit. First, Tao's motion seeks to modify the *scope* of the Injunction; he has not contested the Injunction insofar as it relates to sales to the United States. Second, Tao has sought leave to file a motion to vacate the Clerk's entry of default, and Plaintiff's reliance on cases involving motions for entry of default judgments is again misplaced. Third, even if the Court accepts the factual allegations of the Complaint as true, the Court nevertheless is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Reiseck v. Universal Communications of Miami, Inc.*, 2014 WL 11000140 at *3 (S.D.N.Y. Mar. 19, 2014). "[A] district court retains discretion under [Federal Rule of Civil Procedure] 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action..." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) *quoting Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

## II.    TAO HAS DEMONSTRATED THE INJUNCTION SHOULD BE MODIFIED PURSUANT TO RULE 59(E)

Contrary to Plaintiff's characterization, Tao has not filed a motion for reconsideration, which would be governed by Rule 54(b) and Local Civil Rule 6.3. As such, Plaintiff's cases are inapposite. For example, *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) involved a motion for reargument and reconsideration pursuant to Rule 54(b) and Local Civil Rule 6.3. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 881 F. Supp. 2d 532 (S.D.N.Y. July 27,

2012), *aff'd* 729 F.3d 99 (2d Cir. 2013)[1].  Rather, "[t]he decision whether to modify a

preliminary injunction involves an exercise of the same discretion that a court employs in

an initial decision to grant or deny a preliminary injunction." *Weight Watchers Int'l, Inc. v.*

*Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005).  Moreover, the Second Circuit has

explained that the standard for modifying a preliminary injunction is lower than the

standard to modify a permanent injunction.  *See Sierra Club v. U.S. Army Corps of*

*Engineers,* 732 F.2d 253, 256 (2d Cir. 1984) (contrasting standard to modify preliminary

versus permanent injunction).

      Plaintiff's memorandum in opposition reads as if Tao is challenging the

entire Injunction.  However, Tao did not challenge the Injunction in its entirety.  In fact, his

motion expressly stated that he "is not challenging the injunction to the extent that it

prohibits sales of the DVDFab Software to the United States or prohibits the

Circumventing Activities from taking place in the United States." *See* Memorandum of

Law in Support, p. 7, n 3.  Tao's motion concerns "sales that take place wholly within

China, sales from China to countries other than the United States, and sales of the

Unrelated Products." Memorandum of Law in Support, p. 8.

      In his moving papers, Tao demonstrated that the Injunction should be

modified to the extent that it applies extraterritorially in order to prohibit or interfere with

conduct outside the United States.  As set forth below, Plaintiff has not refuted that

showing.

III.    PLAINTIFF HAS FAILED TO SATISFY THE EXCEPTION TO THE GENERAL RULE THAT
       THE COPYRIGHT LAW DOES NOT APPLY EXTRATERRITORIALLY

      Plaintiff has conceded the general principle that the Copyright Act does not

apply extraterritorially.  *See* Memorandum in Opposition, p. 16.  Plaintiff's assertion that

---

[1] The *Kolel* defendant's Notice of Motion for Reargument and Reconsideration is annexed hereto as Attachment 1.

that this case falls within the exception to the rule against extraterritoriality is incorrect factually and legally. Plaintiff has not made any showing of fact sufficient to warrant application of United States copyright law to wholly extraterritorial acts. As noted above, the Accused Products were developed in China and are sold from China. Tao's motion concerns sales of software developed outside the United States, offered for sale from a location outside the United States, and offered to customers located outside the United States. Tao Reply Decl. ¶¶ 4-6. Such "purely extraterritorial conduct ... is itself non actionable." NIMMER ON COPYRIGHT § 17.02 p. 17-20. Moreover, AACS-LA did not offer any opposition with regard to the Unrelated Products, thus conceding they should not be subject to the Injunction.

Plaintiff's reliance on the majority holding in *Kirtsaeng* is also misplaced. Kirtsaeng involved works that were imported *into the United States,* allegedly in violation of the import clause. The holding of the case is that for purposes of the first sale doctrine, works "lawfully made under this title" includes works made abroad that are later imported into the United States. *Kirtsaeng v. Wiley*, 133 S.Ct. 1351 (2013). *Kirtsaeng* did not involve application of the Copyright Act to acts of alleged infringement that took place entirely outside of the United States, and it is inapposite here, where AACS-LA has not alleged products sold abroad have entered the United States.

