**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

---

ADVANCED ACCESS CONTENT SYSTEM
LICENSING ADMINISTRATOR, LLC,

                   Plaintiff,

        v.

LANNY SHEN d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., SUNREG
TECHNOLOGIES LTD. d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., FENG TAO
d/b/a DVDFAB AND FENGTAO SOFTWARE
INC., SHEN XINLAN d/b/a AUDIO-DVD
CREATOR, and JOHN DOE, JANE DOE and/or
XYZ COMPANY d/b/a DVDFAB, RIPPERBLU-
RAY.COM, DVDFABB.COM and
DVDFFAB.COM,

                Defendants.

NO. 14-cv-1112 (VSB)

 

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT FENG TAO d/b/a DVDFAB AND FENGTAO**
**SOFTWARE INC.'S MOTION TO VACATE ENTRY OF DEFAULT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

      A.     Defendants' Business ................................................................................. 3

      B.     Defendants' Strategy Upon Receiving Notice of AACS LA's Motion for
            Preliminary Injunction and of this Action ............................................... 5

ARGUMENT ................................................................................................................... 10

      A.     Defendants Willfully Defaulted. .......................................................... 11

      B.     Defendants Fail to Present a Meritorious Defense to the Underlying
            Claims as Required and Even Disclaimed the Intent to Do So ............................ 13

            1.     Defendants Fail to Properly Assert a Meritorious Defense. ..................... 14

            2.     The Scope of the Preliminary Injunction Order is Proper. ....................... 14

      C.     Defendants' Motion Should be Denied Based on Willfulness and Lack of
            a Meritorious Defense, and Potential Prejudice Need Not be Considered. .......... 19

CONCLUSION ................................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Am. Alliance Ins. Co. v. Eagle Ins. Co.,*
  92 F.3d 57 (2d Cir. 1996), *rev'd on other grounds sub nom,* 92 F.3d 57
  (2d Cir. 1996)............................................................................................................11, 12, 14

*Angel v. Queens Blvd. Car Wash,*
  No. 06-CV-6667, 2008 WL 111159 (E.D.N.Y. Jan. 8, 2008) .................................................12

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006).................................................................................................................19

*Brock v. Unique Racquetball and Health Clubs, Inc.,*
  786 F.2d 61 (1986)...................................................................................................................11

*Burda Media, Inc. v. Viertel,*
  417 F.3d 292 (2d Cir. 2005).....................................................................................................14

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.,*
  No. 08 Civ 5463, 2009 WL 1059647 (S.D.N.Y. Apr. 17, 2009)............................................15

*City of New York v. Mickalis Pawn Shop, LLC,*
  645 F.3d 114 (2d Cir. 2011).....................................................................................................11

*Conetta v. National Hair Care Centers, Inc.,*
  186 F.R.D. 262 (D.R.I. 1999) ..................................................................................................13

*Directv, Inc. v. Rosenberg,* No. 02 Civ. 2241, 2004 WL 345523 (S.D.N.Y. Feb.
  24, 2004)*. ................................................................................................................................*10

*Enron Oil Corp. v. Diakuhara,*
  10 F.3d 90 (2d Cir. 1993) ............................................................................. *passim*

*Equal Employment Opportunity Comm'n v. Arabian American Oil Co.,*
  499 U.S. 244 (1991)..................................................................................................................15

*Gucci America, Inc. v. Gold Jewelry Center,*
  158 F.3d 631 (2d Cir. 1998).....................................................................................................12

*I.L.G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.,*
  986 F. Supp. 816 (S.D.N.Y. 1997)...........................................................................................14

*Icho v. Hammer,*
  434 Fed. Appx. 588 (9th Cir. 2011)..........................................................................................13

*ILGWU Nat'l Retirement Fund v. Empire State Mills Corp.,*
  696 F.Supp. 885 (S.D.N.Y.1988)..............................................................................................13

*King v. Galluzzo*,
    223 F.R.D. 94 (E.D.N.Y. 2004) ........................................................................................13

*Kulwa v. Obiakor OB/GYN P.C.*,
    No. 12-CV-1868, 2013 WL 504383 (E.D.N.Y. Feb. 8, 2013) ...................................11, 13, 20

*Litecubes, LLC v. Northern Light Prods., Inc.*,
    523 F.3d 1353 (Fed. Cir. 2008).......................................................................................19

*Louis Vuitton Malletier v. Akanoc Solutions, Inc. No C 07-03952 JW*,
    2010 WL 5598337 (N.D. Cal. Mar. 19, 2010).......................................................................17

*Mason Tenders Dist. Council of Greater New York v. WTC Contracting, Inc.*,
    2011 WL 4348152 (S.D.N.Y. Sept. 16, 2011) ......................................................................20

*McGraw-Hill Cos, Inc. v. Ingenium Tech. Corp.*
    375 F. Supp. 2d 252 (S.D.N.Y. 2005).................................................................................16

*Meehan v. Snow*,
    652 F.2d 274 (2d Cir. 1981)...........................................................................................10

*Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*,
    105 F.R.D. 113 (S.D.N.Y.1985) ...................................................................................12, 13

*Quaak v. KPMG Bedrijfsrevisoren*,
    361 F.3d 11 (1st Cir. 2004).............................................................................................13

*Roberts v. Keith*,
    No. 04 CV 10079, 2009 WL 3572962 (S.D.N.Y. Oct. 23, 2009)............................................19

*S.E.C. v. Breed*,
    No. 01-CV-7798, 2004 WL 1824358 (S.D.N.Y. Aug. 13, 2004)...........................................11

*SEC v. McNulty*,
    137 F.3d 732 (2d Cir. 1998)....................................................................................12, 13, 19

*Shropshire v. Canning*,
    809 F.Supp.2d 1139 (N.D. Cal. 2001). ...............................................................................16

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
    374 F.3d 158 (2d Cir. 2004)............................................................................................14

*Estate of Stewart v. Sugar Hill Music Pub. Ltd.*,
    10 CIV. 2632 LTS JLC, 2012 WL 4900927 (S.D.N.Y. Oct. 12, 2012) *order
    vacated in impertinent part on reconsideration sub nom. Stewart v. Estate of
    Sugar Hill Music Pub. Ltd.*, 10 CIV. 2632 LTS JLC, 2013 WL 1405422
    (S.D.N.Y. Apr. 8, 2013).............................................................................................15, 16, 19

