UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCED ACCESS CONTENT SYSTEM LICENSING ADMINISTRATOR, LLC,<br><br>Plaintiff,<br><br>  v.<br><br>LANNY SHEN d/b/a DVDFAB AND FENGTAO SOFTWARE INC., SUNREG TECHNOLOGIES LTD. d/b/a DVDFAB AND FENGTAO SOFTWARE INC., FENG TAO d/b/a DVDFAB AND FENGTAO SOFTWARE INC., SHEN XINLAN d/b/a AUDIO-DVD CREATOR, and JOHN DOE, JANE DOE and/or XYZ COMPANY d/b/a DVDFAB, RIPPERBLU-RAY.COM, DVDFABB.COM and DVDFFAB.COM,<br><br>                              Defendants. | Civil Action No.<br>14 Civ. 1112 (VSB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT FENG TAO D/B/A/ FENGTAO SOFTWARE'S
MOTION TO VACATE CLERK'S DEFAULT**

SCHOEMAN UPDIKE KAUFMAN
     STERN & ASCHER LLP
551 Fifth Avenue
New York, New York 10176
(212) 661-5030
*Attorneys for Defendant Feng Tao
d/b/a Fengtao Software*

Defendant Feng Tao d/b/a Fengtao Software, by his undersigned attorneys, submits this reply memorandum of law and the accompanying Reply Declaration of Feng Tao dated August 1, 2014 ("Feng Reply Decl.") in support of his motion to vacate the Clerk's default dated June 20, 2014.

## PRELIMINARY STATEMENT

In the papers supporting defendant Feng Tao's motion to vacate the Clerk's default, Mr. Feng established that the default was not willful, that he has a meritorious defense, and that plaintiff will not be prejudiced by vacating the entry of default. Plaintiff has failed to rebut that showing. Accordingly, Mr. Feng's motion should be granted.

## ARGUMENT

### I. PLAINTIFF HAS NOT REBUTTED FENG TAO'S SHOWING THAT THE DEFAULT WAS NOT WILLFUL

#### A. The Facts Show The Default Was Not Willful

Although the Court directly asked plaintiff whether it sent a cease and desist letter to defendants (Transcript, May 27, 2014, p. 47), plaintiff has not produced one, nor indicated that it contacted defendant in any way to discuss plaintiff's concerns prior to commencing this action. Rather than give defendant any advance warning, plaintiff sought to catch defendant off guard. Although plaintiff was aware of defendant for at least five years, it never once contacted defendant to discuss its concerns, and waited to file its complaint until after it obtained an ex parte order to show cause for a preliminary injunction, and an ex parte motion for leave to serve defendants by email. Plaintiff nevertheless asserts that defendant should have anticipated litigation as a result of his presumed awareness of certain self-help measures that plaintiff pursued. Memorandum of Law in Opposition to Motion to Vacate Clerk's Default ("Opp. Memo"), p. 4. However,

knowledge that AACS was taking steps to disrupt defendant's business is hardly equivalent to notice that AACS intended to commence litigation in the United States, and certainly did not trigger an obligation for defendant to engage counsel.

Once notified of the litigation, defendant promptly took steps to locate counsel in the United States. The fact it took him three weeks to find counsel in another country is not grounds for a finding of willfulness, particularly when he did not have an attorney in China. Moreover, his failure to seek an extension was explained by his lack of awareness that he could do so. While defendants' actions may prove improvident, they were not willful under the Second Circuit standard. *See SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (defaults are willful where "the conduct of counsel or the litigant was egregious and was not satisfactorily explained."); *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996) (in evaluating the willfulness standard, the Second Circuit looks for "bad faith, or at least something more than mere negligence").

Plaintiff's assertions that the default was willful because defendant had knowledge of the lawsuit, took steps to continue his business overseas after it was shut down globally, and contacted AACS to discuss settlement are beside the point. Defendant does not dispute that he had knowledge of the case – he was trying to locate counsel. Defendant's position is that a United States court cannot shut him down on a worldwide basis. Defendant has not challenged the Injunction with regard to the United States. In response to the Injunction, he discontinued sales of the Accused Products to the United States, and introduced new versions of the Accused Software for United States purchasers that do not circumvent AACS. Feng Reply. Decl. ¶ 2. These non-AACS-decryption ("NAD") versions, introduced on May 30, 2014, are the only versions of the DVDFab software Fengtao Software offers to United States purchasers. Feng Reply. Decl. ¶ 3.

