```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/16/2015___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ADVANCED ACCESS CONTENT SYSTEM     :
LICENSING ADMINISTRATOR, LLC,      :
                                   :
                     Plaintiff,    :
                                   :
          - against -              :                    14-CV-1112 (VSB)
                                   :
                                   :               **MEMORANDUM & ORDER**
LANNY SHEN d/b/a DVDFAB and         :
FENGTAO SOFTWARE INC., SUNREG       :
TECHNOLOGIES LTD d/b/a DVDFAB and   :
FENGTAO SOFTWARE INC., FENG TAO     :
d/b/a DVDFAB and FENGTAO SOFTWARE   :
INC., SHEN XINLAN d/b/a AUDIO-DVD   :
CREATOR, and JOHN DOE, JANE DOE,    :
and/or XYZ COMPANY d/b/a DVDFAB,    :
RIPPERBLUERAY.COM, DVDFABB.COM,     :
and DVDFFAB.COM,                    :
                                   :
                     Defendants.   :
-------------------------------------------------------X

Appearances:

G. Roxanne Elings
George Pearson Wukoson
James Nguyen
Davis Wright Tremaine LLP
New York, NY
*Counsel for Plaintiff*

Nancy Jill Mertzel
Schoeman Updike Kaufman Stern & Ascher LLP
New York, NY
*Counsel for Defendant Feng Tao*
*d/b/a Fengtao Software[1]*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Advanced Access Content System Licensing Administrator, LLC ("AACS LA"

---

[1] On April 1, 2014, Nancy Jill Mertzel filed a notice of appearance on behalf of Defendant Feng Tao d/b/a Fengtao
Software.  (Doc. 27.)  The Complaint names, among others, Feng Tao d/b/a DVDFAB and Fengtao Software, Inc.

or "Plaintiff"), initiated this action by simultaneously filing a complaint and obtaining an order to show cause ("OTSC") why a preliminary injunction should not issue against Defendants Lanny Shen d/b/a DVDFab and Fengtao Software Inc., SunReg Technologies Ltd. d/b/a DVDFab and Fengtao Software Inc., Feng Tao d/b/a DVDFab and Fengtao Software Inc., Shen Xinlan d/b/a Audio-DVD Creator, and John Doe, Jane Doe and/or XYZ Company d/b/a DVDFab, RipperBlu-ray.com, DVDFabb.com and DVDFfab.com (collectively, the "DVDFab Group" or "Defendants"), for violations of the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 1201, *et seq.*, in connection with Defendants' trafficking of products designed to circumvent Plaintiff's encryption technology.  Defendants failed to appear at the OTSC hearing and a preliminary injunction was issued on March 4, 2014 (the "Preliminary Injunction").

Currently before me are the Motions of Defendant Feng Tao d/b/a Fengtao Software ("Feng Tao" or "Tao") to vacate the default entered against him related to the Preliminary Injunction and to amend the Preliminary Injunction to narrow its scope.  Also before me is Plaintiff's Motion to Modify the scope of the Preliminary Injunction to include new products and websites it alleges Defendants own and operate that violate the terms of the Preliminary Injunction.

Defendant Tao's Motion to Vacate the Preliminary Injunction is denied because his default was willful, and he failed to present a meritorious defense.  Defendant Tao's Motion to Amend is denied because, in violation of the Preliminary Injunction, Tao continued trafficking infringing products into the United States, demonstrating that narrower relief would not be effective to accomplish the legitimate goals of the Preliminary Injunction.

Plaintiff's Motion to Modify is granted in part and denied in part.  Plaintiff's Motion to Modify is granted because it established that:  (1) Plaintiff is imminently likely to suffer

2

irreparable injury in the absence of preliminary relief; and (2) Plaintiff is more likely than not to

succeed in demonstrating that Defendants trafficked, sold, or distributed BluFab Blu-ray

Converter, BluFab Blu-ray Copy, BluFab Blu-ray to DVD Converter, TDMore Blu-ray

Converter; TDMore Blu-ray Copy, DVDFab Passkey 8, Woookao, and Boooya; and operated

TDMore.com, BluFab.cn, BluFab.com, Boooya.org, DVDFab.de, DVDFab.cn, FabImg.net,

Woookao.cn, and Woookao.com in violation of the DMCA.  However, I deny Plaintiff's Motion

to Modify as it relates to TDMore.cn and Boooya.com because Plaintiff fails to establish its

likelihood of success with regard to TDMore.cn and Boooya.com.

## I.      Procedural Background

On February 21, 2014, Plaintiff filed a complaint (the "Complaint") and obtained an

OTSC why a preliminary injunction should not issue against Defendants for violations of the

DMCA by trafficking in products designed to circumvent Plaintiff's encryption technology.

(Docs. 2, 4.)  A hearing was held on March 4, 2014, Defendants failed to appear, and I granted

Plaintiff's request to preliminarily enjoin Defendants from, among other things, trafficking in

any technology capable of circumventing AACS LA's encryption technology in violation of the

DMCA.  (PI.)[2]  On March 18, 2014, Plaintiff sought, and the Clerk of Court entered, a default

against Defendants due to their failure to timely answer the Complaint.  (Doc. 26.)

On April 1, 2014, counsel for Defendant Tao filed a notice of appearance.  (Doc. 27.)  On

that same day, Tao moved to amend or correct the Preliminary Injunction.  (Tao Amend Mem.)[3]

Plaintiff opposed Tao's Motion to Amend on April 21, 2014, (Pl. Amend Opp.),[4] and Tao filed

---

[2] "PI" refers to the preliminary injunction order issued on March 4, 2014.  (Doc. 21.)

[3] "Tao Amend Mem." refers to the Memorandum of Law in Support of Motion to Amend Injunction Pursuant to Rule 59(e).  (Doc. 28.)

[4] "Pl. Amend Opp." refers to the Memorandum of Law in Opposition to Defendant Feng Tao d/b/a DVDFab and Fengtao Software Inc.'s Motion to Amend Injunction Pursuant to Rule 59(e).  (Doc. 35.)

his Reply on May 5, 2014, (Doc. 39).  A hearing was held on May 27, 2014, during which Tao's Motion to Amend and Tao's proposed motion to vacate the default were discussed.  (*See generally* 5/27 Tr.)[5]

Defendant Tao moved to vacate the Clerk's Certificate of Default, (Doc. 26), on June 20, 2014, (Tao Vacate Mem.).[6]  Plaintiff opposed Defendant Tao's Motion on July 11, 2014, (Pl. Vacate Opp.),[7] and Defendant Tao submitted his Reply on August 1, 2014, (Doc. 56).

On October 3, 2014, Plaintiff moved to modify the Preliminary Injunction claiming that Defendants, in order to circumvent the Preliminary Injunction, switched websites and were continuing their illegal activities under different names.  (Pl. Amend Mem. 12-13.)[8]  Defendant Tao opposed Plaintiff's Motion on October 30, 2014, (Tao Amend Opp.),[9] and Plaintiff submitted its Reply on November 4, 2014, (Doc. 75).  A hearing was held on November 19, 2014, during which Plaintiff's Motion to Modify the Preliminary Injunction was discussed.  (*See generally* 11/19 Tr.)[10]

## II.   Factual Background[11]

### A.   *The AACS Technology and Content Protection System*

Plaintiff AACS LA develops and licenses Advanced Access Content System technology

---

[5] "5/27 Tr." refers to the transcript of the proceedings held on May 27, 2014.  (Doc. 45.)

[6] "Tao Vacate Mem." refers to the Memorandum of Law in Support of Motion to Vacate Clerk's Default.  (Doc. 50.)

[7] "Pl Vacate Opp." refers to the Memorandum of Law in Opposition to Defendant Feng Tao d/b/a DVDFab and Fengtao Software Inc.'s Motion to Vacate Entry of Default.  (Doc. 53.)

[8] "Pl. Amend Mem." refers to the Memorandum of Law in Support of Plaintiff Advanced Access Content System Licensing Administrator, LLC's Motion to Modify This Court's March 4, 2014 Order for Preliminary Injunction. (Doc. 62.)

[9] "Tao Amend Opp." refers to the Memorandum of Law in Opposition to Plaintiff's Motion to Modify Preliminary Injunction.  (Doc. 73.)

[10] "11/19 Tr." refers to the transcript of the proceedings held on November 19, 2014.  (Doc. 85.)

