UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCED ACCESS CONTENT SYSTEM LICENSING ADMINISTRATOR, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>LANNY SHEN d/b/a DVDFAB AND FENGTAO SOFTWARE INC., SUNREG TECHNOLOGIES LTD. d/b/a DVDFAB AND FENGTAO SOFTWARE INC., FENG TAO d/b/a DVDFAB AND FENGTAO SOFTWARE INC., SHEN XINLAN d/b/a AUDIO-DVD CREATOR, and JOHN DOE, JANE DOE and/or XYZ COMPANY d/b/a DVDFAB, RIPPERBLU-RAY.COM, DVDFABB.COM and DVDFFAB.COM,<br><br>　　　　　　　　　　Defendants. | Civil Action No.<br>14 Civ. 1112 (VSB)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO FOR RECONSIDERATION** |

　　　　Defendant Feng Tao d/b/a Fengtao Software ("Tao"), by his undersigned attorneys, submits this memorandum of law in support of his motion for reconsideration of (1) the Court's Memorandum & Order entered March 16, 2015 (the "M&O") (a) denying Feng's motion to vacate the Clerk's default, (b) denying Feng's motion to modify by narrowing the Preliminary Injunction entered by the Court on March 4, 2014 ("Original Injunction"), and (c) granting (in part) plaintiff's motion to modify by expanding the Original Injunction, and (2) the Amended Preliminary Injunction Order entered March 17, 2015 (the "Amended Injunction").

**PRELIMINARY STATEMENT**

Consistent with defendant Tao's argument, the M&O and recognized that "United States copyright laws generally do not have extraterritorial application" (M&O 22), that the exceptions plaintiff relied upon were inapplicable because they "involve conduct that crosses borders, so that at least a part of the offense takes place within the United States" (M&O 22), and that there is no exception "that permits the DMCA to extend to infringing acts that occur entirely abroad" (M&O 23).[1]  Nevertheless, the M&O held that the extraterritorial scope of the injunction was necessary due to Tao's efforts to circumvent the Original Injunction.  (M&O 23.)  As set forth more fully below, reconsideration of the M&O should be granted because it retained an improper extraterritorial injunction, and then expanded it to cover products that to not violate the DMCA.

**ARGUMENT**

**I.    RECONSIDERATION IS WARRANTED PURSUANT TO RULE 59(E) AND LOCAL RULE 6.3**

A motion for reconsideration may be granted where the movant demonstrates "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701-02 (S.D.N.Y. 2011); *citing Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F.Supp.2d 696, 701 (S.D.N.Y.2001) (quoting *Doe v. NYC Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir.1983)).  Defendants seek reconsideration under the third category.  A motion for reconsideration on such grounds may be granted where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might

---

[1] The M&O stated: "Plaintiff does not cite any exception, nor am I aware of one, that permits the DMCA to extend to infringing acts that occur entirely abroad.  Consequently I find that the Preliminary Injunction may presently enjoin activities that occur entirely outside of the United States and therefore those activities do not violate the DMCA." (M&O p. 23)

reasonably be expected to alter the conclusion reached by the court." *Id.* (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 256–57 (2d Cir.1995)).

## II. THE COURT SHOULD RECONSIDER DENIAL OF TAO'S MOTION TO VACATE THE DEFAULT

The M&O denied Tao's motion to vacate, finding the default was willful in large part based upon activities that transpired *after* the default. This overlooked controlling precedent disfavoring defaults, requiring consideration of prejudice to plaintiff, and considering bad faith at the time of the default. The facts show that once Tao was able to retain counsel, he appeared in the case and promptly filed a motion to modify the injunction, which demonstrated that he intended to participate in the action. Tao was not required to first move to set aside the default, and plaintiff was not prejudiced by any delay in the motion to vacate. Additionally, the Court overlooked the uncontroverted fact that Weiss & Moy declined to take the case due to lack of staffing. Tao Decl. ¶ 24.

Moreover, Tao's interest in a ruling on whether he was personally subject to the jurisdiction of the courts, whether it was proper for him to be served by email, and whether the injunction exceeded the Court's powers before he decided whether to fully defend on the merits is not evidence of bad faith. The rulings Tao mentioned are routinely decided at the outset of litigation, and there is nothing improper about his interest in such rulings before announcing a commitment to fully defend a case on the merits – particularly at a time when Tao was actively engaged in the litigation. Tao's interest in preliminary rulings hardly rises to the level or type of bad faith typically required, such as where a defendant knowingly failed to appear at trial, or expressly represented that it does not intend to defend.