All of the cases Plaintiff cited in its Memorandum in Opposition involved conduct in the United States. For example, in *McGraw-Hill Companies, Inc. v. Ingenium Technologies Corp.,* the defendant developed software that was sold to McGraw-Hill's customer base, including 80 customers in New York. 375 F. Supp. 2d 252, 254 (S.D.N.Y. June 14, 2005). Similarly, in *National Football League v. Primetime 24 Joint Venture*, the court found the defendant's "uplink transmission of signals captured in the United States" was a step in the process sufficient to constitute a public performance. 211 F.3d 10, 13 (2d

Cir. 2000).  That Primetime's infringement began in the United States is clear from the

district court decision, indicating the complaint alleged the signals were captured "in the

United States."  *See National Football League v. Primetime 24 Joint Venture,* 1999 WL

163181 (S.D.N.Y. Mar. 24 1999) *aff'd* 211 F.3d 10 (2d Cir. 2000).  And in *Bose Corp. v.*

*Silonsonnic Corp.,* the court noted that defendants in many if not most instances acquired

the Bose products from authorized sellers, "mainly in and around the New York

metropolitan area."  413 F. Supp. 2d 339, 346 n. 2 (S.D.N.Y. Feb. 7, 2006).[2]

    Implicitly conceding that the conduct which is the subject of Tao's motion

does not start, end or otherwise occur in the United States, Plaintiff argues that the Court

should continue the injunction on the grounds that the acts abroad are somehow "felt"

within the United States.  First, Plaintiff cites no binding Second Circuit authority for the

proposition that conduct that takes place entirely outside the United States can be enjoined

merely because the acts are "felt" within the United States.  Second, the cited language is

dicta, because each of the cases referenced involved copyright infringement in the United

States.  For example, *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*

involved infringing cartoons posted on the internet that were available to computers within

the United States.  216 F. Supp. 2d 198, 225 (S.D.N.Y. Mar. 11, 2002).  Similarly, in

*Centrifugal Force, Inc. v. Softnet Communication, Inc.,* the plaintiff sued for directly

infringing copyright in the State of New York, and alleged that the defendant created,

developed, promoted, marketed, sold and otherwise released the infringing software into

the United States.  2009 WL 1059647 (S.D.N.Y. Apr. 17, 2009) (noting that defendant

would have a point if plaintiff sought to recover for an act that was solely committed

---

[2] *Shropshire v. Canning,* 809 F.Supp.2d 1139, 1146 (N.D. Cal. 2011) involved videos that were
uploaded to YouTube's servers in California for display in the United States. *Louis Vuitton*
*Malletier, S.A. v. Akanoc Solutions, Inc.,* No. C 07-3952, 2010 WL 5598337, at *2-3 (N.D. Cal. Mar.
19, 2010) involved the sale of goods to customers in the United States.

abroad).[3] Because each of the cited cases using the acts "felt" in the United States standard involved actual conduct that took place in the United States, the holdings are merely dicta. Moreover, as Professor Parish has explained, the "effects test" is dangerous and likely to lead to "a significant threat to long-term American interests." Austen Parrish, *The Effects Test: Extraterritoriality's Fifth Business*, 61 VAND. L. REV. 1455, 1483-1494 (2008) (explaining that extraterritoriality is irreconcilable with democratic principles, creates piecemeal solutions, is perceived as illegitimate, and may result in foreign retaliation).

Plaintiff's efforts to distinguish the Ninth Circuit holding in *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088 (9th Cir. 1994) are unavailing. The *Subafilms* decision has been criticized for its limited interpretation of whether the Copyright Act creates an exclusive right of authorization. *See e.g. Curb v. MCA Records, Inc.*, 898 F. Supp. 586, 594 (M.D. Tenn. 1995).[4] The *Curb* case supports Tao's argument, since it held that "the Court must determine whether an act of copyright infringement occurred within the boundaries of the United States." *Id.* Even the cases criticizing the Ninth Circuit apply the general rule against extraterritoriality. For example, in *National Football League v. Primetime 24 Joint Venture*, the district court found that defendant's transmission of broadcast signals "captured in the United States" was a "domestic predicate act [which is] itself an act of infringement in violation of the [United States] copyright law." No. 98 Civ. 3778 (LMM), 1999 WL 163181 (S.D.N.Y. Mar. 24, 1999) *aff'd* 211 F.3d 10, 13 (2d Cir. 2000) *citing Fun-Damental Too Ltd. v. Gemmy Ind. Corp.*, 1996 WL 724734 at *5 (S.D.N.Y. Dec. 17, 1996).

---

[3] As noted above, *McGraw-Hill Companies v. Ingenium Technologies Corp.* also involved sales to New York.
[4] The criticism of *Subafilms* in *Expediters Intern. of Washington, Inc. v. Direct Line Cargo Mgt. Svcs., Inc.*, 95 F. Supp. 468, 476 (D.N.J. 1998) also concerned the *Subafilms* holding that mere authorization is not a violation of the Copyright Act.

In the instant case, Plaintiff's claims are for trafficking in circumvention technology.  As noted in the Tao Reply Declaration, Tao is no longer selling the Accused Products to the United States, and is not challenging the injunction with regard to the United States.  Tao Reply Decl. ¶ 16.