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*,
    682 F.3d 292 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 846, 184 L. Ed. 2d 655
    (U.S. 2013)......................................................................................................15

*Trustees of Local 807 v. Maritime Fish Products, Inc.*
    No. 11 CV 844 NV, 2012 WL 2609321 (E.D.N.Y. May 31, 2012).......................20

*United Bank of Kuwait PLC v. Eventure Energy Enhanced Oil Recovery*
    *Assocs.—Charco Redondo Butane*, 755 F. Supp. 1195 (S.D.N.Y. 1989)..........11, 12

*Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd.*,
    02 CIV. 1151, 2003 WL 42001 (S.D.N.Y. Jan. 6, 2003).........................................15

*Wultz v. Bank of China Ltd.*,
    910 F. Supp. 2d 548 (S.D.N.Y. 2012).....................................................................13

**Rules**

Fed. R. Civ. P. 12..............................................................................................................7

Fed. R. Civ. P. 55...........................................................................................................10

Fed. R. Civ. P. 59.............................................................................................................8

**Secondary Sources**

4 M. Nimmer & D. Nimmer, Copyright § 17.02 (2012) ...............................................15

Plaintiff Advanced Access Content System Licensing Administrator, LLC ("AACS LA" or "Plaintiff"), by its undersigned attorneys, submits this memorandum of law in opposition to Defendant Feng Tao d/b/a Fengtao Software's ("Feng Tao" or "Feng Tao Defendant") motion to vacate the entry of default against the defendants ("Defendants") in this action, as memorialized by the Clerk's Certificate of Default, dated Mar. 18, 2014 [Doc. No. 26] (the "Clerk's Certificate of Default").

## PRELIMINARY STATEMENT

For Defendants to set aside the default, they must submit credible testimony showing the default was excusable (certainly not willful or strategic) and that they have a meritorious defense to the lawsuit.  But the evidence shows the default was not only willful but a sophisticated tactical move.  And Defendants do not even argue they have a meritorious defense to Plaintiff's claims.

Defendants admit they knew about the preliminary injunction hearing and this action well prior to entry of the default.  However, the evidence shows they never asked Plaintiff, Plaintiff's counsel, or the Court for an extension to respond to the Complaint.  They claim they consulted with some lawyers, and while we cannot know what passed between Defendants and the lawyers, it is reasonable to conclude any such lawyer would have advised Defendants about seeking an extension to respond to the Complaint or timely responding.

Defendants have gone to great lengths to hide themselves, concealing their identities, relationships, and whereabouts as they conducted their illegal business.  They continued to do so even after this Court specifically requested certain disclosures as a condition to considering some relief here.  They have an obvious interest in maintaining their carefully preserved anonymity.

1

Appearing in court to defend this action properly could not be done without sacrificing that anonymity.

Indeed, on March 10th when the domain registries for Defendants' websites ceased providing services to the DVDFab Domains, effectively shutting down the DVDFab Websites, Defendants first response was not to come into court to seek relief from their default. Rather, they opened new websites, principally dvdfab.cn, utilizing a registry and payment processor outside the United States; but otherwise, in Defendants' own words to their customers, including those in United States, business would continue as usual and only "the dot com" had changed.

When Defendants finally deigned to address the Court—even while being in violation of its order—they did not seek relief from their obviously willful default. They sought only to limit the scope of—or more accurately, gut—this Court's Preliminary Injunction Order, dated March 4, 2014 [Doc. No. 21] ("Injunction"), without having to appear properly and disclose their true identities. The current motion to set aside the default came as a last resort, and still Defendants are attempting to maintain as much anonymity as possible. Short of an outright admission that the decision to default was tactical, evidence that a default was willful, and therefore inexcusable, does not get much better.

Even if the tactical nature of the default were less clear, there would be no point in setting aside the default because there is no defense to Plaintiff's claims. Far from offering some meritorious defense that would absolve them of their ongoing misconduct, Defendants have not yet decided *whether* to defend this case on the merits. They seek to set aside the default not to present a defense, but only because they purport to desire a ruling on the validity of personal jurisdiction and service by email (despite actual notice and failure to challenge either one) and to

challenge the scope of the Injunction.[1]  There is no support in the case law for Defendants'
position.

As the relevant cases make clear, Defendants' motion to vacate the entry of default
should be denied based on willfulness alone and particularly given their failure to present—or
even purport to have—a meritorious defense.

## STATEMENT OF FACTS[2]

### A.    Defendants' Business

Defendants' business—whose proprietor is Feng Tao—is a sophisticated international
and illegal software business that promotes itself through a network of polished commercial
websites and many frequently-updated social media accounts.[3]  The United States is Defendants'
largest market.[4]  Defendants almost exclusively utilize English on their multiple DVDFab
Websites, their social media and other marketing channels based in the United States and in their
employees' communications with customers, including specific complex email exchanges
DVDFab employees had with AACS LA's investigators.[5]  Defendants not only take advantage of
United States commerce but claim the protection of United States copyright law and South
Carolina contract law in the agreements they enter into with each of their customers.[6]