Plaintiff's suggestion that users in the United States can still freely download and update the Accused Software (Opp. Memo, p. 10), are incorrect and unsupported. Since May 30, 2014, United States users who visited the FTS site, whether to purchase the Accused Software for the first time or to update an earlier purchase, have only been offered the NAD versions. Feng Reply. Decl. ¶ 4. Plaintiff has not introduced any evidence to the contrary. Plaintiff's only evidence of a recent update was created on May 22, 2014 – ten days before the introduction of the NAD versions. Feng Reply Decl. ¶ 5; Ex. A parts 1-3 to the Hewlett Declaration dated May 27, 2014. Notably, Mr. Hewlett's Supplemental Declaration dated July 11, 2014, did not include any new exhibits showing purchases or updates to the Accused Software. This is because if he went to the FTS site after May 30, 2014, he would only be able to download the NAD versions. Feng Reply Decl. ¶ 4. Lastly, the fact that Mr. Feng instructed his head of marketing, Frank, to contact AACS to discuss a settlement is not evidence of bad faith. Mr. Feng was not aware that Frank was going to discuss distributing the software as freeware if the parties were unable to reach a resolution. Feng Decl. ¶ 20.

Plaintiff's comments regarding the so-called Unexplained Facts are nothing more than a wish list of topics that plaintiff would like to pursue in discovery. Opp. Memo, pp. 9-10. Mr. Feng's ten-page declaration addressed each of the topics raised by the Court, and demonstrated that the default was not willful, but rather was due to an inability to retain counsel and lack of awareness that he could seek an extension without counsel. *See* Feng Decl. ¶¶ 15-27.

Lastly, plaintiff has not refuted defendants' cases demonstrating that willfulness "is relevant but not dispositive." Even a default that may be characterized as willful can be excused for good cause, which has been shown here. Memorandum of Law in

Support of Motion to Vacate Clerk's Default ("Memo in Support"), pp. 13-14.  In fact, plaintiff concedes that "defaults are not favored."  Opp. Memo, p. 10.

### B. Plaintiff's Cases Do Not Support A Finding Of Willfulness

In its opposition, Plaintiff has not cited a single case regarding a contested default that was entered based solely on a defendant's failure to timely answer.  Further, each of the cases plaintiff cited involved incomparable facts and legal issues.  In *Kulwa v. Obiakor OB/GYN P.C.*, No. 12-CV-1868, 2013 WL 504383 (E.D.N.Y. Feb. 8, 2013), there was a series of actions that led to a finding of willfulness, none of which transpired here.  To begin, prior to filing suit (1) plaintiff contacted defendant, (2) defendant engaged counsel, and (3) counsel spoke directly.  Once suit was filed, (4) defendant's counsel requested an extension, but (5) never followed up.  Thereafter, (6) the court entered order directing plaintiff to seek a default, (7) plaintiff sought and obtained a default, and (8) plaintiff filed a motion for default judgment.  Given that none of the eight enumerated acts or omissions transpired in the case at hand, the case does not support plaintiff's argument.  In fact, *Kulwa* underscores *defendant's* central argument, namely that "[m]ere tardiness in meeting a court deadline does not establish a willful default."  *Id*. at *3.

Two additional cases cited by plaintiff involve discovery disputes, not defaults.  *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 550 (S.D.N.Y. 2012) exclusively concerned a motion to compel a foreign corporation to produce documents in the United States, and does not involve a default in any way.  Plaintiff's reliance on a discovery case is unjustified, and its partial quotation of text set forth in a footnote regarding discovery obligations is misleading.[1]  Along the same lines, *Quaak v. Klynveld Peat Marwick*

---

[1] The full quote reads: "[t]he United States position … has been that persons who do business in the United States, or who otherwise bring themselves within United States jurisdiction to prescribe and to adjudicate, are subject to the burdens as well as the benefits of United States law, including the laws on discovery."  *Id*. at n. 32.

*Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 22 (1st Cir. 2004) is not only a First Circuit case, but it pertains solely to a motion to compel discovery.  Both *Quaak* and *Wultz* are off point.

In every one of the remaining cases plaintiff cited, the defendant was given a subsequent warning of the risk of a default judgment.  In *King v. Galluzzo Equipment & Excavating Inc.*, 223 F.R.D. 94, 96 (E.D.N.Y. 2004), the court alerted the defendants that they risked default judgment.  In *United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Associates – Charco Redondo Butane*, 755 F. Supp. 1195, 1204 (S.D.N.Y. 1989), the plaintiff served on defendant a proposed default judgment.  Similarly, in *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1985), the defaulting party was notified that he was in default and *then* made no effort to appear or explain his situation.[2]  This obviously was not the case here.  Mr. Feng did not receive any subsequent notice that he risked entry of a default judgment.  In fact, plaintiff did not even raise the issue of a default until after defendant filed his motion to modify the injunction, following which defendant filed the instant motion to vacate the entry of default.