[11] Unless otherwise noted, the facts set forth here are drawn from the allegations in the Complaint.  Therefore, they relate to a time period before the Preliminary Injunction.  This factual summary is presented for background purposes only, and I make no findings of fact and reach no conclusions of law in Part II of this decision.

to protect the audiovisual content on high definition media, such as Blu-ray discs, from unauthorized access, copying and distribution ("AACS").  (Compl. ¶ 16.)[12]  AACS embeds encryption keys in the content recorded onto high definition optical discs that can be decrypted using AACS-licensed consumer electronic devices or AACS-licensed media player software products.  (*Id.* ¶ 17.)  "AACS licenses the AACS Technology to motion picture studios and television programming owners, consumer electronics companies, computer software companies, and a large number of companies in related distribution and services industries."  (*Id.* ¶ 18.) These AACS licenses allow motion picture and television programming rights holders to distribute their content on Blu-ray discs for consumers to purchase or rent while having encryption measures in place to control access to and protect the copyrights in such content. (*Id.*)  AACS is licensed by over 1000 companies worldwide, over 350 million authorized AACS playback devices such as Blu-ray disc players and video game consoles have been sold or distributed to consumers worldwide, and more than 730 million Blu-ray discs protected by AACS have been sold worldwide.  (*Id.* ¶ 19.)

      B.    ***The DVDFab Group***

The DVDFab Group owns and operates websites associated with the following domain names:  "DVDFab.com, DVDFab.net, DVDidle.com, 3d-videoconverters.com, 3dBluRay-ripper.com, Blu-Ray-ripper.us, Blu-Ray-Software.us, BluRayripper.jp, BluRaysbs3d.com, BluRaysoft.jp, CopyBluRay.us, DVDFab.jp, DVDFab9.com, DVDvideosoft.jp, kopiersoftware.com, macBluRaycopy.com, mourlife.com, readtechnews.com, sbs3d.com, sbs3dconverter.com, sbs3dcopy .com, sbs3dripper.com, tracehotnews.com, videoconverter.jp, wollytech.com, xn--dvd-ti4bzcljla2oj3ne.com, 2d-3d-converter.com, copyDVDsoftware.us,

---

[12] "Compl." refers to the Complaint.  (Doc. 2.)

sbs3dcreator.com, DVDFab.de, audio-dvd-creator.com, ripperBluRay.com, DVDFabb.com and

DVDFfab.com" (collectively, the "DVDFab Websites").  (Compl. ¶ 21.)  Only Defendant Tao,

the sole owner of Fengtao Software ("FTS"), has appeared in this action.  (Doc. 27; 6/20 Tao

Decl. ¶¶ 1, 3.)[13]

At least twenty-seven of the DVDFab Group's websites offered and/or sold software

products that the DVDFab Group touts as removing "nearly all Blu-ray protections," and "all

known AACS copy protections."  (2/24 PI Mem. 4-5; Compl. ¶¶ 21, 26.)[14]  Once AACS

encryption protections are removed from a Blu-ray disc, a user can "copy the content on that disc

onto another physical disc, which . . . [will have] no AACS Technology protection against

further reproduction or distribution."  (Compl. ¶ 24.)

"All of the active DVDFab Websites redirect[ed] to DVDFab.com for purposes of

downloading" software.  (*Id.*)  When a user attempted to purchase products from Defendants'

websites located at DVDFab.jp and DVDFab.de, regardless of whether the user's IP address is

located in the United States or elsewhere, the user was redirected to Defendants' website located

at DVDFab.com.  (2/24 Hewlett Decl. ¶ 10.)[15]  DVDFab.com's server was located in Montreal,

Canada, and the servers associated with all of the other DVDFab websites were also located

outside of the United States.  (*Id.* ¶ 24.)

Most of the DVDFab Websites used the English language.  Of the visitors to the

DVDFab.com website "35.2% of visitors . . . c[a]me from the United States, followed by United

---

[13] "6/20 Tao Decl." refers to the Declaration of Feng Tao in Support of Motion to Vacate Clerk's Default.  (Doc.
49.)  Tao claims that FTS is a small business, is not incorporated, has no general counsel and does not regularly use
attorneys in China or any other country.  (6/20 Tao Decl. ¶ 3.)

[14] "2/24 PI Mem." refers to the Memorandum of Law in Support of Plaintiff Advanced Access Content System
Licensing Administrator, LLC's Motion for Preliminary Injunction.  (Doc. 11.)

[15] "2/24 Hewlett Decl." refers to the Declaration of Matthew Hewlett in Support of Motion for Preliminary
Injunction.  (Doc. 10.)

Kingdom (5%), Japan (4.1%), India (4.0%) and China (3.8%)." (*Id.* ¶ 11.)  In addition, the

DVDFab Websites used United States-based payment processors and accepted United States

dollars as payment for software.  (*Id.* ¶¶ 8, 14.)

C.    ***Additional Websites and Software Products***

Following the issuance of the Preliminary Injunction several new websites were formed

that sell programs that AACS LA claims permit the circumvention of AACS's copyright

protections.  (Pl. Amend Mem. 13.)  TDMore.com offers the following software:  TDMore 4-in-

1 Bundle; TDMore DVD Copy; TDMore DVD Converter; TDMore Blu-ray Copy; and TDMore

Blu-ray Converter (collectively the "TDMore Software"), (10/3 Hewlett Decl. ¶ 28).  BluFab.cn

offers the following software:  BluFab Blu-ray to DVD Converter; BluFab HD Decrypter; and

Passkey Lite.  (4/21 Hewlett Decl. ¶ 9.)  The websites DVDFab.de, DVDFab.cn, and FabImg.net

sell a "non-AACS-decryption" or "NAD" form of the software.  (8/1 Feng Decl. ¶ 3.)[16]

However, AACS LA claims that software found on Boooya.cn, Boooya.com, Woookao.cn, and

Woookao.com ("add-ons") work in conjunction with the NAD software to restore its AACS

decryption capability.  (Pl. Amend Mem. 5-7.)

III.    <u>**Motion to Vacate Default**</u>

Since entry of a default judgment has not yet occurred, review of whether it is appropriate

to vacate Defendant Tao's default is done pursuant to Rule 55(c) of the Federal Rules of Civil

Procedure.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (Under Rule 55(c) "[a] court

may set aside any default that has entered for good cause shown, and if a judgment has entered

on the default, the court is authorized to set the judgment aside in accordance with the provisions

---

[16] "8/1 Tao Decl." refers to the Reply Declaration of Feng Tao in Support of Motion to Vacate Clerk's Default. (Doc. 58.)

of Rule 60(b)."); *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012)

(summary order) ("Rule 55(c) permits a party to be relieved of default 'for good cause,' whereas

a default judgment may only be set aside in accordance with Rule 60(b).")

"Although the factors examined in deciding whether to set aside a default or a default

judgment are the same, courts apply the factors more rigorously in the case of a default judgment

because the concepts of finality and litigation repose are more deeply implicated in the latter

action." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (internal citation omitted);

*accord Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("the standard for setting aside the

entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for

setting aside a default judgment by motion pursuant to Rule 60(b)"); *Trs. of Empire State*

*Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v.*

*Penco United, LLC*, No. 13-CV-4745, 2015 WL 518623, at *7 (E.D.N.Y. Feb. 5, 2015).

Under Rule 55(c), "[t]he court may set aside an entry of default for good cause." Fed. R.

Civ. P. 55(c); *accord Enron Oil Corp.*, 10 F.3d at 95.  In determining whether good cause exists,

a court reviews:  "(1) whether the default was willful; (2) whether setting aside the default would

prejudice the adversary; and (3) whether a meritorious defense is presented."[17] *Enron Oil Corp.*,

10 F.3d at 96; *accord Peterson*, 467 F. App'x. at 33.

The Second Circuit generally disfavors defaults because of its strong preference for

resolving disputes on the merits.  *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d

Cir. 2001).  Default procedures "provide a useful remedy when a litigant is confronted by an

obstructionist adversary," but "an understandable zeal for a tidy, reduced calendar of cases

---

[17] Plaintiff essentially concedes that it will not be prejudiced by the default being set aside, but argues that the willful nature of the default and Defendant's lack of a meritorious defense are sufficient to warrant denial of the Motion to Vacate. (Pl. Vacate Opp. 19-20.)