3

**III.   THE COURT SHOULD RECONSIDER DENYING TAO'S MOTION TO NARROW THE INJUNCTION AND GRANTING PLAINTIFF'S MOTION TO EXPAND THE INJUNCTION**

### A.   The Court Overlooked the Impact of the Supreme Court's Decision in *Morrison v. Nat'l Australia Bank Ltd.* on Extraterritorial Injunctions

In *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010), the Supreme Court reaffirmed the centuries-old presumption against extraterritorial application of United States laws. While the M&O acknowledged that the Copyright laws generally do not apply extraterritorially, it overlooked the impact of *Morrison* on the scope of the injunction. Morrison expressly held that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id.*

Not only does the Copyright Act lack a "clear indication" that a federal court may enjoin extraterritorial conduct, to the contrary and as noted previously,[2] the Act expressly provides that an injunction "shall be operative throughout the United States." 17 U.S.C. § 502.[3] There is no suggestion whatsoever that a United States copyright injunction can be enforced extraterritorially. This omission is consistent with historical case law providing that the Copyright Act does not apply extraterritorially. See *Capitol Records v. Mercury Records Corp.*, 221 F.2d 657, 662 (2d Cir. 1955) (internal citations omitted) ("Then too the rule that we are adopting is in harmony with the settled law that a copyright has no extra-territorial effect. Until we have a uniform international law of literary property, it will be much more convenient to determine the effect of each act by the law of the place where the right of property is sought to be exercised.")[4]

---

[2] See Tao Vacate Mem. 18.
[3] The legislative history indicates the language was added to ensure that "a copyright owner who has obtained an injunction in one State will be able to enforce it against a defendant located anywhere else in the United States." House Report No. 94-1476.
[4] Plaintiff has not shown that Congress intended for extraterritorial injunctions to be available under the DMCA.

As Tao has argued, the Original Injunction applies extraterritorially, in violation of the express limitations of the Copyright Act and in contravention of the Supreme Court's decision in *Morrison*.

> [W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129, 73 L.Ed. 379 (1929). This principle of statutory construction reflects an ancient maxim Expressio unius est exclusio alterius.

*Cell Associates, Inc. v. National Institutes of Health*, 579 F.2d 1155, 1159 (9th Cir. 1978).

The *Morrison* rationale applies to extraterritorial injunctions. Indeed, the Copyright Act's territorial limitations would be rendered meaningless if courts could enjoin entirely foreign activity on such grounds. By analogy, just as a United States citizen cannot seek redress in a United States court for securities fraud on foreign exchanges, a DMCA plaintiff cannot seek redress in a United States court for alleged circumvention that takes place entirely outside the United States. "[T]he Supreme Court [in *Morrison*] clearly sought to bar claims based on purchases and sales of foreign securities on foreign exchanges, even though the purchasers were American." *In re Vivendi Universal*, S.A. Sec. Litig., 765 F. Supp. 2d 512, 532 (S.D.N.Y. 2011).

In retaining the extraterritorial scope of the Original Injunction, the M&O relies upon the court's general injunctive power to enforce its orders. However, as the M&O acknowledged, a court of equity is "only empowered to grant relief no broader than necessary to cure the effects of the harm caused by the violation." M&O 23. Despite this limitation, the M&O concluded that the Original Injunction "is necessary even though it may prevent entirely extraterritorial conduct that is beyond the reach of the DMCA in light

of Defendant's efforts to circumvent the Preliminary Injunction's terms" because the Court found that defendant Tao refused to comply with the Original Injunction.

As noted above, the Court's equitable powers to prevent circumvention are limited by *Morrison* and other cases prohibiting extraterritorial application of the Copyright Act.  *See See Danjaq LLC v. Sony Corp.*, 1998 WL 957053 (C.D.Cal. July 29, 1998), *aff'd* 165 F.3d 915 (9th Cir. 1998) ("the scope of the injunction must be limited to Defendants' domestic activities.").  *See also CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d. 1070, 1079 (N.D.Cal. Sept. 4, 1998) ("There appear to be no reported cases, however, in which the extraterritorial manufacture and distribution of infringing products was *enjoined* on the basis of copyright infringement occurring within the United States… Accordingly, the injunction will apply only to infringing activity occurring within the United States.").[5]

The M&O retained the extraterritorial scope of the Original Injunction on the grounds that the Court has the authority to incidentally proscribe certain otherwise lawful conduct.   However, the presumption against extraterritoriality reaffirmed by *Morrison* must be taken into consideration, particularly when proscribing otherwise lawful conduct that takes place wholly outside the United States.  Neither *United States v. United Liquors Corporation*, 77 S. Ct. 208 (1956) nor *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228 (S.D.N.Y. 2004) support the notion that an improper extraterritorial injunction becomes proper due to a finding that a party's compliance with a court order was incomplete.

The M&O further failed to consider Supreme Court and Second Circuit decisions setting forth the criteria for extraterritorial injunctions.  Although issued in the context of the Lanham Act, which has broader extraterritorial application than the

---

[5] *Morrison* was briefed (Tao Amend Mem. 9; Tao Reply Mem. 3-6) and discussed during oral argument (Tr. 22-23, 49-51).

Copyright Act, the limiting principals remain applicable.  For example, in *Steele v. Bulova Watch Co.*, Inc., 344 U.S. 280 (1952), the Supreme Court permitted an extraterrestrial injunction, but its decision relied heavily upon the fact that the defendant was a United States citizen who moved his business to Mexico.  *Id.*  Tao is not a United States citizen.