Instead, Tao's motion concerns activity that takes place wholly outside the United States.  With respect to sales of the Accused Products outside the country, Plaintiff has not alleged the requisite elements to satisfy the exception to the rule against extraterritoriality, namely "that the conduct (1) took place in the United States, and (2) was in violation of the Copyright Act." *Roberts v. Keith*, 2009 WL 3572962 at *4-5 (S.D.N.Y. Oct. 23, 2009). Plaintiff cannot make such allegations, because the software was developed outside the United States, is sold from China, and the customers are not in the United States.  Such sales simply have no connection with the United States. Tao Reply Decl. ¶ 4-6. This kind of "purely extraterritorial conduct ... is itself non actionable." NIMMER ON COPYRIGHT § 17.02 p. 17-20. With regard to entirely foreign sales of the Accused Products, there is simply no "step in the process" that takes place in the United States, and no basis for extraterritorial application of United States laws. *See Roberts*, 2009 WL at *4-5 (granting motion to dismiss where complaint failed to allege defendant engaged in infringing activity in the United States); 17 U.S.C. § 502 (an injunction "shall be operative throughout the United States"). By shutting down domain names and service providers outside the United States, the Injunction operates extraterritorially.  Further, Plaintiff has not even alleged that the Unrelated Products violate the DMCA, yet such sales were also blocked by the Injunction.  Finally, AACS-LA has not made any showing that it is entitled to any relief whatsoever with regard to the Unrelated Products.

12

## CONCLUSION

For the reasons set forth herein and in his moving papers, defendant Feng Tao urges the Court to modify the injunction to clarify that it is limited to the United States and does not prohibit sales outside the United States, and to remove the restrictions on the DVDFab Domain Names, DVDFab Social Media Accounts, and the third party service providers.

Dated: New York, New York
      May 5, 2014

**SCHOEMAN UPDIKE KAUFMAN
STERN & ASCHER LLP**

By: _Nancy J. Mertzel_
Nancy J. Mertzel
551 Fifth Avenue
New York, New York 10176
(212) 661-5030

*Attorneys for Defendant Feng Tao d/b/a
Fengtao Software*

**Attachment 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
KOLEL BETH YECHIEL MECHIL OF                            :
TARTIKOV, INC.,                                         :    Docket No. 11-CIV-7707
                                                        :    (VM) (KNF)
                    Plaintiff,                          :
                                                        :
         -against-                                      :
                                                        :    **NOTICE OF MOTION FOR**
YLL IRREVOCABLE TRUST, MERIDIAN                         :    **REARGUMENT AND**
TRUST COMPANY, as Trustee of YLL                        :    **RECONSIDERATION**
Irrevocable Trust, KOCHAV S.A.R.L., a                  :
LUXEMBOURG S.A.R.L. and                                 :
WILMINGTON SAVINGS FUND SOCIETY,                        :
FSB,                                                    :
                    Defendants.                         :
------------------------------------------------------- x

     **PLEASE TAKE NOTICE,** that upon the accompanying Declaration of Stephen R.

Stern, dated July 25, 2012, the exhibits annexed thereto, the accompanying Memorandum of

Law, dated July 25, 2012, and all the prior proceedings hereto had herein, Defendants YLL

Irrevocable Trust and Kochav S.A.R.L. will move this Court before the Honorable Victor

Marrero, United States District Judge, at the United States Courthouse, 500 Pearl Street, New

York, New York, on submission or at such time as the Court may direct, for an Order pursuant to

Rule 54(b) of the Federal Rules of Civil Procedure and Local Rule 6.3, granting reargument and

reconsideration of the Court's Decision and Order dated July 11, 2012 (ECF No. 78) and, upon

granting reargument and reconsideration, (a) denying the motion of Kolel Beth Yechiel Mechil

of Tartikov, Inc. to confirm the "First Preliminary Decision, Ruling and Award of the Rabbinical

Court," dated April 10, 2012 (the "Award"), (b) vacating said Award, (c) alternatively,

precluding the confirmation and enforcement of the Award until a full evidentiary hearing can be

conducted on an expedited basis, (d) directing the deposit into escrow of the Policies at issue to

be held by Wilmington Savings Fund Society, FSB as securities intermediary pending the outcome of this Motion together with any sums received by Kolel Beth Yechiel Mechil of Tartikov, Inc. with regard to the ownership of the Policies, and (e) granting such other and further relief in favor of YLL Irrevocable Trust and Kochav S.A.R.L. as the Court deems just and proper.

Dated:  New York, New York
        July 25, 2012

                                        HOFFINGER STERN & ROSS, LLP
                                        Attorneys for Defendants YLL Irrevocable
                                        Trust and Kochav S.A.R.L.


                                        By:    Stephen R. Stern
                                               Mark W. Geisler
                                        150 East 58th Street, 19th Floor
                                        New York, New York 10155
                                        (212) 421-4000

To:     Ira S. Lipsius, Esq.
        Lipsius-Benhaim Law, LLP
        Attorneys for Plaintiff
        80-02 Kew Gardens Road, Suite 1030
        Kew Gardens, New York 11415
        212-981-8440

        John Demmy, Esq.
        Stevens & Lee, P.C.
        Attorneys for Defendant Wilmington
                Savings Fund Society, FSB
        1105 North Market Street, 7th Floor
        Wilmington, Delaware 19801
        (302) 425-3308

        Ronald D. Coleman, Esq.
        Goetz Fitzpatrick LLP
        Attorneys for Defendant Rabbi
                Shlomo Zalman Kaufman
        One Penn Plaza -- Suite 4401
        New York, NY 10119
        212-695-8100