---

[1] Declaration of Feng Tao in Support of Motion to vacate Clerk's Default dated June 20, 2014 [Doc. No. 49] ("June 20 Feng Tao Decl."), ¶¶ 12-14, 35.
[2] A full statement of facts is set forth in the complaint in this action (Doc. No., 2, the "Complaint"), as well as AACS LA's Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction, dated Feb. 21, 2014 [Doc. No. 11] (AACS LA's "PI Brief"); its Memorandum of Law in Opposition to Defendant Feng Tao's Motion to Amend Injunction, dated Apr. 21, 2014 [Doc. No. 35] (AACS LA's "Amend Opposition Brief"); and supporting declarations and exhibits thereto.  Many of the facts are also reflected in the transcripts of the March 4, 2014 hearing on Plaintiff's motion for preliminary injunction (Doc. No. 24; "Mar. 4 Tr.") and the May 27, 2014 conference before the Court (Doc. No. 25; "May 27 Tr.").
[3] May 27 Tr. 10:1-14.
[4] June 20 Feng Tao Decl., ¶ 31, Ex. B.
[5] Declaration of Matthew Hewlett, dated Feb. 19, 2014 [Doc. No. 10] ("Feb. 19 Hewlett Decl."), ¶ 14, Exs. A, C & I (English-language websites and responsive English-language email to investigator question); Declaration of Matthew Hewlett, dated April 21, 2014 [Doc. No. 33] ("Apr. 21 Hewlett Decl.") ¶¶15-19, 21-22, Exs. H-L, N-S (English-language websites, social media posts, emails and forum communications); Declaration of Matthew Hewlett, dated July 11, 2014 ("July 11 Hewlett Decl."), Exs. A, B (English-language email exchanges).
[6] Declaration of Matthew Hewlett, dated May 27, 2014 [Doc. No. 44] ("May 27 Hewlett Decl.") ¶ 6, Ex. A.

Despite their focus on the United States, Defendants attempt to insulate themselves from the legal risks they view as accompanying United States ties and physical presence.  Defendants' network of DVDFab Websites is registered using false and misleading registrant names and addresses.[7]  Defendants and their employees communicate with potential customers solely via the DVDFab Websites and/or via email and do not provide identifiable names or true physical addresses on DVDFab Websites.[8]

Defendants are well aware of the illegal nature of their business.  Despite their claims that prior to this action AACS LA never contacted anyone at Fengtao Software requesting that they cease selling the infringing DVDFab Software,[9] the record is clear that AACS LA took steps—of which Defendants are aware—to enforce its rights as against Defendants that should have alerted Defendants that AACS LA might initiate a lawsuit against them.  AACS LA first revoked the host certificate used in the DVDFab Software, to which DVDFab responded by developing versions of the software using different AACS certificates and keys.[10]  AACS LA then contacted Avangate to request that Avangate cease providing product reseller services to the DVDFab websites, which it did.[11]  AACS LA also contacted PayPal, which agreed to and did stop processing payments for DVDFab.com and other websites selling DVDFab Software.[12]  Contrary to Defendants' pleas of ignorance,[13] they could not have been unaware that the central technological component of Defendants' software was revoked by its licensor and rendered inoperable or that two of their primary service providers ceased doing business with them.

---

[7] Complaint ¶ 3; Feb. 19 Hewlett Decl. ¶¶ 23-24, Ex. K.
[8] Complaint ¶ 3; Feb. 19 Hewlett Decl. ¶¶ 6, 13, 32, Exs. A & I.
[9] Memorandum of Law in Support of Motion to Vacate Clerk's Default, dated  June 20, 2014 [Doc. No. 50], ("Defendants' Vacate Br.") at 5; June 20 Feng Tao Decl. ¶¶ 10, 11.
[10] Declaration of Donald Leake, Jr., dated Feb. 11, 2014 [Doc. No. 8] ("Leake Decl."), ¶ 11.
[11] *Id.* ¶ 12.
[12] *Id.* ¶ 13.
[13] *See* Defendants' Vacate Br. at 5; June 20 Feng Tao Decl. ¶¶ 10-11.

**B.      Defendants' Strategy Upon Receiving Notice of AACS LA's Motion for Preliminary Injunction and of this Action**

AACS LA filed its Complaint in this action on February 21, 2014 and simultaneously moved for preliminary injunction against Defendants and the DVDFab Websites.[14]  On February 24, 2014, AACS LA, served—pursuant to court order via email using the email addresses Defendants used for communicating with customers and to register the DVDFab Domain Names—the Summons, Complaint and preliminary injunction motion papers, including an Order to Show Cause noticing a hearing for March 4, 2014.[15]  Defendants acknowledge receiving the papers on February 25, 2014 and admit having actual notice no later than February 26, 2014.[16] Despite having been served and admittedly receiving actual notice of this action and the underlying claims, Defendants failed to appear at or contact AACS LA prior to the hearing.[17] Defendants claim they did not know any attorneys in the United States or have a "regular attorney" in China and so enlisted the services of someone Feng Tao identifies only as a "friend."[18]  Through this "friend" Defendants claim to have contacted, to no avail, two law firms in the United States prior to the preliminary injunction hearing on March 4.[19]  Defendants fail to identify how the law firms were contacted or attach any correspondence detailing the requests. Defendants took no other actions prior to the hearing and claim they were not aware they could contact the Court or AACS LA.[20]

The Injunction was served on Defendants[21] and registries[22] on March 5, 2014. Defendants do not deny having received notice of the Injunction.  Rather than contact AACS LA

---

[14] Complaint; Order to Show Cause for Preliminary Injunction, dated Feb. 21, 2014 [Doc. No. 4].

[15] Affidavit of Service of Omar Johnny, dated Feb. 25, 2014 [Doc. No. 16]; Feb. 19 Hewlett Decl. ¶ 8.

[16] June 20 Feng Tao Decl. ¶¶ 12-14.

[17] Mar. 4 Tr. 2:1-20.

[18] June 20 Feng Tao Decl. ¶ 15.

[19] *Id.* ¶¶ 16-18.

[20] *Id.* ¶ 27.

[21] Affidavit of Service of Omar Johnny, dated Mar. 6, 2014 [Doc. No. 22].

or the Court, they continued business as usual.  The registries responded to the Injunction by disabling the DVDFab Domains on March 10, 2014.[23]

Faced with real consequences from the Injunction, Defendants did three things:

First, Defendants responded by immediately moving their content (in English) to DVDFab.cn, creating BluFab.cn and "re-branding" some of the marketing of the DVDFab Software as "BluFab."[24]  Defendants promoted this change on websites such as ILikeDVDFab.com, as well as through new accounts on Twitter and Facebook and through email to their customers, including in the United States, announcing the new official website at dvdfab.cn and assuring those customers that "nothing has been changed except the 'dot com'."[25] Defendants published a litigation timeline on ILikeDVDFab.com clearly explaining their understanding of the lawsuit and Injunction issued by "Judge Broderick from a New York federal court," and promising to "protect the interests of our existing customers, we have already recovered all the normal businesses to www.dvdfab.cn."[26]

Next, Defendants reached out through their marketing director, Frank, to AACS LA with a settlement offer and an ultimatum—delivered by telephone in sufficiently proficient English— that if AACS "did not accept [Fengtao Software's] offer, [it] would distribute [its] software as freeware."[27]  Feng Tao in his declaration admits to knowing about this threat although after the fact[28] but did not take any corrective action once he was aware the threat was made.