## II. PLAINTIFF HAS FAILED TO REBUT DEFENDANT'S SHOWING OF A MERITORIOUS DEFENSE

In its opposition, plaintiff concedes the general principle that "acts that take place entirely outside of the borders of the United States are not actionable under" the Copyright Act.  Opp. Memo, p. 13.  Similarly, plaintiff does not challenge defendant's arguments concerning the presumption against extraterritoriality, or that the Copyright Act only authorizes injunctions that are "operative throughout the United States."  Memo in Support, pp. 15-18.

---

[2] *Original Appalachian Artworks* also supports defendant's argument that that "[a] bona fide effort to find counsel is certainly relevant to the willfulness of a party's default."  *Id.* at 116.

As discussed more fully below, plaintiff has entirely failed to rebut defendant's showing that the predicate acts doctrine is no longer good law, and that even if it was, with regard to overseas sales there are no predicate acts of infringement in the United States. Plaintiff has also failed to establish that the Copyright Act should apply any time there is harm "felt within" the United States.[3]

The Supreme Court decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) warned against profligate characterization of defenses as jurisdictional. This determines whether a case should be dismissed under Rule 12(b)(1) because the court lacks authority to hear it, or under Rule 12(b)(6) because the plaintiff failed to state a claim. The distinction is immaterial here, however, since no responsive pleading has been filed, it is undisputed that the Copyright Act does not apply extraterritorially, and defendant need not establish his defense conclusively for it to be meritorious.

### A. Plaintiff Failed To Rebut Defendant's Showing That The Predicate Act Doctrine Is Incorrect

Plaintiff continues to rely on the so-called predicate act doctrine, despite defendants' showing that the doctrine is incorrect and was invalidated by the Supreme Court decision in *Equal Opportunity Comm'n v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) ("We assume that Congress legislates against the backdrop of the presumption against extraterritoriality. Therefore, unless there is 'the affirmative intention of the Congress clearly expressed,' we must presume it 'is primarily concerned with domestic conditions.'") (citations omitted). *See also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) (reversing Second Circuit holding that § 10(b) of the Securities Exchange Act applied extraterritorially).

---

[3] The fact that Mr. Feng has not yet determined whether or not he intends to defend the case in full on the merits does not detract from the merits of the defenses he has set forth.

7

The Supreme Court's decision in *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007) further demonstrates the reasons why the predicate act doctrine is incorrect. In *Microsoft*, the Supreme Court held that supplying a master disk or file to overseas manufacturers for reproduction and installation on computers sold abroad did not violate Section 271(f) of the Patent Act. "The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law." *Id.* at 454-55. Although Congress had passed § 271(f) specifically to cover foreign activities, the Court narrowly construed the exception, noting that "the presumption is not defeated … just because [a statute] specifically addresses [an] issue of extraterritorial application." *Id.* at 455-56. The Court further noted that AT&T's reading "'converts a single act of supply from the United States into a springboard for liability each time a copy of the software is subsequently made [abroad] and combined with computer hardware [abroad] for sale [abroad].'" *Id.* at 456 (quoting United States *amicus* brief). The Court explained its ruling as follows:

> [F]oreign law alone, not United States law, currently governs the manufacture and sale of components of patented inventions in foreign countries. If AT&T desires to prevent copying in foreign countries, its remedy today lies in obtaining and enforcing foreign patents. *Id.*

The Microsoft decision concludes with a reference to the DMCA as the manner in which Congress addressed "the ease with which software (and other electronic media) can be copied." *Id.* at 458. If Congress sought extraterritorial application of the DMCA, it should have expressly said so, particularly in light of the long history of cases holding the Copyright Act does not apply extraterritorially. It did not, and the predicate act

doctrine should not be used to achieve judicially what Congress failed to address legislatively.[4]

### B. Plaintiff Failed To Rebut Defendant's Showing That There Are No Predicate Acts

In response to defendant's showing that the software was developed, marketed, and sold from China, and sales to purchasers outside the United States do not involve any predicate acts of circumvention in the United States, plaintiff identifies certain activities that it claims constitute predicate acts. Opp. Memo, p. 16. However, with regard to foreign sales, plaintiff has not established a "step in the process" that takes place in the United States. *See Roberts v. Keith*, 04 CV 10079, 2009 WL 3572963 at *4-5 (S.D.N.Y. Oct. 23, 2009).

In the seminal case concerning the predicate act doctrine, *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45 (2d Cir. 1939), the overseas defendant exhibited positives that were made from negatives that were copied *in the United States*. An act of infringement in the United States made possible subsequent acts of infringement overseas. Here, plaintiff has not shown any activity in the United States that is *predicate* to the foreign sales. There is simply no evidence that operating a website accessible in the United States, making sales to the United States, building up good will in the United States, or entering end user license agreements that reference United States law have any connection whatsoever to foreign sales, let alone that these acts were somehow predicate to such foreign sales.