should not overcome a court's duty to do justice in the particular case" and "afford[ ] litigants a reasonable chance to be heard." *Enron*, 10 F.3d at 96. "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.*

     A.     ***Willfulness***

"A default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) (discussing willfulness prong in context of motion to vacate default judgment), *cert. denied*, 503 U.S. 1006 (1992). "Willfulness, in the context of a default, refers to conduct that is more than merely negligent or careless." *Walden v. Lorcom Techns., Inc.*, No. 05-CV-3600, 2007 WL 608151, at *3 (E.D.N.Y. Feb. 23, 2007) (citing *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Willfulness may be found when, for example, a defaulting party acts deliberately, egregiously, or in bad faith. *See Argus Research Grp., Inc. v. Argus Sec., Inc.*, 204 F. Supp. 2d 529, 531 (E.D.N.Y. 2002); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, No. 00-CV-1898, 2010 WL 3790828, at *2 n.29 (S.D.N.Y. Sept. 27, 2010).

    Defendant Tao argues that his default was not in bad faith, but rather due to his inability to obtain counsel in a timely fashion, lack of proficiency in English, and lack of knowledge of the United States court system. (Tao Vacate Mem. 12.) The timeline of relevant events leading up to Tao's default is as follows: (1) the Summons and Complaint were received (although allegedly not read) via email by Defendant Tao on February 25, 2014, (6/20 Tao Decl. ¶ 12); (2) on February 26, 2014 a lawyer from Weiss & Moy, P.C. contacted FTS and offered its legal services because FTS was being sued in the United States, (*id*. ¶ 13); (3) Defendant Tao began searching for an attorney on February 26th or 27th, (*id*. ¶ 16); (4) between February 27th and

March 15th Tao communicated with various law firms concerning representation, (*id*. ¶¶ 16-18, 22-24); (5) on March 4, 2014 the Preliminary Injunction was issued; (6) on March 10, 2014 the FTS domain names were shut down, (*id*. ¶ 19); (7) on or about March 10, 2014 FTS's head of marketing contacted Plaintiff's counsel and threatened to offer their circumvention software for free if Plaintiff did not agree to restore FTS's business, (*see* Pl. Amend Opp. at 2; 5/27 Tr. 48); (8) on March 11, 2014 FTS contacted Nancy Mertzel of Schoeman Updike Kaufman Stern & Ascher LLP ("Schoeman Updike"), (6/20 Tao Decl. ¶ 23); (9) Defendant failed to answer as required on March 11, 2014; (10) on March 17, 2014 FTS signed an engagement letter with Schoeman Updike that purportedly did not cover filing a notice of appearance in this action, (*id*. ¶ 25); (11) on March 18, 2014 Plaintiff obtained a Certificate of Default, (Doc. 26); (12) on April 1, 2014 Ms. Mertzel filed a notice of appearance in this action, (Doc. 27); and (13) on May 5, 2014 Tao filed a pre-motion letter to request permission to file a motion to vacate the default, (Doc. 38).

Defendant Tao claims he "did not intend to default in this matter."  (Tao Vacate Mem. 8.) Rather, "[h]e was not aware that" he could "contact the Judge or the Court directly, or . . . ask AACS for an extension" of time to answer the Complaint.  (*Id.*)  "He [had] never heard the term 'pro se' before and was not aware that a defendant could represent himself in a United States lawsuit."  (*Id.*)

The facts, however, belie Tao's claims of purported ignorance and demonstrate that Defendant Tao's continued default and delay in moving to vacate was deliberate.  Defendant Tao was aware at least by February 26, 2014, when he was told about this lawsuit, that his appearance was required on March 4, 2014, (Doc. 4).  However, Tao only retained and began

consulting with an attorney about this case on March 17, 2014.[18]  (6/20 Tao Decl. ¶ 25-26.)  Two

days later, the Clerk's Certificate of Default was entered.  (Doc. 26.)

There are no facts to suggest that Tao was unaware, at any point in time, of the

Certificate of Default.  Armed with the services of his counsel by March 17, 2014, Defendant

Tao chose to move to amend the scope of the preliminary injunction on April 1, 2014,[19] rather

than seeking an extension of time to answer or to vacate the default.  *See State Farm Mut. Auto.*

*Ins. Co. v. Cohan*, 409 F. App'x 453, 455 (2d Cir. 2011) (summary order) (finding evidence of

willful default where "after entering their appearance in the district court, defendants failed to

answer the complaint or to oppose [plaintiff's] motion for a default judgment").  Indeed, Tao

could have moved to amend, sought an extension of time to answer, and moved to vacate all at

the same time since the motions are not mutually exclusive.  Moreover, Tao did not give any

indication that he intended to move to vacate the default until May 5, 2014, more than one month

after he moved to amend the scope of the Preliminary Injunction, and nearly two months after

the default was entered, (*see* Docs. 28, 38).  *See Allstate Ins. Co. v. Bogoraz*, No. 10-CV-5286,

2012 WL 1655552, at *4 (E.D.N.Y. May 9, 2012) (defendant's "inexplicable" delay of more

than three months from receiving notice of default to seek a vacatur supported finding of

willfullness).  Tao does not and cannot claim any impediment to his seeking to vacate his default

earlier, nor does he provide any plausible explanation for his delay in filing such a motion.  *Silva*

*v. Bridgebar LLC*, No. 09-CV-8281, 2011 WL 3423917, at *2 (S.D.N.Y. Aug. 4, 2011) ("[A]

default may be willful 'where the conduct of counsel or the litigant was egregious and was not

---

[18] Defendant Tao cannot escape the fact that he made a conscious choice not to pursue retention of Weiss & Moy on February 26, 2014, or to retain any other law firm before the deadlines of which he was aware, the March 4th hearing and his time to answer on March 11th.

[19] Defendant Tao provides no explanation for why he waited until April 1, 2014 to file his Motion to Amend.

satisfactorily explained.'" (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).)

It also is clear that Tao's decision to remain in default after March 18th was a strategic tactic to avoid litigating this action on the merits.  Defendant Tao freely admits that he does not intend to defend this action on the merits, and only "seeks to vacate the default so as to challenge the extraterritorial scope of the preliminary injunction."  (Tao Vacate Mem. 20; 6/20 Tao Decl. ¶ 35 ("Before I decide whether I will defend this case in full on the merits, I would like a legal ruling on whether . . . the injunction exceeds the Court's powers.").)  It therefore appears that Tao made the calculated decision to remain in default, and as Plaintiff points out, "[o]nly after it was apparent that the Court might not entertain Defendants' motion to amend the Injunction unless they could demonstrate sufficient cause to set aside the default, did Defendants seek leave to file the current motion."  (Pl. Vacate Opp. 8.)  "This is not a case in which the defendant made a good faith effort to adhere to the rules of the court[.]  Based on the record before me . . . I conclude that [Defendant Tao] had actual notice of this litigation and made a tactical, willful decision not to respond."  *Kulwa v. Obiakor OB/GYN P.C.*, No. 12-CV-1868, 2013 WL 504383, at *4 (E.D.N.Y. Feb. 8, 2013) (internal citation and quotation marks omitted).

## B.   *Meritorious Defense*

Next I consider whether or not Tao has presented a meritorious defense.  Tao offers a partial defense in support of his Motion to Vacate that is not sufficient to warrant vacating his default.  Tao cannot offer a complete defense to this action because he has effectively conceded violating the DMCA by trafficking, selling and distributing offending circumvention software in the United States in violation of the Preliminary Injunction.

Defendant Tao asserts that his defenses to this action are that "1) the Copyright Act does not apply extraterritorially, 2) the predicate act exception is incorrect and inapplicable, and 3) he

need only show a meritorious defense regarding the [Preliminary] Injunction." (Tao Vacate Mem. 14.) Tao is correct that he need not establish his defense conclusively, (*id.*); however, it is well established that "he must present evidence of facts that, if proven at trial, would constitute a *complete* defense." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (emphasis added; internal quotation marks omitted); *Peterson*, 467 F. App'x at 34 (affirming entry of default where "defendants' motion to vacate . . . contained no facts, which, if proven at trial, would constitute a complete defense").