In *Vanity Fair Mills, Inc. v. T. Eaton Co., Ltd.*, 234 F.2d 633 (2d Cir. 1956), the Second Circuit found that the district court did not abuse its discretion in refusing to entertain claims of trademark infringement and unfair competition occurring in Canada.  Vanity Fair summarized the three factors stressed by the Supreme Court in *Bulova* as follows: (1) the defendant's conduct had a substantial effect on United States commerce; (2) the defendant was a United States citizen and the United States has a broad power to regulate the conduct of its citizens in foreign countries; and (3) there was no conflict with trademark rights established under the foreign law.  *Id.* at 642.  Here, there has been no showing that Tao's wholly extraterritorial conduct had any effect on United States commerce, let alone a substantial effect, and the uncontroverted evidence is that Tao is not a United States citizen.  As noted in *Vanity Fair*, "the absence of one of the above factors might well be determinative and [] the absence of both is certainly fatal" to the extraterritorial application of the Lanham Act.  *Id.* at 643.  *See also Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733 (2d Cir. 1994) (vacating and remanding extraterritorial Lanham Act injunction for failure to consider the Vanity Fair Mills factors.)

### B. The Court Overlooked the DMCA's Limitation to Products That Violate the DMCA

The operative language in Section 1201 of the Copyright Act prohibits trafficking in "any technology, product, service, device, component, or part thereof," that "is primarily designed or produced" for the purpose of circumventing a technological measure that effectively controls access to a copyrighted work (Section 1201(a)(2)), or "is primarily

7

designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof" (Section 1201(b)(1)(a)).

The M&O concluded that the Additional Products "either violate the DMCA as it relates to DVDs and Blu-ray discs, or perform functions that complement the illegal ripping function of Defendant's circumvention software."  In support of this conclusion, the M&O cites only *Paramount Pictures Corp. v. 321 Studios*, No. 03-CV-8970, 2004 WL 402756, at *1 (S.D.N.Y. Mar. 3, 2004) for the proposition that "ancillary non-infringing functions of product primarily designed to infringe does not preclude product from violating DMCA."  *Paramount Pictures* is inapplicable because it involved ancillary functions of a "product" that the Court found was primarily designed to infringe.  The record does not support a finding that each of the Additional Products, which are sold separately, is primarily designed to infringe a copyright right that plaintiff has standing to assert.  The Additional Products do not violate the DMCA in the first place, so whether they serve an ancillary non-infringing purpose is beside the point.

Further, the cited grounds are contrary to controlling law.  First, even assuming the Additional Products violate the DMCA as it relates to DVDs, plaintiff is not entitled to injunctive relief with regard to such violation.  Plaintiff has not asserted circumvention of the DMCA as it relates to DVDs and lacks standing to do so.  Further, Tao need not establish a "legitimate interest" in selling the Additional Products -- that issue relates solely to balancing the respective harm to the parties in determining whether or not to grant a preliminary injunction.  As Tao has asserted, the burden is on plaintiff to show that it is likely to succeed in establishing that the Additional Products violate the DMCA with regard to programs in which AACS has a legitimate interest.  Plaintiff lacks standing to asset violation of the DMCA with regard to DVDs.

Second, whether the Additional Products complement the functions of defendant's circumvention software is also irrelevant.  As noted above, the DMCA prohibits trafficking in "products that are primarily produced or designed for the purpose of circumventing."  A product that "complements the functions" of a product that circumvents does not meet the threshold requirements of the statute and fails to provide

Third, Plaintiff has not established that the Additional Products violate the DMCA as it relates to Blu-Ray discs.  To the contrary, the record shows that the Additional Products do not violate AACS technology used in connection with Blu-Ray discs.

Lastly, the fact that the Additional Products were included as part of a suite of programs is irrelevant.  The DMCA prohibits products primarily designed to circumvent.  If a suite of products circumvents then it is one thing to enjoin the suite.  However, when a program is sold independently and does not circumvent, there is no basis under the statute for enjoining the independent program merely because it was sold as part of a suite.

### C. Failure to Grant a Narrower Injunction Is Clear Error and Manifest Injustice

The Court overlooked its statement that after it reached a decision, it would allow the parties to make submissions with regard to proposed language for the injunction.  Tao suggests that the injunction be limited to prohibiting sales and downloads of the Accused Products to the United States.  The injunction should not shut down web sites or enjoin third party hosts or registrars.  Additionally, the injunction should not enjoin payment processors from processing transactions, because doing so enjoins legitimate extraterritorial activity that does not substantially harm United States commerce.  Finally, the injunction should not include the NAD Products or the Additional Programs because they do not violate the DMCA.  It would be more than sufficient to enjoin the add-ons from being sold or distributed to the United States.

## CONCLUSION

For the reasons set forth herein, defendant Feng Tao urges the Court to grant reconsideration of its rulings on Tao's motion to vacate the default, Tao's motion to narrow the injunction, and AACS' motion to expand the injunction.

Dated: New York, New York  **SCHOEMAN UPDIKE KAUFMAN**
April 1, 2014  **STERN & ASCHER LLP**

By: /Nancy J. Mertzel/
Nancy J. Mertzel
551 Fifth Avenue
New York, New York 10176
(212) 661-5030

*Attorneys for Defendant Feng Tao d/b/a Fengtao Software*