Last, Defendants resumed their search for an attorney.  Feng Tao purports that the disabling of the DVDFab Domain Names spurred Defendants to "immediately follow up on

---

[22] Declaration of George P. Wukoson, dated Apr. 21, 2014 [Doc. No. 34] ("Apr. 21 Wukoson Decl."), ¶ 4.
[23] Apr. 21 Hewlett Decl. ¶ 6, Ex. A.
[24] *Id.* ¶ 9, Exs. B & D.
[25] *Id.* ¶¶ 15-19, Exs. H-L.
[26] *Id.* ¶ 15, Ex. H.
[27] June 20 Feng Tao Decl. ¶ 21.
[28] *Id.*

[their] efforts to obtain counsel in the United States," although they are silent as to what comprised those actions.[29]  Feng Tao purports that as early as March 11, he received referrals to "a few attorneys in New York City," whom the "friend" contacted, including present counsel.[30] Defendants received an engagement letter on March 14, 2014 from another firm, but when that firm purportedly advised Defendants it could not handle the case until the end of March, Defendants engaged present counsel by signing an engagement letter on March 17, 2014, the last day for defendants in this action to answer or otherwise respond to the Complaint.[31]  Feng Tao's declaration and that of his counsel are both silent as to whether Defendants were advised to seek an extension of time to respond to the Complaint, and no one contacted AACS LA or the Court. Defendants' counsel merely states that the March 17 engagement letter sent to Defendants encompassed "an initial assessment of certain issues in the case" and that "at that time, [her] firm had not agreed to appear as counsel of record to defend the litigation."[32]  Regardless of the purpose of engagement at this point in time, it is reasonable to conclude counsel would have advised Defendants about seeking an extension or responding timely or reached out to AACS LA to so seek an extension.  Instead, present counsel did not contact AACS LA for another ten (10) days until March 26, four business days before moving to amend the Injunction.[33]

On April 1, 2014, Defendants moved to amend the Injunction pursuant to Rule 59(e), requesting that this Court wholesale remove the provisions of the Injunction directed to their business operations, including their websites and social media accounts, and to the third-party

---

[29] *Id.* ¶19.
[30] *Id.* ¶ 22-23.
[31] *Id.* ¶¶ 24-25; Fed. R. Civ. P. 12(a).
[32] Declaration of Nancy J. Mertzel in Support of Motion to Vacate Clerk's Default, dated June 20, 2014 [Doc. No. 48] ¶ 4.
[33] Declaration of George P. Wukoson, dated July 11, 2014, ¶ 4.

service providers enabling those operations.[34]  This was the last possible day on which Defendants could move under Rule 59(e).[35]  Defendants approached this Court in the same manner that they conducted their illegal business, namely by concealing their true identity and the location or scope of their business.[36]

Only after it was apparent that the Court might not entertain Defendants' motion to amend the Injunction unless they could demonstrate sufficient cause to set aside the default, did Defendants seek leave to file the current motion.  The Court requested that Defendants—in order, *inter alia*, to make out good cause to vacate the entry of default—elaborate on the following issues among others:

- the identity of Feng Tao and his company, the websites and domain names under his or its control and the company's role in producing the DVDFab Software;[37]

- the percentage of the DVDFab business devoted to different software programs (the "Purportedly Unrelated Products");[38]

- Frank's identity, Defendants' authorization of Frank's call to AACS LA, why Frank called AACS LA but no representative of Defendants contacted the Court, reconciliation of Frank's threat with Defendants' professed interest in only selling DVDFab Software outside of the United States, and further explanation of Frank's call;[39]

- the English proficiency of Defendants' employees and Feng Tao and those employees' familiarity with the legal controversy surrounding their copy protection circumvention business;[40]

- the level of Defendants' business sophistication and Feng Tao's access to sophisticated individuals within the business.[41]

---

[34] Notice of Appearance, dated Apr. 1, 2014 [Doc. No. 27]; Notice of Motion to Amend Injunction Pursuant to Rule 59(e), dated Apr. 1, 2014 [Doc. No. 28]; Memorandum of Law in Support of Motion to Amend Injunction Pursuant to Rule 59(e), dated Apr. 1, 2014 [Doc. No. 29] (Defendants' "Amend Brief"), at 8.
[35] Amend Brief at 4; Fed. R. Civ. P. 59(e).
[36] Amend Opposition Brief at 2, 4-5.
[37] May 27 Tr. at 16:7-18:19.
[38] *Id.* at 20:17-21:1.
[39] *Id.* at 48:21-50:11.
[40] *Id.* at 6:9-7:15.
[41] *Id.* at 10:1-14.

Despite these clear directives from the Court, Defendants are as steeped in mystery as ever; however it is clear that the purpose of Feng Tao's declaration is to portray Defendants' business as a small, unsophisticated, China business with little proficiency in English, no easy access to counsel and no understanding of United States judicial system.  Feng Tao claims the individuals and entities listed in the WHOIS registry as owners of the DVDFab Domains are not properly named in this action and have nothing to do with Defendants' business.[42]  Feng Tao intimates their listing is indicative of Defendants' lack of business sophistication.[43]  Feng Tao's explanations are insufficient in light of the lack of real addresses, even as to those domains registered under Feng Tao's name.[44]  Moreover, Feng Tao fails to identify the owners of the domains whose identity is shielded by a privacy service.[45]  Feng Tao's declaration, overall, was unsupported by any proper evidentiary submissions.[46]