---

[4] The district court and appellate court decisions that plaintiff cites as continuing to apply the predicate act doctrine are not binding, nor are they persuasive as they failed to consider the impact of the Supreme Court precedent described herein.

    **C.**    **Plaintiff Has Not Shown That The Extraterritorial Effect Of The Injunction Is Justified Based Upon Activities Abroad "Felt Within" The United States**

Plaintiff's argument that the Copyright Act should apply because defendants' acts abroad are somehow "felt" within the United States is unavailing. First, as noted in defendant's Reply Memorandum of Law in Support of Motion to Amend Injunction, dated May 5, 2014 [Doc. No. 39], plaintiff has not cited any binding Second Circuit precedent establishing that conduct that takes place entirely outside the United States can be enjoined merely because the acts are "felt" within the United States. Second, each of the cited cases using the acts "felt" in the United States standard involved actual conduct that took place in the United States, and thus the language cited by plaintiff is mere dicta.

Plaintiff's description of *McGraw-Hill Companies, Inc. v. Ingenium Technologies Corp.,* 375 F. Supp. 2d 252 (S.D.N.Y. 2005) is specious. There is nothing in the decision indicating that the service at issue was "based abroad and run from abroad" as plaintiff asserts. Opp. Memo, p. 16. To the contrary, the First Amended Complaint, which was the subject of the motion to dismiss, alleges that "the server, facilities, network and software which run the Premium service are … operated by McGraw Hill at its facility in Hightstown, New Jersey" and that "Ingenium personnel have access to the server in Hightstown to maintain and administer the application…" First Am. Compl., 14:53, Mar. 14, 2005, ECF No. 05-CV-2127. Further, "[m]ore than 90% of the users of the Premium service are individuals and entities located in the United States." *Id.* at 21:85. It is difficult to find anything about defendant Ingenium's business that is "just like Defendants' business." Opp. Memo, p. 16.

Plaintiff cannot rely on *Shropshire v. Canning*, 809 F. Supp. 2d 1139 (N.D. Cal. 2001) to support the harm "felt within" test, as the case neither addresses nor applies the test. Further, the defendant there uploaded the accused video to YouTube's United

States servers.  Here, plaintiff has neither alleged nor demonstrated that defendant uploaded the Accused Software to servers based in the United States.  Lastly, using a generic top level domain name such as ".com" has no bearing on where any harm is allegedly felt.

The decision in *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 07 CV 03952, 2010 WL 5598337 (N.D. Cal. 2010) also does not address the harm "felt within" test.  Moreover, it involves claims of infringement arising from the importation of counterfeit goods into the United States, and it includes no discussion of whether the injunction extends to sales overseas.

Finally, plaintiff has not even responded to defendants' argument that the "effects test" is dangerous and likely to lead to "a significant threat to long-term American interests."  Austen Parrish, *The Effects Test: Extraterritoriality's Fifth Business*, 61 VAND. L. REV. 1455, 1483-1494 (2008) (explaining that extraterritoriality is irreconcilable with democratic principles, creates piecemeal solutions, is perceived as illegitimate, and may result in foreign retaliation).

Plaintiff simply has no support for its radical assertion that a defendant who used a website, domain name, or payment processor for allegedly infringing sales to the United States can be enjoined from using those tools for sales overseas.

## III.    PLAINTIFF HAS NOT EVEN ATTEMPTED TO SHOW PREJUDICE

Implicitly conceding it cannot show prejudice, plaintiff instead argues that prejudice need not be considered.  Instead, plaintiff accuses defendant of being an "obstructionist adversary," simply because defendant wants his day in court.  Notwithstanding its accusations, plaintiff has not been prejudiced by Mr. Feng's mere failure to answer, and the default should be vacated.

## CONCLUSION

For the reasons set forth herein, defendant Feng Tao respectfully requests that the Court vacate the Clerk's Certificate of Default and permit Mr. Feng an opportunity to respond to the Complaint.  At a minimum, the Court should hear his Motion to Amend Injunction Pursuant to Rule 59(e).


Dated: New York, New York  
       July 28, 2014

**SCHOEMAN UPDIKE KAUFMAN**  
**STERN & ASCHER LLP**

By:    /s/ Nancy J. Mertzel  
Nancy J. Mertzel  
551 Fifth Avenue  
New York, New York 10176  
(212) 661-5030

*Attorneys for Defendant Feng Tao d/b/a Fengtao Software*