The allegations in the Complaint state that Defendants engaged in activities both in the United States and abroad that violate Section 1201 of the DMCA. (Compl. ¶ 11; Pl. Vacate Opp. 15.) Tao does not set forth a defense, in his moving or reply brief, to the merits of Plaintiff's allegations that Tao's actions in the United States violated the DMCA. Indeed, Defendant Tao "is not challenging the [Preliminary Injunction] with regard to the [United States]." (5/27 Tr. 41.) Therefore, Tao essentially concedes that he has no defense to the Preliminary Injunction as it relates to his actions that impact the United States. With regard to the other aspects of the Preliminary Injunction, Tao has yet to decide "whether [he] will defend this case in full on the merits." (6/20 Tao Decl. ¶ 35.) Given that Defendant Tao addresses only part of Plaintiff's claims, I find that he has not presented a complete meritorious defense to warrant the setting aside of the entry of default. *See State Farm*, 409 F. App'x at 456 (affirming district court denial of vacatur where the defendants argued merely that "the vast majority" of the plaintiff's claims were time barred); *Roberts v. Keith*, No. 04-CV-10079, 2007 WL 2712853, at *5 (S.D.N.Y. Sept. 18, 2007) ("A meritorious defense is one that would completely bar plaintiff's recovery." (internal quotation marks omitted)). Accordingly, Defendant Tao's Motion to Vacate is denied.

Although I am denying Defendant's motion to vacate his default, "[he] did not, by

defaulting, forfeit the right to challenge the lawfulness of the [preliminary] injunction[]," *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir. 2011), and I will address the merits of his arguments related to the scope of the Preliminary Injunction below.

## IV.   The Preliminary Injunction

A movant seeking a preliminary injunction must demonstrate:  "1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and 3) that the public's interest weighs in favor of granting an injunction."  *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010). "The burden rests on the moving party to establish these elements by a preponderance of the evidence."  *Emmet & Co. v. Catholic Health E.*, No. 11-CV-3272, 2011 WL 2015533, at *1 (S.D.N.Y. May 18, 2011) (internal quotation marks omitted).

The DMCA prohibits the trafficking in services or devices that:  (1) are primarily designed or produced to circumvent a technological measure that controls access to a work protected under the Copyright Act; (2) have only a limited commercially significant purpose or use other than circumvention; or (3) are marketed for use in circumvention.  17 U.S.C. § 1201(a)(2), (b)(1).  I directed Defendants to show cause on March 4, 2014 why a preliminary injunction should not be issued.  (Doc. 4).  Pursuant to the OTSC, I held a hearing on March 4, 2014, and Defendant, despite acknowledging receipt of the OTSC, failed to appear.  (*See* 6/20 Tao Decl. ¶¶ 12-14.)  After considering Plaintiff's memorandum of law, declarations, and argument, I issued a bench ruling on March 4, 2014 that Plaintiff met its burden justifying the issuance of a preliminary injunction.  (3/4 Tr. 10-13.)[20]  During the hearing, I found that Plaintiff

---

[20] "3/4 Tr." refers to the transcript of the proceedings held on March 4, 2014.  (Doc. 24.)

demonstrated its likelihood of success on the merits.  There is no doubt that AACS is a technological measure designed to control access to copyright protected materials.  (*Id.* at 10.)  Nor is there any doubt that Defendants' primary, if not sole, business purpose is to decrypt these technological measures.  (*Id.* at 10-11)  Furthermore, Plaintiff made a clear showing that traditional legal remedies would be inadequate to compensate Plaintiff.  (*Id.* at 13.)  In this case, Plaintiff "lacks an adequate remedy at law, because its business model rests upon its being able to prevent the copying of copyrighted works.  If it is unable to prevent the circumvention of its technology, its business goodwill will likely be eroded, and the damages flowing therefrom extremely difficult to quantify."  *Macrovision v. Sima Products Corp.*, No. 05-CV-5587, 2006 WL 1063284, at *3 (S.D.N.Y. Apr. 20, 2006)[21]  Finally, "the statutory structure of the DMCA leaves no room for ambiguity."  *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 943 (N.D. Cal. 2009).  "By making it a DMCA violation to distribute products that enable consumers to override copyright owner preferences against unauthorized copying, Congress determined that the public interest is best served by outlawing such products."  *Id.*  I issued the Preliminary Injunction after the hearing on March 4, 2014.  (Doc. 21.)

I next address Defendant Tao's arguments that the scope of the Preliminary Injunction is overbroad.

## V.   Defendant Tao's Motion to Amend and for Clarification of the Scope of the Preliminary Injunction

Defendant Tao brings his Motion to narrow the scope of the Preliminary Injunction as a

---

[21] Defendant Tao raises arguments regarding Plaintiff's failure to demonstrate irreparable harm in opposition to Plaintiff's Motion to Modify.  To the extent his arguments could be construed to suggest that lack of irreparable harm existed at the time the Preliminary Injunction was issued, his arguments are not based upon new facts or case law.  The time for challenging whether Plaintiff demonstrated irreparable harm as to the Preliminary Injunction has come and gone.  Consequently, I will only consider these arguments in connection with Defendant Tao's Opposition to Plaintiff's Motion to Modify.

motion to amend under Federal Rule of Civil Procedure 59(e).  However, Defendant Tao's argument that the reconsideration standard does not apply and that he is entitled to be heard regarding the scope of the Preliminary Injunction, appears to challenge the Preliminary Injunction's legality under Federal Rule of Civil Procedure 65.  Accordingly, I will consider Defendant Tao's Motion under the standards of both Rule 59(e) and Rule 65.

A.   ***Motion to Amend Pursuant to Rule 59(e)***

"A motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and a motion for reconsideration under Local Rule 6.3 are assessed under the same standard."  *Am. ORT, Inc. v. ORT Israel*, No. 07-CV-2332, 2009 WL 233950, at *3 (S.D.N.Y. Jan. 22, 2009); *see also Lichtenberg v. Besicorp Grp. Inc.*, 204 F.3d 397, 404 (2d Cir. 2000) ("Local Rule 6.3 simply adds flesh to the skeletal procedure set out in Civil Rule 59(e); it does not establish a reconsideration procedure distinct from that already provided by Civil Rule 59(e)."); *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991) ("Motions for reconsideration . . . are as a practical matter the same thing as motions for amendment of judgment under Fed. R. Civ. P. 59(e)—each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance.").  In this District, "the standard for granting a Rule 59(e) motion is strict, and reconsideration will generally be denied." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks omitted).

To prevail on a motion to amend pursuant to Rule 59(e), the movant bears the heavy burden of demonstrating that the Court overlooked "controlling decisions or factual matters that were put before [the court] on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court, or otherwise demonstrate the need to

correct a clear error or prevent manifest injustice." *Am. ORT, Inc.*, 2009 WL 233950, at *3

(alteration in original, internal quotation marks omitted).  A Rule 59(e) "motion may not be used

to advance new facts, issues or arguments not previously presented to the Court, nor may it be

used as a vehicle for re-litigating issues already decided by the Court." *Id.* (internal quotation

marks omitted).  "[C]onfining reconsideration to matters that were overlooked is to ensure the

finality of decisions and to prevent the practice of a losing party examining a decision and then

plugging the gaps of a lost motion with additional matters." *In re Facebook, Inc., IPO Sec. &

Derivative Litig.*, No. 13-CV-4016, 2014 WL 4384069, at *2 (S.D.N.Y. Sept. 4, 2014); *accord

Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a

motion is strict, and reconsideration will generally be denied unless the moving party can point

to controlling decisions or data that the court overlooked—matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court.").

Here, Defendant Tao was apprised of the order to show cause hearing and made the

deliberate decision not to put forth case law or facts in opposition to AACS LA's request for a

preliminary injunction.  Yet Tao now seeks to advance arguments and facts not previously

presented to me, based upon authority that does not represent an intervening change in law.

Nothing prevented Tao from arguing at the time Plaintiff presented its papers that an injunction

either should not issue or be as broad in scope as that proposed by Plaintiff.  Since Defendant

Tao had the opportunity to make these arguments, and chose not to do so, his Motion to Amend

under Rule 59(e) is denied.

### B.   *Motion for Clarification*

Despite Defendant Tao's failure to demonstrate that reconsideration is warranted, it is

within my discretion to clarify an order previously issued.  *See Regal Knitwear Co. v. NLRB*, 324

U.S. 9, 15 (1945) (clarification of orders is within the sound discretion of the district court).  I

may clarify an order either *sua sponte* or upon motion made by a party.  *N.A. Sales Co. v.*

*Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984).  Clarification of an order is

particularly appropriate to facilitate compliance and prevent "unwitting contempt" by a party.