AACS LA and the Court still know nothing about (1) Feng Tao's identity or Defendants' business location in China, (2) the size of Defendants' business, (3) the number of employees, (4) the volume of its sales, (5) the percentage of Defendants' business devoted to different software programs, (6) Frank's identity, (7) why Frank called AACS LA but no representative of Defendants' business contacted the Court, (8) how Frank's threat might be reconciled with Defendants' professed interest in only selling DVDFab Software outside of the United States, (9) the English proficiency of Defendants' employees, (10) Defendants' familiarity with the legal controversy surrounding their copy protection circumvention business, (11) the level of Feng

---

[42] June 20 Feng Tao Decl. ¶ 9.
[43] *See id.* ("Lanny Shen is an individual who has no control over or participation in my business. Lanny Shen lent me a credit card to register the following domain names (at my expense): dvdfab.net and DVDIdle.com."; "Sunreg Technologies is not a company. It was a name used to register the domain name sunreg.com many years ago. The domain name sunreg.com is not in use and was not used for any websites selling DVDFab Software.").
[44] Feb. 19 Hewlett Decl. ¶ 29.
[45] These were: ripperBluRay.com, DVDFabb.com and DVDFfab.com.  Feb. 19 Hewlett Decl. ¶ 23.
[46] The single Avangate business record (June 20 Feng Tao Decl. Ex. B) is hearsay, but in any event confirms that Defendants' business was in significant part directed to the United States.

Tao's business sophistication and (12) his access to sophisticated individuals within the company (the "Unexplained Facts").

Even today, Defendants continue to operate websites, in violation of the Injunction, to market, offer for sale and sell the DVDFab Software at DVDFab.cn, BluFab.cn, FabImg.net, and DVDFab.de.[47]  Internet users may freely download the DVDFab Software from DVDFab.cn, DVDFab.de, and FabImg.net (and the "BluFab" software from BluFab.cn) and purchase license keys for the DVDFab Software from DVDFab.cn using U.S. dollars.[48]  Users in the United States possessing license keys may still freely download and update their DVDFab Software from Fengtao Software's servers and use it to circumvent AACS Technology, which purpose is plainly advertised in the DVDFab Software's settings and its manual.[49]

## ARGUMENT

Federal Rule of Civil Procedure 55(c) provides in pertinent part that "[t]he court may set aside an entry of default for good cause[.]"  Courts in the Second Circuit and this District consider three factors in determining whether there is good cause to so vacate an entry of default: (1) willfulness of the default, (2) presentation of a meritorious defense, and (3) potential prejudice to the opposing party (the "*Enron* factors").[50]  While defaults are not favored where "the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits,"[51] "[d]efault procedures . . . provide a useful remedy when a litigant is confronted by an obstructionist adversary," and "[u]nder such circumstances those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice."[52]

---

[47] Feb. 19 Hewlett Decl. Exs. A & I; Apr. 21 Hewlett Decl. ¶¶ 7-13, Ex. C-E.
[48] Apr. 21 Hewlett Decl. ¶¶ 7-10, 14, Exs. C-E & G.
[49] May 27 Hewlett Decl. ¶¶ 5-8, 17, Exs. A & H.
[50] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Directv, Inc. v. Rosenberg*, No. 02 Civ. 2241, 2004 WL 345523, at *2 (S.D.N.Y. Feb. 24, 2004).
[51] *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).
[52] *Enron*, 10 F.3d at 96.

*Enron* factors are applied to motions to vacate an entry of default or a default judgment.[53] While it is true the test is more rigorous in the case of a default judgment "because the concepts of finality and litigation repose are more deeply implicated in the latter action"[54] courts can and do deny motions to vacate entries of default.  In the recent case of *Kulwa v. Obiakor OB/GYN P.C.*, the court denied the motion to vacate the entry of default where default judgment had not yet been granted, finding based on the defendants' failure to answer the complaint despite their communications to plaintiffs that "the defendants had actual notice of this litigation and made a tactical, willful decision not to respond" and that the defendant was an "obstructionist adversary."[55]  In two of the cases cited by Defendants, *Brock v. Unique Racquetball and Health Clubs, Inc.* and *City of New York v. Mickalis Pawn Shop, LLC*, the Second Circuit separately considered the entries of default from the entries of default judgment and found that the entries of default in both cases were appropriate.[56]

## A.    Defendants Willfully Defaulted.

Of the three *Enron* factors, "willfulness is preeminent, and a willful default will not normally be set aside.  Consideration of the remaining criteria does not give rise to equities sufficient to outweigh the impact of [] defendants' willful conduct."[57]  The Second Circuit has "refused to vacate a judgment where the moving party had apparently made a strategic decision to default."[58]  Where they have found that a party made a strategic decision to default, Second

---

[53] *Id.*

[54] *Id.*; *see also United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.—Charco Redondo Butane*, 755 F. Supp. 1195, 1204 (S.D.N.Y. 1989).

[55] *Kulwa v. Obiakor OB/GYN P.C.*, No. 12-CV-1868, 2013 WL 504383, at *2-4, 8 (E.D.N.Y. Feb. 8, 2013).

[56] *Brock v. Unique Racquetball and Health Clubs, Inc.*, 786 F.2d 61, 64-65 (1986); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129-38 (2d Cir. 2011).

[57] *S.E.C. v. Breed*, No. 01-CV-7798, 2004 WL 1824358, at *12 (S.D.N.Y. Aug. 13, 2004) (internal citations and quotations omitted).

[58] *Am. Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 60 (2d Cir. 1996), *rev'd on other grounds sub nom,* 92 F.3d 57 (2d Cir. 1996).