*See Regal Knitwear Co.*, 324 U.S. at 15.  In keeping with this principle, Rule 65(d) provides that

"[e]very order granting an injunction . . . must . . . state its terms specifically; and . . . describe in

reasonable detail . . . the act or acts restrained."  Fed. R. Civ. P. 65(d)(1); *accord Mickalis Pawn*

*Shop, LLC*, 645 F.3d at 144 (explaining that Rule 65(d) is designed "to prevent uncertainty and

confusion on the part of those to whom the injunction is directed").  "In addition to complying

with Rule 65(d)'s specificity requirements, district courts must take care to ensure that injunctive

relief is not overbroad."  *Mickalis Pawn Shop, LLC*, 645 F.3d at 144.  "An injunction is

overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from

engaging in illegal conduct that was not fairly the subject of litigation."  *Id.* at 145.

Defendant Tao contends that the scope of the injunction is overbroad in that it enjoins

products that do not infringe AACS and enjoins wholly extraterritorial activities.  (Tao Amend

Mem. 3.)  In light of these arguments, I will clarify the meaning and scope of the Preliminary

Injunction with regard to the Additional Products (defined below) and its extraterritorial impact.

### 1.      Additional Products

Defendant Tao submits that the DVD Copy, DVD Ripper, DVD Creator, Blu-ray Creator,

Video Converter, and 2D to 3D Converter (the "Additional Products") do not infringe AACS and

should not be included in the Preliminary Injunction.  (*Id.*)  As an initial matter, the Additional

Products "are designed either to circumvent DVD copy and access protection technology . . . , or

to perform certain secondary functions that are complementary to the core illegal video content

'ripping' function of DVDFab's circumvention of the technical protection measures inherent in AACS protection for Blu-ray discs and CSS protection for DVDs." (Pl. Amend Opp. 19-20.) In other words, the Additional Products either violate the DMCA as it relates to DVDs and Blu-ray discs or perform functions that complement the illegal ripping function of Defendant's circumvention software. *See Paramount Pictures Corp. v. 321 Studios*, No. 03-CV-8970, 2004 WL 402756, at *1 (S.D.N.Y. Mar. 3, 2004) (ancillary non-infringing functions of product primarily designed to infringe does not preclude product from violating DMCA). As such, Defendant cannot and has not established that it has a legitimate interest in selling the Additional Products in the United States.

In addition, all of the Additional Products were packaged and sold as part of the DVDFab All-In-One suite as late as May 27, 2014. (5/27 Hewlett Decl. ¶ 19.)[22] Defendant Tao advertised this suite as "the ultimate solution for you to freely copy, rip, convert, burn, clone any DVD/Blu-ray as desired." (*Id.*) Defendant Tao now states that these Additional Products individually do not circumvent AACS. However, I find that given Defendant Tao's marketing of the Additional Products as part of a package explicitly designed to circumvent AACS, there are serious questions going to the merits regarding whether the Additional Products: (1) have a limited commercially significant purpose or use other than circumvention; or (2) are marketed for use in circumvention. *Macrovision*, No. 05-CV-5587, 2006 WL 1063284, at **2-3 (S.D.N.Y. Apr. 20, 2006) (granting preliminary injunction where defendant marketed on its website its products' capability of circumventing copy protections of copyrighted works in violation of the DMCA). Therefore, I find that these issues are fair ground for trial. Accordingly, I do not find that the

---

[22] "5/27 Hewlett Decl." refers to the Supplemental Declaration of Matthew Hewlett in Opposition to Defendant Feng Tao d/b/a DVDFab and Fengtao Software Inc.'s Motion to Amend Injunction Pursuant to Rule 59(e) and Proposed Motion to Vacate Default. (Doc. 44.)

Preliminary Injunction is overboard in preliminarily enjoining the sale of these products.

### 2.    Extraterritorial Impact of the Preliminary Injunction

Defendant Tao asserts that the Preliminary Injunction is overbroad in its scope, (Tao Amend Mem. 3), and his entirely extraterritorial activities are beyond my jurisdiction, (Tao Vacate Mem. 17).  His blanket assertion is misplaced in light of his intent to reach customers in the United States and his active, deliberate acts to circumvent the Preliminary Injunction.

It is well established that there are limitations to the extraterritorial reach of the Copyright Act, and I have the power to review the merits of Plaintiff's claim in this context.  *See Roberts*, 2009 WL 3572962, at *2 (treating "the extraterritorial limitations on the scope of the Copyright Act . . . as an element of [p]laintiff's claim"); *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1367 (Fed. Cir. 2008) (explaining that "whether an accused action is within the extraterritorial limitation [of the Copyright Act] should be treated as an element of the claim, not a predicate for subject matter jurisdiction"); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (holding that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").

The terms of the Preliminary Injunction are not limited to enjoining circumventing activities directly to or from the United States.  (*See generally* PI.)  The trafficking and circumventing activities alleged to have occurred relate to the transfer of circumvention software from a DVDFab Website's host server to a purchaser's host server.  In this case, none of the DVDFab Websites' servers, including DVDFab.com, are hosted in the United States.  (2/24 Hewlett Decl. ¶ 24.)

However, the majority of DVDFab Websites are in English and accept U.S. dollars and credit cards.  (*Id.* ¶ 14.)  All of the DVDFab Websites, including the foreign language websites,

redirected users, prior to the Preliminary Injunction, to the English language DVDFab.com

website when making a purchase.  (*Id.*)  The licensing agreement for the software sold on the

DVDFab Websites claims the protection of United States copyright law.  (5/27 Hewlett Decl. ¶

6.)  And the United States is Defendants' largest single market with at least 550,650 people in

the United States visiting DVDFab.com each month prior to the Preliminary Injunction.  (*Id.* ¶

11 (35% of DVDFab.com's visitors are from the United States).)  The evidence demonstrates

that Defendants targeted the United States market.  As a result of these efforts, prior to the

Preliminary Injunction, a significant portion of Defendants' business involved the trafficking of

circumvention software sold on the DVDFab Websites into the United States.

      However, during the pendency of these Motions, Defendant Tao has fervently claimed

that:  "[t]he overwhelming majority of [FTS's] worldwide sales are to purchasers located outside

the United States."  (5/5 Tao Decl. ¶ 5; 6/20 Tao Decl. ¶ 31).[23]  The only piece of evidence that

supports Tao's assertion is the so-called "Countries Report" for the period of October 1, 2013

until December 31, 2013.  (6/20 Tao Decl. Ex. B.)  It is entirely unclear to me what the figures in

this report purport to represent.  The report includes a pie chart with 36% of the pie denoted to

the United States.  (*Id.*)  Defendant Tao claims that "approximately 65% of [FTS's software]

worldwide sales of [(1) DVDFab Blu-ray Ripper (3D plus), (2) DVDFab Blu-ray Copy,(3)

DVDFab Blu-ray to DVD Converter, (4) DVDFab HD Decrypter, (5) Passkey for Blu-ray, and

(6) Passkey Lite] . . . were to locations outside the United States."  (6/20 Tao Decl. ¶ 31.)

However, the Countries Report does not list what software is represented as being sold.  In

addition, the names of the other countries—if that is what they are—have been redacted from the

---

[23] "5/5 Tao Decl." refers to the Reply Declaration of Feng Tao in Support of Motion to Amend Injunction.  (Doc.
40.)

Countries Report, so on its face the Countries Report simply does not support Tao's claims concerning sales outside the United States.  In short, the contents and origins of the Countries Report has not been verified, and Defendant Tao provides no information concerning how it was created.  In any event, sales of circumvention software such as DVDFab Blu-ray Ripper (3D plus), DVDFab Blu-ray Copy, DVDFab Blu-ray to DVD Converter, DVDFab HD Decrypter, Passkey for Blu-ray, and Passkey Lite also violates the laws of other countries.  (*See* Pl. Amend Opp. 20-21.)

For a defendant seeking modification of an injunction on the sole basis that certain of its sales are entirely foreign, Defendant has provided scant evidence to support such a claim. However, Plaintiff does not dispute that some portion of Defendant's sales were to individuals located outside of the United States.  (*See* Pl. Amend Opp. 4; 2/24 Hewlett Decl. ¶ 11.) Therefore, despite the questionable evidence from Defendant Tao, I find that at least some portion, whatever that may be, of Defendant Tao's internet business likely involves entirely foreign trafficking of circumvention software.

Neither party disputes that United States copyright laws generally do not have extraterritorial application, (*see* Tao Amend Mem. 4-7; Pl. Amend Opp. 16; 11/19 Tr. 11:14-19). *See Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).  And Defendant Tao does not dispute that United States copyright laws reach the trafficking of infringing products into the United States.  (*See* Tao Amend Mem. 7n.8; Tao Amend Reply 8.)