Circuit courts have held that such a default "will not be vacated."[59]  A finding of bad faith is not necessary for a finding of willfulness; rather, the Second Circuit rule distinguishes between "defaults caused by negligence, which may in some cases be excusable, with defaults resulting from deliberate conduct, which are not excusable," and "it is sufficient that the defendant defaulted deliberately" to support a finding of willfulness.[60]  For example, "[a] default is deemed willful where a defendant simply ignores the complaint without action,"[61] or "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained."[62]

Similar to Defendants here, the defendants in *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.* claimed that their failure to appear, answer, or move was due to the failure of one of the defendant's repeated efforts to find a lawyer.[63]  The court noted that the defendants' claim of excuse for failed efforts to find counsel was "meritless in light of the facts of this case," stating:

> "A bona fide effort to find counsel is certainly relevant to the willfulness of a party's default.  But where a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the opposing party and the court, such neglect is inexcusable.  In sum, defendants' failure to respond is not the type of nonculpable conduct for which relief under Rule 60(b) was designed."[64]

Despite understanding this action at least well enough by March 10, 2014 to post on ILikeDVDFab.com a concise summary ***in English*** of the action,[65] Defendants endeavor to excuse their failure to contact Plaintiff or the court on the basis that they have little proficiency in

---

[59] *Angel v. Queens Blvd. Car Wash*, No. 06-CV-6667, 2008 WL 111159, at *3 (E.D.N.Y. Jan. 8, 2008); *see also Am. Alliance Ins. Co.*, 92 F.3d at 60.
[60] *Gucci America, Inc. v. Gold Jewelry Center*, 158 F.3d 631, 635 (2d Cir. 1998).
[61] *United Bank of Kuwait*, 755 F. Supp. at 1205 (denying defendant's motion to vacate default where default was willful without consideration of the other two *Enron* factors).
[62] *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).
[63] *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1988).
[64] *Id.* at 116-17 (internal citations omitted).
[65] Apr. 21 Hewlett Decl. ¶ 15, Ex. H.

English and no knowledge of the United States court system.[66]  Even if this court found Defendants unsophisticated, "lack of sophistication . . . is no excuse for a defendant['s] default."[67]  "[T]he lack of legal sophistication on the part of a corporation and its principal simply cannot form the basis of a claim of excusable neglect or fraud for purposes of Rule 60(b)[.]"[68]  Moreover, "persons who do business in the United States . . . are subject to the burdens as well as the benefits of United States law," and "a foreign national that chooses to engage in business in the United States likewise must demonstrate due respect for the operation of the American judicial system."[69]

**B.      Defendants Fail to Present a Meritorious Defense to the Underlying Claims as Required and Even Disclaimed the Intent to Do So.**

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense."[70]  The burden is on the defendant to establish such a defense,[71] who "must present some evidence beyond conclusory denials to" do so.[72]  "The failure sufficiently even to allege that defendant [] would prevail at trial means that there would be no point in setting aside the default judgment[.]"[73]

---

[66] Defendants' Vacate Br. at 12; June 20 Feng Tao Decl. ¶ 2.
[67] *King v. Galluzzo*, 223 F.R.D. 94, 97 (E.D.N.Y. 2004) (citing *Original Appalachian*, 105 F.R.D. at 116).
[68] *King v. Galluzzo*, 223 F.R.D. at 97 (quoting *Original Appalachian*, 105 F.R.D. at 116); s*ee also ILGWU Nat'l Retirement Fund v. Empire State Mills Corp.*, 696 F.Supp. 885, 887–88 (S.D.N.Y.1988).  However, status as a sophisticated businessperson is pertinent to the culpability of a defaulting defendant moving to vacate the default. *See Icho v. Hammer*, 434 Fed. Appx. 588, 590 (9th Cir. 2011) ("The district court found Burrell's culpable conduct led to the default judgment and relied on pertinent factors such as  . . . Burrell's status as a sophisticated business man . . . ."); *Conetta v. National Hair Care Centers, Inc.*, 186 F.R.D. 262, 269 (D.R.I. 1999).
[69] *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 554 n.32 (S.D.N.Y. 2012); *Quaak v. KPMG Bedrijfsrevisoren*, 361 F.3d 11, 22 (1st Cir. 2004).
[70] *McNulty*, 137 F.3d at 740 (internal citation and quotations omitted).
[71] *Kulwa* , 2013 WL 504383, at *4.
[72] *Enron,* 10 F.3d at 98.
[73] *Original Appalachian*, 105 F.R.D. at 117 (internal quotation marks omitted).

### 1.      Defendants Fail to Properly Assert a Meritorious Defense.

Defendants fail to allege that they might prevail at trial, and in fact reserve the decision to defend on the merits at all.[74] Feng Tao in his declaration states" before I decide whether I "will defend this case in full on the merits" I would like "a legal ruling on whether I am personally subject to the jurisdiction of the United States courts, whether it was proper for me to be served by email [despite having admitted actual notice], and whether the injunction exceeds the Court's powers."[75]  None of these defenses go to the underlying claims.  Yet, a meritorious defense for purposes of vacating a default must be against the underlying claims pled in the complaint.[76] Not a single one of the cases Defendants cite for the proposition that they need only show a meritorious defense with regard to the injunction rather than the underlying claims bears out that assertion.

Defendants' potential objections to personal jurisdiction and service are not presented, even in a conclusory fashion, as meritorious defenses, and even had they been, Defendants have not articulated these purported defenses beyond expressing a desire for a ruling and certainly have not met the requirement of presenting evidence in favor of them.[77]

### 2.      The Scope of the Preliminary Injunction Order is Proper.

Even if Defendants were correct that the territorial scope of the Injunction could be claimed as a meritorious defense sufficient to set aside a default, they have not shown they would likely prevail on this issue.

---

[74] June 20 Feng Tao Decl. ¶ 35.

[75] *Id.*

[76] *Am. Alliance Ins. Co.* 163 F.R.D. at  213; *see also State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) ("To date, we have never addressed whether a counterclaim, rather than a response to the substance of a complaint, may constitute a meritorious defense."); *I.L.G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 824 (S.D.N.Y. 1997) ("In deciding a motion to vacate a default judgment, a court does not pass judgment on the merits of the defense. The court only determines if the defense is supported by more than mere allegations and raises serious questions as to the validity of the claim.").

[77] *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005).

The Court has not overlooked the general principle that illegal "acts that take place entirely outside of the borders of the United States are not actionable under" the Copyright Act.[78] There are important qualifications to this principle,[79] including where a foreign defendant commits acts abroad that are "felt within the United States" or a predicate act in violation of the Copyright Act taking place "in the United States can justify the application of United States copyright laws to substantive acts of infringement in a territory beyond our borders."[80]  As more completely described below and in AACS LA's Amend Opposition Brief,[81] Defendants' activities in and felt in the United States are within the jurisdiction of the Copyright Act.