Rather, the dispute lies with regard to whether an exception exists to sweep the Defendant's entirely extraterritorial activities within the ambit of the DMCA.  The exceptions that Plaintiff mentions involve conduct that crosses borders, so that at least a part of the offense takes place within the United States.  Nimmer Copyright § 17.02; *see also Update Art, Inc.*, 843

F.2d at 73 (holding that the Copyright Act reaches foreign infringement made possible by an act of domestic infringement); *United Feature Syndicate, Inc. v. Miller Feature Syndicate, Inc.*, 216 F. Supp. 2d 198, 225 (denying motion to dismiss based on assertion that United States copyright laws were being applied extraterritorially where infringing material was accessed within United States). Plaintiff does not cite any exception, nor am I aware of one, that permits the DMCA to extend to infringing acts that occur entirely abroad. Consequently, I find that the Preliminary Injunction may presently enjoin activities that occur entirely outside of the United States and therefore those activities do not violate the DMCA.

The record demonstrates, however, that after the issuance of the Preliminary Injunction Defendant Tao sought to circumvent its terms as it related to conduct that results in infringement within the United States. Therefore, I address below, whether the current scope of the Preliminary Injunction is necessary even though it may prevent entirely extraterritorial conduct that is beyond the reach of the DMCA in light of Defendant's efforts to circumvent the Preliminary Injunction's terms.

### 3.    Narrowly Tailored Relief

"A preliminary injunction is issued to maintain the *status quo* until there can be a hearing on the merits." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). Although I have "a wide range of discretion in framing an injunction . . . it is nonetheless the essence of equity jurisdiction that [I am] only empowered to grant relief no broader than necessary to cure the effects of the harm caused by the violation." *Mickalis Pawn Shop, LLC*, 645 F.3d at 144 (internal quotation marks omitted). In keeping with this principle, I do have "authority to enjoin actions otherwise lawful when such action is deemed by [me] necessary to correct the evil effects of unlawful conduct." *United States v. United Liquors Corp.*, __ U.S. __,

77 S. Ct. 208, 210 (1956).

Plaintiff brings its Motion to Modify on the basis that Defendants have continued to market and sell their circumventing infringing software into the United States in contravention of the terms of the Preliminary Injunction prohibiting such conduct.  (*See generally*, Pl. Amend Mem.)  After considering the parties' memoranda, documentary evidence, and argument, as discussed in detail below, I find that the record clearly establishes Defendants staunch refusal, including Defendant Tao, to comply with the terms of the Preliminary Injunction.  Accordingly, I find that although the Preliminary Injunction may "incidentally proscribe[] certain lawful conduct [it] is necessary and appropriate in the public interest."  *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004) (internal quotation marks omitted).

**a.**    Defendant Tao's Refusal to Comply with the Preliminary Injunction

The terms of the Preliminary Injunction clearly state that Defendant "[is] preliminarily enjoined . . . from . . . manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology . . . capable of circumventing the AACS Technology."  (PI ¶ 2(a).)  Defendant Tao was aware of the proscriptions of the Preliminary Injunction and repeatedly averred to this Court that he ceased trafficking infringing software into the United States.  (5/5 Tao Decl. ¶ 16; 8/6 Tao Decl. ¶ 2.)[24]  Counsel has also represented that Defendant Tao "is not challenging the [Preliminary Injunction] with regard to the [United States]."  (5/27 Tr. 41.)  However, Tao's actions outside of court demonstrate that he has no interest in complying with the Preliminary Injunction domestically and has actively sought to circumvent its terms.

A mere 6 days following my issuance of the Preliminary Injunction, FTS's head of

---

[24] "8/6 Tao Decl." refers to the Reply Declaration of Feng Tao in Support of Motion to Vacate Clerk's Default. (Doc. 58.)

marketing, Frank, contacted counsel for Plaintiff on or about March 10, 2014 and threatened to offer its circumvention software for free if Plaintiff did not agree to certain terms, including restoring Defendant's business.  (*See* 4/21 Wukoson Decl. ¶ 5; 6/20 Tao Decl. ¶ 20; 5/27 Tr. 48.)[25]  On March 12, 2014, Defendants established a website, ILikeDVDFab.com, which specifically referenced the Preliminary Injunction and boldly proclaimed that Defendants "recovered all the normal businesses to www.dvdfab.cn" and "promise[d] to reverse the situation through every possible effort."  (4/21 Hewlett Decl. ¶ 15.)  Defendant Tao's actions demonstrate that he has carried through on Frank's threat and made AACS circumvention software available for free and taken extraordinary steps to continue trafficking circumvention software into the United States.

### i.    *TDMore Software*

The Preliminary Injunction was issued on March 4, 2014, and TDMore.com was created shortly thereafter, on April 28, 2014.  (10/3 Hewlett Decl. Ex. F, at 8.)[26]  TDMore.com was previously registered under the name Li Ming and organization Feng Tao.  (*Id.* ¶ 20.)  However, more recently the registrant of TDMore.com obscured its identity on or about October 1, 2014 by "WHOIS private domain registration service located in Beijing, China."  (Pl. Amend Mem. 7.)  The TDMore suite of products are substantially similar to the software defined by Plaintiff as the "DVDFab Software".[27]  AACS LA's private investigator, Matthew Hewlett, visited

---

[25] "4/21 Wukoson Decl." refers to the Declaration of George P. Wukoson in Opposition to Defendant Feng Tao d/b/a DVDFab and Fengtao Software Inc.'s Motion to Amend Injunction Pursuant to Rule 59(e).  (Doc. 34.)  I do not credit Tao's claim that he did not authorize this threat, and subsequent events support my conclusion.

[26] "10/3 Hewlett Decl." refers to the Declaration of Matthew Hewlett in Support of Plaintiff Advanced Access Content System Licensing Administrator, LLC's Motion to Modify this Court's March 4, 2014 Order for Preliminary Injunction.  (Doc. 60.)

[27] The DVDFab Software includes:  DVDFab All-In-One, DVDFab9, DVDFab PassKey8, DVDFab Blu-ray Ripper (3D plus), DVDFab Blu-ray Copy, DVDFab Blu-ray to DVD Converter, DVDFab HD Decrypter, Passkey for Blu-ray, and Passkey Lite ( collectively the "DVDFab Software"), (2/24 Hewlett Decl. ¶ 8), whereas TDMore.com offers the TDMore Software:  TDMore 4-in-1 Bundle, TDMore DVD Copy, TDMore DVD Converter, TDMore Blu-ray

TDMore.com using a U.S. IP address.  (10/3 Hewlett Decl. ¶ 28.)  He downloaded and installed the TDMore Software to a U.S.-based computer.  (*Id.*)  He then used the TDMore Software to circumvent AACS, copy a Blu-ray disc to his US-based computer, and later view the motion picture contents of that file free of AACS encryption.  (*Id.*)

Defendant Tao does not deny owning and operating the TDMore products website.  He does not deny that as of October 29, 2014, the TDMore Software can and did circumvent AACS.  Rather, once caught red-handed, Defendant Tao lamely claims that the website also provided software that did not circumvent AACS or "provided numerous other features unrelated to AACS circumvention," (11/14 Tao Decl. ¶¶ 12-13),[28]  while at the same time acknowledging that he was selling software that did circumvent AACS software, (*id.* ¶ 14 ("FTS is removing AACS circumvention from the TDMore programs.")).  Tao now asserts that since he has removed the AACS circumvention software after being caught violating the Preliminary Injunction, these websites and products should not be enjoined.  (*Id.* ¶¶ 12-14.)  Regardless of the excuses Defendant Tao has now concocted once caught with his "hand in the cookie jar," there is no question that after the issuance of the Preliminary Injunction he intentionally continued to traffic products into the United States that violated its terms.

### ii.    *BluFab Software*

BluFab.cn is registered to Defendant Tao at frankosee@126.com.  (4/21 Hewlett Decl. ¶ 9.)  BluFab.cn was created a mere 11 days following the issuance of the Preliminary Injunction, apparently as a rebranding of DVDFab.  (*Id*.)  The Preliminary Injunction specifically enjoined the trafficking of Passkey Lite.  (PI ¶ 2(a).)  BluFab.cn continued to offer for sale Passkey Lite

---

Copy, and TDMore Blu-ray Converter, (10/3 Hewlett Decl. ¶ 28).