Defendants attempt to argue that this court should ignore clear Second Circuit precedent firmly establishing the predicate act doctrine in favor of a single idiosyncratic opinion criticizing that precedent.[82]  The treatise's claim, that *Equal Employment Opportunity Comm'n v. Arabian American Oil Co.*[83] invalidated the predicate doctrine, is incorrect.  It is alive and well in the Second Circuit and this District[84] and was recently adopted by the Fourth Circuit.[85]  That a predicate act in violation of the Copyright Act taking place "in the United States can justify the application of United States copyright laws to substantive acts of infringement in a territory beyond our borders"[86] applies squarely here.  Defendants have undertaken the following predicate acts in the United States: through all of the DVDFab Websites, offered to the public,

---

[78] *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08 Civ. 5463, 2009 WL 1059647, at *9 (S.D.N.Y. Apr. 17, 2009); *see also Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd.*, 02 CIV. 1151, 2003 WL 42001, at *5 (S.D.N.Y. Jan. 6, 2003).

[79] 4 M. Nimmer & D. Nimmer, Copyright § 17.02 pp. 17-18, 17-19 (2012).

[80] *Centrifugal Force*, 2009 WL 1059647, at *9.

[81] Amend Opposition Brief at 3-13, 16-25.

[82] Defendants' Vacate Brief at 18-19.

[83] *Id.,* 499 U.S. 244 (1991).

[84] *See, e.g., Estate of Stewart v. Sugar Hill Music Pub. Ltd.*, 10 CIV. 2632 LTS JLC, 2012 WL 4900927 (S.D.N.Y. Oct. 12, 2012) *order vacated in impertinent part on reconsideration sub nom. Stewart v. Estate of Sugar Hill Music Pub. Ltd.*, 10 CIV. 2632 LTS JLC, 2013 WL 1405422 (S.D.N.Y. Apr. 8, 2013).

[85] *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 308 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 846, 184 L. Ed. 2d 655 (U.S. 2013).

[86] *Centrifugal Force*, 2009 WL 1059647, at *9.

provided and otherwise trafficked in (including selling, providing downloads, and updating) the

DVDFab Software that circumvents AACS technology in the United States; sold at least 36% of

the DVDFab Software to the United States; built up good will in the illegal DVDFab Software

brand through marketing and sales into the United States; and entered into license agreements

with every customer of the DVDFab Software stating that "the software was protected by U.S.

copyright law" and the agreement is "governed by the laws of South Carolina."[87]  This is more

than enough to constitute a predicate act in violation of the Copyright Act taking place.  In *Estate

of Stewart v. Sugar Hill Music Pub. Ltd.*, for example, a single act of signature by the defendants

of sub-publishing agreements in the United States was sufficient to bring purely foreign

unauthorized licensing activity within the jurisdiction of the Copyright Act.[88]

      Defendants ignore the line of cases applying the Copyright Act to activities abroad "felt

within" the United States.[89]  Defendants' previous attempt to distinguish this line of cases[90] as

involving more conduct in the United States than the facts show in this case do not bear out

because:

- Although the *McGraw Hill* court noted for long-arm statute purposes that 80 customers were in New York, the case concerned an Internet-based service that was internationally accessible, based abroad and run from abroad, just like Defendants' business.[91]

- The *Shropshire* defendant's only connection to the U.S. was an upload to a U.S.-based server to display a video on YouTube, which displays videos throughout the world, not merely in the U.S.[92]  Defendants' use of .com, .net and other domains similarly requires use of U.S.-based service providers such as VeriSign.

---

[87] PI Brief at 4-10; Amend Opposition Brief at 3-5; Statement of Facts, *supra*; June 20 Feng Tao Decl. ¶ 31, Ex. B; May 27 Hewlett Decl. ¶ 6, Ex. A.

[88] *Estate of Stewart v. Sugar Hill Music Pub. Ltd.*, No. 10 Civ. 2632, 2012 WL 4900927, at *5 (S.D.N.Y. Oct. 12, 2012).

[89] *See* AACS Amend Opposition Brief at 16-18, 17-18 n.74.

[90] Reply Memorandum of Law in Support of Motion to Amend Injunction, dated May 5, 2014 [Doc. No. 39], at 9-11.

[91] *McGraw-Hill Cos, Inc. v. Ingenium Tech. Corp.* 375 F. Supp. 2d 252, 254-55 (S.D.N.Y. 2005).

[92] *Shropshire v. Canning,* 809  F.Supp. 2d 1139, 1145-47 (N.D. Cal. 2001).

- In *Louis Vuitton*, the defendants used their websites to sell into the United States including to the plaintiff's investigators, just like Defendants used the DVDFab Websites in this case.[93]

Defendants' violations of the DMCA have substantially impacted United States commerce. Defendants sold more DVDFab Software into the United States than any other country and directed its marketing to United States customers.[94] Defendants built DVDFab Software's strong brand reputation through Defendants' substantial activities directed to and taking place in the United States, including marketing and sales of the infringing DVDFab Software.[95] Despite Defendants' protestations to the contrary and attempt to hide behind the .cn registry, they continue to direct their business activities into the United States. Defendants retooled the foreign domain DVDFab Websites for a United States audience and created a new "official website" at DVDFab.cn aimed at a United States audience.[96] They aggressively promoted these e-commerce websites to the United States using United States-based social media, at least one United States-based promotional website and English-language forum posts, press releases and tweets, including many of still photographs of blockbuster American motion pictures.[97] Defendants continue to update DVDFab Software in the United States.[98] Additionally, as discussed in AACS LA's PI Brief and Amend Opposition Brief, the essential purpose of the DVDFab Software is to strip off technical protections and thereby "rip" content from Blu-ray discs, rendering that content "in the clear" and thus readily subject to unauthorized and illegal copying and distribution, including via endemic illegal file sharing.[99]

---

[93] *Louis Vuitton Malletier v. Akanoc Solutions, Inc.* No C 07-03952 JW, 2010 WL 5598337, at *2-3, 19 (N.D. Cal. Mar. 19, 2010).
[94] *See* Statement of Facts Section B, *supra*; and June 20 Feng Tao Decl. ¶ 31, Ex. B.
[95] *See id.*; PI Brief at 4-10; Amend Opposition Brief at 3-5.
[96] *See* Statement of Facts Section B, *supra*; Amend Opposition Brief at 6-12.
[97] *See id.*
[98] May 27 Hewlett Decl. ¶¶ 5-8, Ex. A.
[99] Amend Opposition Brief at 23-24.