[28] "11/14 Tao Decl." refers to the Declaration of Feng Tao in Opposition to Motion to Modify Injunction.  (Doc. 77.)

after the issuance of the Preliminary Injunction.  (4/21 Hewlett Decl. ¶ 9.)  Defendant has made

conflicting statements concerning whether or not "it will continue selling the DVDFab Software

and whether its BluFab software will circumvent AACS."  (Pl. Amend Opp. 12.)  However, it is

clear that BluFab.cn also offers for sale the BluFab All-In-One, which includes the BluFab 2D to

3D Converter, BluFab DVD Copy, DVD Ripper, Blu-Ray Copy, Blu-Ray Ripper (3D Plus), Blu-

ray to DVD Converter, DVD Creator, Blu-ray Creator, Video Converter, and File Transfer.

(4/21 Hewlett Decl. Ex. D, at 10, 13.)  Defendant Tao does not dispute that he owns or operates

BluFab.cn, or traffics in Passkey Lite and/or other products from BluFab.cn designed to

circumvent AACS.  (Tao Amend Opp. 2-3.)  He also does not dispute his connections to

BluFab.com.  Rather, he claims that the programs BluFab Blu-ray Converter, BluFab Blu-ray

Copy, and BluFab Blu-ray to DVD Converter, found on BluFab.com, do not circumvent AACS

and should not be enjoined.  (Tao Amend Opp. 11-12.)  However, as with DVDFab's Additional

Products discussed above, most of these products were included in the BluFab All-In-One suite,

and marketed as being able to rip content from Blu-ray discs.  (4/21/ Hewlett Decl. Ex. D, at 10,

13; 10/3 Hewlett Decl. ¶ 33.)  Given these facts I find that there are serious questions going to

the merits concerning whether these products are either:  (1) being marketed for use in

circumvention; or (2) have a limited commercially significant purpose besides circumvention.

Therefore, I find that these issues are fair ground for trial.

### iii.   *DVDFab Software*

Defendant purports to offer NAD software version of DVDFab Software to United States

users.  (8/6 Tao Decl. ¶ 3.)  This NAD version is available at DVDFab.de,[29] DVDFab.cn, and

---

[29] The Preliminary Injunction ordered the disabling of the DVDFab.de website.  (Doc. 21 ¶¶ 2(b), 4.)  Defendant Tao chose not to comply with my order, and the DVDFab.de website continues to function.  (4/21 Hewlett Decl., Ex. B, at 12-13.)

FabImg.net.  (4/21 Hewlett Decl. Ex. B, at 12-13.)  All three of these websites share the same IP

address.  (*Id.* at 1-13.)  DVDFab.de and DVDFab.cn are registered to Defendant Tao.  (*Id.* at 1-

13.)  FabImg.net is registered to Xin Lan Shen.  (*Id.* at 8-9.)  Xin Lan Shen is Lanny Shen, a

named defendant in this action.[30]  (11/19 Tr. 46:7-12.)

 Mr. Hewlett was able to circumvent AACS using the DVDFab Software by two different

methods:  (1) a virtual private network ("VPN"; a localized network that can be joined remotely)

to access non-US versions of DVDFab Software; and (2) NAD versions of DVDFab Software in

conjunction with free add-on software.

 With regard to the first method, Mr. Hewlett purchased DVDFab All-In-One from the

website DVDFab.cn using a U.S. based computer system and a U.S. IP address.  (10/3 Hewlett

Decl. ¶ 5.)  He paid for the DVDFab All-In-One using a U.S. MasterCard.  (*Id.*)  Using the same

computer system he accessed a Canadian IP address using a VPN.  (*Id.*)  He then downloaded the

non-U.S. version of the DVDFab All-In-One and "installed and activated it using the DVDFab

All-In-One license key previously purchased using the U.S. based computer system and U.S.

based IP address."  (*Id.*)  Then using a U.S. based computer with a U.S. IP address he used

DVDFab Blu-ray Ripper (3D Plus) to circumvent AACS and copied and viewed a motion picture

without needing the AACS decoding capabilities.  (*Id.* ¶ 6.)  Finally, he used DVDFab DVD

Creator to convert the file to a format that could be burned to a Blu-ray disc and burned the

contents of the converted file to a Blu-ray disc.  (*Id.*)

 In connection with the second method, Mr. Hewlett attempted to use the NAD software

to rip a Blu-ray disc protected with AACS but he received an error message stating that the disc

---

[30] Defendant Tao previously averred to this Court that Mr. Shen had no participation in his business and simply "lent" him a credit card to register various domain names.  (6/20 Tao Decl. ¶¶ 9(a),(d).)  That Mr. Shen would register and control several domain names for websites that offer FTS products for sale, yet have no affiliation with FTS, is simply not believable and I do not credit this representation.

was protected by AACS.  (*Id.* ¶ 9.)  However, by "clicking" on "More info" in the dialog box he

was directed to a page on DVDFab.cn called "How To Do Disc Decryption Faq" where it was

explained that "DVDFab users in the US" could use, among other things, a free software product

called Woookao "to restore the ability of DVDFab products to circumvent AACS".  (*Id.*)

### iv.  *Woookao Add-On*

Mr. Hewlett downloaded the NAD software to a U.S.-based computer.  (10/3 Hewlett

Decl. ¶ 12.)  He then visited Woookao.cn using a U.S. IP address.  (*Id.*)  He downloaded the

Woookao add-on to the same U.S.-based computer containing the NAD software.  (*Id.*)  As

promised, the Woookao add-on acted in conjunction with the NAD software to permit Mr.

Hewlett to circumvent AACS, copy a Blu-ray disc, and later view the motion picture contents of

that file free from AACS encryption.  (*Id.* ¶ 13.)  Finally, as with the VPN method, Mr. Hewlett

used DVDFab DVD Creator to convert the file to a format that could be burned to a Blu-ray disc

and burned the contents of the converted file to a Blu-ray disc.  (*Id.*)

Defendant Tao claims that any connection between FTS and the Woookao program is

based upon "rank speculation."  (Tao Amend Opp. 12.)  I disagree; there is abundant evidence

that demonstrates the connection between FTS and Woookao.

First, Defendant marketed the Woookao add-on to their consumers, (10/3 Hewlett Decl. ¶

9), and promised that the Woookao add-on would permit AACS decryption, (*id.*).  Second, the

Woookao program's "properties" information listed the file and product description as DVDFab

Passkey.  (*Id.* ¶ 11; *id.* Ex. E, at 8-11.)  Third, under the copyright section it indicates that the

Woookao program is copyrighted to FTS.  Indeed, at least one consumer commenting on posts

by DVDFab's staff stated that "[e]veryone knows that Woookao is just an older version of

DVDFab PassKey Lite that you guys are distributing through a dummy chinese server."  (10/3

Hewlett Decl. ¶ 10.)[31]  Fourth, Woookao.cn was registered to peterzhang1211@yandex.com, the

same registrant of Boooya.org, a website discussed below, that Defendant Tao does not dispute

is within the dominion and control of FTS.[32]  (*Id.* ¶ 15; 11/4 Hewlett Decl. ¶ 5.)[33]  Fifth, the

Woookao and Boooya websites are strikingly similar in appearance.  Specifically, the Woookao

websites and Boooya.org website have similar font sizes, colors, and graphics.  (10/3 Hewlett

Decl. Exs. D, E.)  Finally, while the registrant of Woookao.com has obscured its identity, (*id.* ¶

14), Woookao.com and Woookao.cn share the same IP address, (*id.* Ex. D, at 20-25).

Defendant Tao's averment that "FTS does not offer Passkey Lite using the name

Woookao," and that someone unrelated to Tao "took a copy of Passkey Lite, renamed the file

Woookao and uploaded it to the Internet" is simply implausible.  (11/14 Tao Decl. ¶ 7.)  Instead,

the explanation supported by the evidence is that Defendant Tao acted on the threat by his head

of marketing to distribute AACS decryption software for free.  (*See* 4/21 Wukoson Decl. ¶ 5;

6/20 Tao Decl. ¶ 20; 5/27 Tr. 48.)  To do so, they removed the AACS decryption program from

---

[31] The complete post states:

> Everybody knows that Woookao is just an older version of DVD Fab PassKey Lite that you guys are distributing through a dummy chinese server. When it was first released you guys didn't bother to pull the version information out of the properties dialog box so it was plain as day.  I see you got smarter and wiped the version info from the current download, but the cat is already out of the bag.  It's PassKey Lite which means it just decrypts AACS but doesn't do anything about the newer BD+ and Java protections.  So, I'm guessing that in response to the legal actions DVD Fab took out the AACS decryption but left in the code to handle BD+ and Java because they probably weren't covered in the current lawsuit.  So for the time being, installing PassKey lite (a.k.a. Wooo[k]ao – where did you get that name?) replaces the AACS decryption and supposedly allows DVD Fab to function once again -- I wonder if anyone here has actually tried it.  I say for now because the MPAA will most certainly catch up and file more actions to get you to remove BD+ and Java circumvention.  Good luck with the chess match.