Defendants' attempt to excuse their former and continuing United States-directed activities by claiming English is a universal language or that .com domains are used by companies who do not direct their activities into the United States[100] are nothing more than red herrings in light of Defendants' plain and successful targeting of the United States market.

Defendants argue the Injunction should be vacated because it harms them through its collateral effect of barring Defendants from selling purportedly Unrelated Products and Infringing Products outside the United States.[101]  This argument is equally without merit, particularly since Defendants have failed—despite the Court's request[102]—to provide evidence of the volume of those sales.  Notwithstanding, the record demonstrates that the purportedly Unrelated Products are designed either: (1) to circumvent DVD copy and access protection technology (including the CSS technology), which constitute illegal circumvention under the DMCA,[103] or (2) to perform certain secondary functions that are complementary to the DVDFab Software's core illegal video content "ripping" function, as shown particularly by the sale of all of the DVDFab Software and the purportedly Unrelated Products together in a "DVDFab All-In-One" that Feng Tao advertises as "the ultimate solution for you to freely copy, rip, convert, burn, clone any DVD/Blu-ray as desired . . . with ease, convenience, [and] flexibility[.]"[104]  Moreover, Defendants have no legitimate interest in selling the Infringing Products outside the United States.  The DVDFab Software that circumvents AACS Technology is illegal throughout the

---

[100] Seven of the eight .com Chinese websites identified as being "not based in the US or primarily targeted to the US" default to the Chinese language even when accessed from the United States using a United States IP address, and the eighth, vk.com, is a website directed to a European consumer and defaults to English.  July 11 Hewlett Decl. ¶ 7, Ex. C.

[101] Defendants' Vacate Brief at 19.

[102] May 27 Tr. at 20:17-21:1.

[103] *See* Amend Opposition Brief at 20.

[104] May 27 Hewlett Decl. ¶ 18, Ex. J.

world, including in Europe, Japan and China and most of the purportedly Unrelated Products are illegal in the United States and throughout the world.[105]

By contrast, amending the Injunction to allow Defendants to continue their business at the DVDFab Domains and DVDFab Websites would gut the Injunction leaving Plaintiff without a remedy and causing further irreparable harm.

Finally, in an apparent attempt to bypass having to prove a meritorious defense, Defendants improperly argue that the limit on the extraterritorial reach of the Copyright Act is a matter of subject matter jurisdiction rather than an element of a claim, despite having stated the opposite in their Amend Brief.[106]  Defendants' prior position was correct; it is well settled by Federal Circuit and Southern District of New York cases applying the Supreme Court case *Arbaugh v. Y&H Corp.*[107] that territorial limits on the Copyright Act do not limit the subject matter jurisdiction of federal courts, and that issue is instead properly treated as an element of the claim.[108]

## C.   Defendants' Motion Should be Denied Based on Willfulness and Lack of a Meritorious Defense, and Potential Prejudice Need Not be Considered.

In addition to having discretion to deny the motion to vacate the default based on willfulness alone,[109] "the district court [] has discretion to deny the motion to vacate if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense."[110]  Because Defendants have willfully defaulted and have failed to put forth any meritorious defenses, the absence of potential prejudice to AACS LA if the default were vacated does not entitle Defendants to relief from the entry of default, and the Court need

---

[105]  *See, e.g.*, Amend Opposition Brief at 19-25; May 27 Tr. 24:13-22, 45:23-46:15.
[106]  Defendants' Vacate Br. at 17; Feng Tao Amend Br. at 6 n.2.
[107]  546 U.S. 500, 511, 515-16 (2006).
[108]  *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353 (Fed. Cir. 2008); *Roberts v. Keith*, No. 04 CV 10079, 2009 WL 3572962, at *2 (S.D.N.Y. Oct. 23, 2009); *Estate of Stewart* , 2012 WL 4900927, at *4.
[109]  *See* Argument Section A, *supra*.
[110]  *McNulty*, 137 F.3d at 738.

not even evaluate prejudice under these circumstances.[111]  As the evidence shows, Defendants

are the type of "obstructionist adversary," for whose willful refusal to participate in this litigation

the "[d]efault procedures . . . provide a useful remedy."[112]

## CONCLUSION

Based upon the foregoing, Plaintiff AACS LA respectfully requests that this Court deny

Defendants' motion to modify the Injunction.

Dated:   New York, New York            Respectfully submitted,
         July 11, 2014
                              DAVIS WRIGHT TREMAINE LLP

                              By:__/s/ G. Roxanne Elings_____

                              G. Roxanne Elings
                              (RoxanneElings@dwt.com)
                              George Wukoson
                              (GeorgeWukoson@dwt.com)
                              1633 Broadway, 27th Floor
                              New York, New York 10019
                              Telephone: (212) 489-8230
                              Facsimile: (212) 489-8340

                              (*pro hac vice* applications concurrently
                              filed)
                              James D. Nguyen
                              (jimmynguyen@dwt.com)
                              Sean M. Sullivan
                              (seansullivan@dwt.com)
                              865 S. Figueroa Street, Suite 2400
                              Los Angeles, California 90017
                              Telephone: (213) 633-6800
                              Facsimile: (213) 633-6899

                              *Attorneys for Plaintiff Advanced Access*
                              *Content System Licensing Administrator,*
                              *LLC*

---

[111] *See, e.g. Trustees of Local 807 v. Maritime Fish Products, Inc.* No. 11 CV 844 NV, 2012 WL 2609321, at *11 (E.D.N.Y. May 31, 2012); *Mason Tenders Dist. Council of Greater New York v. WTC Contracting, Inc.*, 2011 WL 4348152, at * 5 (S.D.N.Y. Sept. 16, 2011).

[112] *Enron*, 10 F.3d at 96; *see also, e.g.*, *Kulwa*, 2013 WL 504383, at *8.