(10/3 Hewlett Decl. ¶ 10.)

[32] Defendant Tao claims that he does not know Peter Zhang.  (11/19 Tr. 45:1-3.)  However, when asked to explain this series of fortuitous connections between Defendant Tao and Peter Zhang, Defendant Tao's counsel was unable to shed any light.  (*Id.* 46:2-4.)

[33] "11/4 Hewlett Decl." refers to the Supplemental Declaration of Matthew Hewlett in Further Support of Plaintiff Advanced Access Content System Licensing Administrator, LLC's Motion to Modify this Court's March 4, 2014 Order for Preliminary Injunction.  (Doc. 74.)

the DVDFab Software, uploaded it to the Woookao websites, marketed the Woookao program

from DVDFab websites, and tried to hide the Woookao websites' registrant information.

> **v.**     *Boooya Add-On*

Like the Woookao software, the Boooya software restores the NAD software's AACS

circumvention capabilities.  Boooya.org was created on April 21, 2014 and registered to Feng

Tao at frankosee@126.com.  (10/3 Hewlett Decl. Ex. E, at 16-17.)  On October 1, 2014

Boooya.org's registrant information was changed to Peter Zhang at

peterzhang1211@yandex.com.  (*Id.* at 8-9.)

Mr. Hewlett visited Boooya.org using a U.S. IP address.  (*Id.* ¶ 17.)  He downloaded and

installed a file entitled addon(1).exe.  (*Id.*)  When he launched addon(1).exe, the program's

licensing agreement identified it as DVDFab Passkey 8.  (*Id.*)  During the installation process, a

dialogue box was displayed containing the statement "Passkey for Blu-ray removes all known

AACS . . . protections."  (*Id.*)  Defendant Tao does not dispute that FTS offers addon(1).exe or

that this program circumvents AACS technology.  Rather, like with the TDMore Software, once

his duplicity was revealed he disclaimed any intention for the product to be used by United

States users, and noted an intention to block users from the United States in the future.  (Def.

Amend Opp. 3.)

> **b.**     Scope of the Preliminary Injunction is not Overbroad

Tao's explanations for his continued trafficking of infringing products into the United

States—the product is not his, the product was not created "primarily" for AACS circumvention,

or the product was not intended for U.S. users— is simply not credible.  The record

overwhelmingly demonstrates these statements are not true.

Rather, the evidence supports finding that Tao "calculated that his elusive and ephemeral

location, coupled with the 'virtual' nature of his business," would allow him to remain safely beyond the reach of this Court. *See Philip Morris*, 331 F. Supp. 2d at 245. It was not my intention to sweep within the Preliminary Injunction lawful conduct, i.e. entirely extraterritorial conduct. However, Defendant's recalcitrant persistence in accessing the United States market makes clear to me that no more narrowly-tailored relief would be effective. *Id.*; *see also Sierra Club*, 732 F.2d at 256 (stating that an injunction "may not be changed in the interest of the defendants if the purposes of the litigation as incorporated in the decree have not been fully achieved."). Defendant Tao's claims that he will impose and abide by measures prohibiting United States users from accessing his websites "lie ill in the mouth of a party that has consistently and deliberately violated the [Preliminary Injunction] in the past."[34] *See Philip Morris*, 331 F. Supp. 2d at 245. Consequently, I find that the scope of the Preliminary Injunction is not overly broad and deny Defendant's Motion to Amend the Preliminary Injunction.

## VI.   Plaintiff's Motion to Modify

The decision to modify a preliminary injunction remains in my discretion. *See Sierra Club*, 732 F.2d at 256 ("An injunction is an ambulatory remedy that marches along according to the nature of the proceeding. It is executory and subject to adaption as events may shape the need . . . ."). A party seeking to modify a preliminary injunction must show that modification is justified by a "significant change in facts or law." *Lawsky v. Condor Capital Corp.*, No. 14-CV-2863, 2014 WL 3858496, at *5 (S.D.N.Y. Aug. 1, 2014) (collecting cases). Where a defendant continues to violate the terms of a preliminary injunction, modification is appropriate. *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96-CV-9721, 2002 WL 2012618, at *12 (S.D.N.Y.

---

[34] I note that Defendant Tao does not suggest in his papers language that could be included in an amended preliminary injunction order to remedy the purported defects in the Preliminary Injunction.

Sept. 3, 2002) (granting modification based upon defendant's repeated violations of the preliminary injunction).

As described above, I find that Defendant Tao continued to traffic products into the United States from the websites TDMore.com, BluFab.cn, BluFab.com, Boooya.org, DVDFab.de, DVDFab.cn, FabImg.net, Woookao.cn, and Woookao.com,[35] (collectively, the "Contravening Websites") that:  (1) are primarily designed or produced to circumvent a technological measure that controls access to a work protected under the Copyright Act; (2) have only a limited commercially significant purpose or use other than circumvention; and/or (3) are marketed for use in circumvention, in violation of the Preliminary Injunction.  Therefore, I find that Plaintiff is likely to succeed on the merits of its claims.

Defendant Tao challenges Plaintiff's showing of irreparable harm, stating that harm to a business model is not irreparable.  (Tao Amend Opp. 5-6.)  However, the Second Circuit has held that harm is irreparable when "the very viability of the plaintiff's business" has been threatened.  *Tom Doherty Assocs. Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d. Cir. 1995).  In this case, Plaintiff's entire business depends upon its ability to prevent the copying of copyrighted works.  Defendant is well aware of this fact given their threat to render AACS LA "irrelevant" by distributing AACS circumvention software for free.  (4/21 Wukoson Decl. ¶ 5.)  Consequently, Plaintiff's inability to prevent circumvention will eviscerate its business, damages will be inadequate, rendering the actual and imminent likelihood of irreparable harm to be great.  *Macrovision*, 2006 WL 1063284, at *3.

Therefore, modification of the Preliminary Injunction is granted to enjoin the

---

[35] Since I find that Defendant Tao more likely than not owns or controls the Woookao websites and products found therein, I need not address the parties' arguments concerning FTS's first amendment right to reference the Woookao program.  (Tao Amend Opp. 14; Pl. Amend Reply 5-6.)

Contravening Websites and products sold or offered therein.[36]

However, I decline to include TDMore.cn and Boooya.com within the terms of the modified Preliminary Injunction because Plaintiff has failed to demonstrate its likelihood of success with regard to these websites.  Although TDMore.cn was registered to Defendant Tao at frankosee@126.com on May 6, 2014, the website is not currently operating.  (10/3 Hewlett Decl. ¶ 21; *id.* Ex. G, at 16.)  In addition, Plaintiff has not shown that Defendants are, or were, trafficking products that violate the DMCA from TDMore.cn into the United States.  And while Boooya.com also offers an add-on that may be used in conjunction with DVD copying products, (*Id.* ¶ 15), Plaintiff has not provided any evidence showing that the Boooya.com add-on circumvents AACS.

---

[36] Defendant Tao's argument that enjoining all of the products found on the Contravening Websites is overbroad fails in light of my finding that no more narrowly tailored relief will be effective.  *See supra* Section V.B.3.  In addition, I find that it is in the public interest to enjoin the Contravening Websites and products sold or offered therein for the same reasons described in connection with the Preliminary Injunction issued on March 4th.  *See supra* Section III.

## VII.    <u>Conclusion</u>

For the foregoing reasons, Defendant Tao's Motion to Vacate is DENIED WITH

PREJUDICE; Defendant Tao's Motion to Amend is DENIED WITH PREJUDICE; and

Plaintiff's Motion to Modify is GRANTED IN PART and DENIED IN PART.  The Clerk of the

Court is respectfully requested to terminate the pending motions, (Docs. 28, 47.)

SO ORDERED.

Dated: March 16, 2015
      New York, New York

Vernon S. Broderick
United States District Judge