**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

---

ADVANCED ACCESS CONTENT SYSTEM
LICENSING ADMINISTRATOR, LLC,

                    Plaintiff,

          v.

LANNY SHEN d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., SUNREG
TECHNOLOGIES LTD. d/b/a DVDFAB AND
FENGTAO SOFTWARE INC., FENG TAO
d/b/a DVDFAB AND FENGTAO SOFTWARE
INC., SHEN XINLAN d/b/a AUDIO-DVD
CREATOR, and JOHN DOE, JANE DOE and/or
XYZ COMPANY d/b/a DVDFAB, RIPPERBLU-
RAY.COM, DVDFABB.COM and
DVDFFAB.COM,

                    Defendants.

NO. 14-cv-1112 (VSB)

 

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT FENG TAO d/b/a DVDFAB AND FENGTAO SOFTWARE INC.'S**
**MOTION FOR RECONSIDERATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

    A.    DEFENDANT TAO'S MOTION FOR RECONSIDERATION SHOULD
        BE DENIED IN ITS ENTIRETY ........................................................................... 2

    B.    DEFENDANT TAO FAILS TO IDENTIFY ANY CONTROLLING
        DECISIONS OR FACTUAL MATTERS THAT THE COURT
        OVERLOOKED IN DENYING DEFENDANT TAO'S MOTION TO
        VACATE ITS DEFAULT ...................................................................................... 4

    C.    DEFENDANT TAO FAILS TO IDENTIFY ANY CONTROLLING
        DECISIONS OR FACTUAL MATTERS THAT THE COURT
        OVERLOOKED IN DECIDING THE SCOPE OF THE INJUNCTION ............. 9

        1.    The Court Did Not Commit Clear Error or Manifest Injustice in
            Deciding The Extraterritorial Scope of the Amended PI ........................... 9

        2.    The Court Did Not Commit Clear Error or Manifest Injustice By
            Not Considering Case Law Setting Forth Factors Determining the
            Extraterritorial Scope of an Injunction under the Lanham Act ................ 13

        3.    The Court Did Not Commit Clear Error or Manifest Injustice In
            Entering Injunctive Relief That May Ban Defendants' Sale of
            Additional Products ................................................................................... 14

        4.    The Court Did Not Commit Clear Error or Manifest Injustice Not
            Requesting the Parties to Propose Injunction Language ........................... 17

CONCLUSION ........................................................................................................................ 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.T. Cross Company v. Sunil Trading*,
   467 F. Supp. 47 (S.D.N.Y. 1979).........................................................................................13

*A.V. by Versace v. Gianni Versace*,
   126 F. Supp. 2d 328 (S.D.N.Y. 2001)................................................................................14

*Am. ORT, Inc. v. ORT Israel*,
   No. 07 Civ. 2332, 2009 WL 233950 (S.D.N.Y. Jan. 22, 2009)............................................3

*American Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n*,
   701 F.2d (5th Cir. 1983) ....................................................................................................13

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
   154 F. Supp. 2d 696 (S.D.N.Y. 2001).................................................................................2

*Centrifugal Force, Inc. v. Softnet Commc'n*,
   Inc., No. 08 Civ 5463, 2009 WL 1059647, at *9 (S.D.N.Y. Apr. 17, 2009)........................11

*In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren*,
   329 F.3d 131 (2d Cir. 2003)...............................................................................................2

*CyberMedia, Inc. v. Symantec Corp.*,
   19 F. Supp. 2d. 1070 (N.D. Cal. Sept. 4, 1998)..........................................................11, 12

*Danjaq LLC v. Sony Corp.*,
   1998 WL 957053 (C.D. Cal. July 29, 1998), aff'd 165 F.3d 915 (9th Cir.
   1998) ........................................................................................................................11, 12

*DISH Network L.L.C. v. Sanchez*,
   No. 11-cv-1485, 2012 WL 2090439 (E.D. Cal. June 8, 2012) ..............................................7

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993) ....................................................................................................4

*Entral Grp. Int'l, LLC v. Melody of Flushing Corp.*,
   No. 05 Civ. 1917, 2007 WL 74317 (E.D.N.Y. Jan. 8, 2007)................................................6

*Gurvey v. Cowan, Liebowitz & Latman, PC*,
   No. 06 Civ. 1202, 2010 WL 9473126 (S.D.N.Y. Sept. 20, 2010) ........................................3

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
   113 F. Supp. 2d 613 (S.D.N.Y. 2000)..................................................................................2

*Kiesgen v. St. Clair Marine Salvage, Inc.*,
    724 F. Supp. 2d 721 (E.D. Mich. July 12, 2010) ...................................................................7

*Macrovision v. Sima Products Corp.*,
    No. 05 Civ. 5587, 2006 WL 1063284 (S.D.N.Y. Apr. 20, 2006) ...........................................15

*Magnoni v. Smith & Laquercia, LLP*,
    701 F. Supp. 2d 497 (S.D.N.Y. 2010).....................................................................................2

*McCants v. Alabama-W. Florida Conference of United Methodist Church, Inc.*,
    No. CIV.A. 08-0686-KD-C, 2009 WL 735198 (S.D. Ala. Mar. 18, 2009) .............................7

*Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*,
    55 F.3d 34 (2d Cir. 1995) ........................................................................................................2

*Mir v. Shah*,
    569 F. App'x 48 (2d Cir. 2014) ...............................................................................................3

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010)............................................................................................................9, 10

*Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*,
    105 F.R.D. 113 (S.D.N.Y. 1985) .....................................................................................5, 6, 8

*Patsy's Italian Restaurant, Inc. v. Banas*,
    575 F. Supp. 2d 427 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011).............................2

*Philip Morris USA, Inc. v. Otamedia Ltd.*,
    331 F. Supp. 2d 228 (S.D.N.Y. 2004)...............................................................................10, 17

*S.E.C. v. McNulty*,
    137 F.3d 732 (2d Cir. 1998)................................................................................................6, 8

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255, 257 (2d Cir .1995)...............................................................................................2

*Silva v. Bridgebar LLC*,
    No. 09 Civ. 8281, 2011 WL 3423917, at *2 (S.D.N.Y. Aug. 4, 2011) ...................................6

*Steele v. Bulova Watch Co., Inc.*,
    344 U.S. 280 (1952)................................................................................................................13

*Subafilms, Ltd. v. Metro-Goldwyn-Mayer-Path Commc'ns Co.*,
    24 F.3d 1088 (9th Cir.), *cert. denied*, 115 S. Ct. 512 (1994)................................................12

*Totalplan Corp. of Am. v. Colborne*,
    14 F.3d 824 (2d Cir. 1993)......................................................................................................13

iii

*Trans World Airlines, Inc. v. Hughes*,
   449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds sub nom Hughes Tool Co.*
   *v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) ...................................................................7

*United States v. Akinrosotu*,
   637 F.3d 165 (2d Cir. 2011) .......................................................................................................2

*United States v. United Liquors Corp.*,
   __ U.S. __, 77 S. Ct. 208 (1956) ....................................................................................10, 16

*Vanity Fair Mills, Inc. v. T. Eaton Co., Ltd.*,
   234 F.2d 633 (2d Cir. 1956) .....................................................................................................13

*Wells Fargo Bank, N.A. v. Ullah*,
   No. 13 Civ. 0485, 2014 WL 2117243 (S.D.N.Y. May 21, 2014) ..............................................3

*WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 620-21 (S.D.N.Y. 2011) .......................................15

**Rules**

Federal Rule of Evidence 201 ......................................................................................................2

Federal Rules of Civil Procedure
   12 ................................................................................................................................................7
   55(c) ...........................................................................................................................................4
   59(e) .........................................................................................................................................14
   60(b) ...........................................................................................................................................6

Plaintiff Advanced Access Content System Licensing Administrator, LLC ("AACS LA" or "Plaintiff"), by its undersigned attorneys, submits this memorandum of law in opposition to Defendant Feng Tao d/b/a Fengtao Software's ("Feng Tao" "Defendant Tao" or "Defendant") motion for reconsideration of the Court's Memorandum & Order, dated Mar. 16, 2015 [Doc. No. 87] (the "Memo & Order") and Amended Preliminary Injunction Order, dated Mar. 17, 2015 [Doc. No. 88] (the "Amended PI").

## **PRELIMINARY STATEMENT**

Defendant Tao's Motion for Reconsideration of the Memo & Order and Amended PI is a clear attempt to relitigate issues that could have been raised below or have been fully briefed and considered by this Court and thus should be denied outright.

Even were this Court to consider the merits of Defendant Tao's Motion for Reconsideration, it should be denied. With respect to the scope of the injunction, Defendant Tao's rehashed arguments continue to presume that Defendants' extraterritorial activities and products that do not circumvent Plaintiff's AACS technology should shield Feng Tao's illegal business and prevent Plaintiff from obtaining any meaningful relief. Defendant Tao makes this presumption despite this Court's finding that Defendant Tao's "intent to reach customers in the United States and his active, deliberate acts to circumvent the Preliminary Injunction" using, to his clear advantage, "an elusive and ephemeral location, coupled with the 'virtual' nature of his business" mandates the current scope of the injunction as the most narrowly-tailored relief possible to preserve the status quo, stem irreparable harm to AACS, effect the public interest and ensure the integrity of the Court's orders. Memo & Order at 20, 31-34.

Notably, even though Defendant Tao is obliged to abide by the Order, dated Mar 4, 2015 [Doc. No. 21] (the "PI Order") and the Amended PI even while challenging them, Defendant Tao continues to violate the PI Order and the Amended PI by, *inter alia*, continuing to sell DVDFab

Software from websites located at DVDFab.cn and DVDFab.de,[1] and although it had ceased operating its website at TDMore.cn—a fact this Court cited in omitting that domain name from the Amended PI—it has now begun to do so again. *See* Memo & Order at 27, n.29; http://tdmore.cn/.[2]

## ARGUMENT

### A.   DEFENDANT TAO'S MOTION FOR RECONSIDERATION SHOULD BE DENIED IN ITS ENTIRETY

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir .1995). Case law is clear that reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation and internal quotation marks omitted). To prevail, "the movant must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting *Doe v. NYC Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir. 1983)). "Reconsideration should not be granted where the

---

[1] *See In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 138 (2d Cir. 2003) ("[I]t is well settled that "persons subject to an injunctive order . . . are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."); *see also Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 41 n. 14 (2d Cir. 1995) ("The fact that a court order might be unlawful does not, of course, give a lawyer or client license to violate it; to the contrary, the proper course is to adhere to the order until-and unless-it is vacated.").

[2] The Court may take judicial notice of this website pursuant to Federal Rule of Evidence 201. Exercising discretion to take judicial notice of a website is proper and routine. *See United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of a website); *Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n. 18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."), *aff'd*, 658 F.3d 254 (2d Cir. 2011); *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010) (same).

moving party seeks solely to relitigate an issue already decided." *Mir v. Shah*, 569 F. App'x 48, 50 (2d Cir. 2014); *see also Wells Fargo Bank, N.A. v. Ullah*, No. 13 Civ. 0485, 2014 WL 2117243, at *1 (S.D.N.Y. May 21, 2014) ("Courts must construe these motions narrowly and strictly apply the reconsideration standard "to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court.").

Contrary to well-established law, Defendant Tao's motion almost exclusively relies upon repetitive arguments previously and explicitly considered and decided by the Court, and utterly fails to present any issue which could be considered as rising to the level of clear error or manifest injustice anticipated by any relevant legal authority. As such, the motion should be denied outright.

The one exception to this repetition is where Feng Tao, for the first time, seeks to advance an argument on the scope of the injunction by raising a line of Lanham Act cases, which do not represent an intervening change in law. This violates the rule that a motion for reconsideration "may not be used to advance new facts, issues or arguments not previously presented to the Court[.]" *Am. ORT, Inc. v. ORT Israel*, No. 07 Civ. 2332, 2009 WL 233950, at *3 (S.D.N.Y. Jan. 22, 2009); *see also Gurvey v. Cowan, Liebowitz & Latman, PC*, No. 06 Civ. 1202, 2010 WL 9473126, at *1 (S.D.N.Y. Sept. 20, 2010) ("[A] motion for reconsideration cannot assert new arguments . . . which were not before the court on the original motion . . . ." (internal quotation marks omitted)). As this Court previously found on very similar arguments, "[s]ince Defendant Tao had the opportunity to make these arguments, and chose not to do so" its present motion should be denied. Memo & Order at 17. In any event, as discussed below, the Lanham Act line of cases do not demonstrate clear error or manifest injustice on the part of this Court, but rather support the scope of the injunction.

**B.**     **DEFENDANT TAO FAILS TO IDENTIFY ANY CONTROLLING DECISIONS OR FACTUAL MATTERS THAT THE COURT OVERLOOKED IN DENYING DEFENDANT TAO'S MOTION TO VACATE ITS DEFAULT**

Defendant Tao's argument that this Court "overlooked controlling precedent disfavoring defaults, requiring consideration of prejudice to plaintiff, and considering bad faith at the time of the default" (Feng Tao Reconsideration Brief at 3) is disingenuous as shown by Defendant's failure to cite a single legal authority and the plain language of the Memo & Order.

This Court explicitly applied controlling precedent and the relevant standards as set forth in Fed. R. Civ. P. 55(c) and *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993), which specifically notes the Second Circuit's general disfavor of granting defaults "because of its strong preference for resolving disputes on the merits" and carefully considered both willfulness and prejudice to Plaintiff as well as the third relevant factor (not addressed by Defendant Tao), whether a meritorious defense is presented. Memo & Order at 8-9. As stated in *Enron*, "the dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron*, 10 F.3d at 96.

In considering the willfulness factor,[3] the Court fully recounted in the Memo & Order the timeline of facts in the record supporting the Court's finding, including:

- February 25: Receipt of Summons and Complaint;
- February 26: a lawyer from Weiss & Moy, P.C. contacted Feng Tao and offered its legal service because Feng Tao was being sued in the United States; Feng Tao began searching for an attorney;
- February 27 – March 15: Defendant Tao communicated with various law firms;
- March 4: the PI Order was issued;
- March 10: Defendant Tao's websites were shut down pursuant to the PI Order; Defendants' head of marketing contacted AACS LA to threaten to offer their

---

[3] What Defendant terms "bad faith."

circumvention software for free—devastating AACS LA's business—if their demands, including restoration of websites, were not met;

- March 11: Defendant Tao consulted present trial counsel regarding this action, but failed to answer or otherwise respond to the Complaint, or seek an extension of time to answer or otherwise respond by the March 11 due date;
- March 17: Defendant Tao signed an engagement letter with present counsel that purportedly did not cover filing a notice of appearance;
- March 18: Plaintiff obtained a Certificate of Default (Doc. 26); and
- April 1: Present counsel filed a Notice of Appearance (Doc. 27) and sought to amend the scope of the Injunction.

Memo & Order at 9-10 (citing to the record). The Court also noted Feng Tao's claims that he "did not intend to default in this matter" and his claim of ignorance as to the procedures to avoid default, but the Court ultimately found the facts "belie[d] Tao's claims of purported ignorance and demonstrate[d] that  Defendant Tao's continued default and delay in moving to vacate was deliberate." Memo & Order at 10.

In its bid for reconsideration, Defendant Tao claims the Court's finding of willfulness was in error, arguing that the Court: (1) failed to take into account that Weiss & Moy (the first law firm to contact Defendant) declined to take the case due to lack of staffing; and (2) erroneously relied on bad faith after the default in finding willfulness and otherwise.  Memo & Order at 3.

First, Defendant Tao fails to cite any relevant authority to support its claim that Weiss & Moy's declining to represent Feng Tao due to lack of staffing should be a mitigating factor sufficient to set aside the default in light of the entire record before the Court. The Court did consider Defendant Tao's excuses that it was purportedly unable to timely find counsel, including explicitly its failure to retain Weiss & Moy, P.C., and it found that the facts in the record "belie Tao's claims of purported ignorance and demonstrate that Defendant Tao's continued default and delay in moving to vacate was deliberate." Memo & Order at 9-10. Just as in *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, Defendant Tao's claim to

have defaulted for inability to retain counsel is "meritless in light of the facts of this case"

because:

> "A bona fide effort to find counsel is certainly relevant to the willfulness of a party's
> default.  But where a party is notified that he is in default and he apparently makes no
> effort to appear pro se or to explain his situation to the opposing party and the court, such
> neglect is inexcusable.  In sum, defendants' failure to respond is not the type of
> nonculpable conduct for which relief under Rule 60(b) was designed."

*Id.*, 105 F.R.D. 113, 116-17 (S.D.N.Y. 1988).

Second, Defendant Tao fails to cite any relevant authority to support its claim that bad

faith after entry of default should not be taken into consideration in deciding whether to set aside

an entry of default. To the contrary, courts have consistently found evidence of willfulness in a

party's behavior subsequent to entry of default. *See, e.g.*, *S.E.C. v. McNulty*, 137 F.3d 732, 738

(2d Cir. 1998) (collecting cases where failure to satisfactorily explain default after the fact was

evidence of willfulness); *Entral Grp. Int'l, LLC v. Melody of Flushing Corp.*, No. 05 Civ. 1917,

2007 WL 74317, at *1 (E.D.N.Y. Jan. 8, 2007) (failure to timely remedy default after entry of

default and being put on notice by adverse party supported finding that default was willful); *Silva*

*v. Bridgebar LLC*, No. 09 Civ. 8281, 2011 WL 3423917, at *2 (S.D.N.Y. Aug. 4, 2011) (cited by

Memo & Order at 11). As the Court found, having retained present trial counsel, Defendant Tao

made the deliberate, strategic choice to move to amend the PI Order and leave the default

undisturbed—though it could have sought more time to answer or moved to vacate while moving

to amend—until more than one month after moving to vacate the default. Defendant Tao does

not claim any impediment to an earlier motion to vacate or provide a plausible explanation for

delay in filing such a motion, supporting a finding of willfulness. Memo & Order at 11 (citing

*Silva*, 2011 WL 3423917, at *2). Defendant Tao's willfulness is made particularly clear by its

admission that default was strategic. *See* Memo & Order at 12.

6

Without citing to any authority, Defendant Tao treats this strategic ambiguity as perfectly natural (Defendant Tao's Memorandum of Law in Support of Motion for Reconsideration [Doc. No. 91] ("Feng Tao Reconsideration Brief") at 3), but engaging in motion practice regarding the scope of an injunction does not relieve a defendant of its obligation to timely respond to the Complaint under Rule 12 by answer or motion. A party cannot both sit on a default and defend on the merits or otherwise fully participate in the litigation. *See, e.g.*, *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 64 (2d Cir. 1971) (internal quotation marks omitted), *rev'd on other grounds sub nom Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) (A party "cannot elect to default and then defend on the merits. It cannot have its cake and eat it too."); *DISH Network L.L.C. v. Sanchez*, No. 11-cv-1485, 2012 WL 2090439, at *10 (E.D. Cal. June 8, 2012) (in a DMCA anti-circumvention case, holding "Defendant's ability to present evidence on issues other than unliquidated damages or defend against the merits of the lawsuit has been curtailed by the entry of default against Defendant" and "a defaulted party loses his standing before the court"); *Kiesgen v. St. Clair Marine Salvage, Inc.*, 724 F. Supp. 2d 721, 728 (E.D. Mich. July 12, 2010) ("A party in default may not plead to otherwise proceed until the default is set aside.");  *McCants v. Alabama-W. Florida Conference of United Methodist Church, Inc.*, No. CIV.A. 08-0686-KD-C, 2009 WL 735198, at *1 (S.D. Ala. Mar. 18, 2009) (improper to grant motion to dismiss without first vacating entry of default). While Defendant Tao did not forfeit its right to challenge the scope of the PI Order, its strategic delay in moving to vacate the default and defend was strong evidence of its willfulness and a reason not to vacate the default. *See* Memo & Order at 11-14 ("Armed with the services of his counsel by March 17, 2014, Defendant Tao chose to move to amend the scope of the preliminary injunction on April 1, 2014, rather than seeking an extension of time to answer or to vacate the default. . . . Indeed, Tao could have moved to amend, sought an extension of time to answer, and moved to vacate all at the same

time since the motions are not mutually exclusive. . . . It also is clear that Tao's decision to remain in default after March 18th was a strategic tactic to avoid litigating this action on the merits.").

This Court also duly considered the remaining two factors: the extent of prejudice to Plaintiff and the extent of meritorious defense by Defendant. Contrary to Defendant Tao's claim otherwise, this Court specifically considered prejudice to Plaintiff, noting that Plaintiff conceded it would not be prejudiced by the default being set aside but found that willfulness and lack of a meritorious defense are sufficient to warrant denial of a request to vacate a default. Memo & Order at 8 n.17; *see also* AACS LA's Memorandum of Law in Opposition to Defendant Tao's Motion to Vacate Default [Doc. No. 53] at 19-20 (citing *McNulty*, 137 F.3d at 738 ("[T]he district court [] has discretion to deny the motion to vacate if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense."); *Trustees of Local 807 Labor-Mgmt. Pension Fund v. Maritime Fish Products, Inc.* No. 11 Civ. 844, 2012 WL 2609321, at *11 (E.D.N.Y. May 31, 2012); *Mason Tenders Dist. Council of Greater N.Y. v. WTC Contracting, Inc.*, No. 10 Civ. 700, 2011 WL 4348152, at * 5 (S.D.N.Y. Sept. 16, 2011)). Defendant Tao fails to contest the Court's finding that it admitted to lacking a meritorious defense. Case law holds "the failure sufficiently even to allege that defendant [] would prevail at trial means that there would be no point in setting aside the default judgment[.]" *Original Appalachian Artworks, Inc.*, 105 F.R.D. at 117.

As such, Defendant has not made a showing of clear error or manifest injustice sufficient to support its motion to reconsider this Court's denial to set aside the entry of default.

**C.      DEFENDANT TAO FAILS TO IDENTIFY ANY CONTROLLING DECISIONS OR FACTUAL MATTERS THAT THE COURT OVERLOOKED IN DECIDING THE SCOPE OF THE INJUNCTION**

Defendant Tao claims that this Court, in determining the scope of the injunction, overlooked: (1) the impact of the Supreme Court decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("*Morrison*"); (2) case law setting forth factors in determining the extraterritorial scope of an injunction under the Lanham Act; (3) the DMCA's limitation to products that violate the DMCA; and (4) a statement the Court made that it would allow the parties to make submissions for proposed language for the injunction.

**1.      The Court Did Not Commit Clear Error or Manifest Injustice in Deciding The Extraterritorial Scope of the Amended PI**

Defendant Tao insists that this Court erred in failing to take into consideration the impact of *Morrison* in deciding the scope of the injunction, claiming that *Morrison* trumps a court's equitable powers to prevent circumvention of its orders and proscribes a court from issuing an injunction that may have extraterritorial effects. Feng Tao Reconsideration Brief at 4-6.

Contrary to Feng Tao's claim, this court specifically referred to and considered these same arguments previously made by Defendant in the name of *Morrison*,[4] and the Court rightfully noted that Defendant's "blanket assertion is misplaced in light of his intent to reach customers in the United States and his active, deliberate acts to circumvent the Preliminary Injunction."  Memo & Order at 20.

If this Court once again considers Defendant Tao's argument, Defendant Tao's motion should still be denied as misplaced. Defendant Tao's attempt to isolate its wholly extraterritorial

---

[4] The Memo & Order refers to the "Tao Vacate Mem." (Memorandum of Law in Support of Motion to Vacate Clerk's Default [Doc. No. 5] and the "Tao Amend Mem." (Memorandum of Law in Support of Motion to Amend Injunction Pursuant to Rule 59(e) [Doc. No. 28.]) wherein Defendant made the same *Morrison* argument it makes here. The Court also specifically stated at oral argument, it considered the cases cited on the issue of the territorial limitations of the Copyright Act and the breadth of the PI Order in light of *Morrison*. Transcript of Proceeding, dated Nov. 19, 2014 [Doc. No. 85] at 50:14-51:9.

activities from what this Court found to be evidence of Defendant Tao's targeted and significant activities to the United States, and its deliberate acts to circumvent the PI Order to continue targeting the United States is without any support in the law. Memo & Order at 20-21.

It is critical that Defendant Tao does not cite, and AACS LA has not located, any cases extending *Morrison* to limit the scope of an injunction. As the Supreme Court held in *Morrison*, the extraterritorial scope of an act (in *Morrison*, the Securities Exchange Act) is a question on the merits and not a question of subject matter jurisdiction. *Morrison*, 561 U.S. at 253-54. Meaning, under *Morrison*, a court may have subject matter jurisdiction to adjudicate whether a statute applies to conduct even if that conduct falls outside the territorial scope of that statue and thus does not run afoul of it. *See id.* Because extraterritoriality is a merits-based question and not a subject matter jurisdiction question, the Court may be guided by other factors in framing an injunction, such as its equitable powers, the harm to be addressed and the balance of hardships. *See* Memo & Order at 14, 23-34.

As this Court held in the Memo & Order and Defendant Tao does not contest, this Court has the authority to enjoin actions that are "otherwise lawful"—and thus not proscribed by any statute, whether for territorial or other reasons—"when such action is deemed by [it] necessary to correct the evil effects of unlawful conduct." *United States v. United Liquors Corp.*, __ U.S. __, 77 S. Ct. 208, 210 (1956) (quoted in Memo & Order at 23-24). Where "no more narrowly-tailored relief would be effective," an injunction may "incidentally proscribe certain lawful conduct [as] is necessary and appropriate in the public interest." *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004). Here, given the record evidence—not contested by Defendant Tao—of Defendant Tao's repeated attempts to circumvent the terms of the PI Order "as it related to conduct that results in infringement within the United States," this Court found the PI Order and the Amended PI to be no broader than necessary to cure the effects

10

of the irreparable harm caused by Defendants' violation of the DMCA. Memo & Order at 23-32. Defendant Tao does not engage with the Court's rationale that extraterritorial conduct (that is "lawful" only in the sense that it does not violate the DMCA for purposes of this case, but is likely unlawful under laws in other jurisdictions) is swept into the scope of the injunction only incidentally to remedy this harm. *Id.* at 32. Feng Tao does not contest the extensive record of its past deliberate violations of this Court's orders, nor its attempts to conceal those violations. *See id.* at 24-32. As this Court found, the scope of the PI Order was thus appropriate. *Id.* at 32.

Defendant Tao repeats its citation to Ninth Circuit case law—*Danjaq LLC v. Sony Corp.*, 1998 WL 957053 (C.D. Cal. July 29, 1998), aff'd 165 F.3d 915 (9th Cir. 1998), and *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d. 1070, 1079 (N.D. Cal. Sept. 4, 1998)—for the proposition that injunctions pursuant to the Copyright Act are necessarily limited to domestic activities. This recycled argument ignores the prevailing law in the Second Circuit that: (1) "a foreign defendant may be held liable for any acts that are committed abroad but are felt within the United States;" and (2) a predicate act in violation of the Copyright Act taking place "in the United States can justify the application of United States copyright laws to substantive acts of infringement in a territory beyond our borders." *Centrifugal Force, Inc. v. Softnet Commc'n*, Inc., No. 08 Civ. 5463, 2009 WL 1059647, at *9 (S.D.N.Y. Apr. 17, 2009).

This argument also ignores the Court's finding that the record "demonstrates that Defendants targeted the United States market," including because:

1. The majority of DVDFab Websites are in English and accept US dollars and credit cards.
2. All of the DVDFab Websites, including foreign language websites, redirected users, prior to the PI Order, to the English language DVDFab.com website when making a purchase.
3. The licensing agreement for the software sold on the DVDFab Websites claims the protection of United States copyright law.

11

4.  The United States is Defendants' largest single market with at least 550,650 people in the United States visiting DVDFab.com each month prior to the PI Order. (35% of DVDFab.com's visitors are from the United States.)

Memo & Order at 20-21.

Finally, a closer reading of the Ninth Circuit cases does not support Defendant's argument that they prohibit this Court from reaching extraterritorial activity. Notably, in *CyberMedia*, the Northern District of California avoided deciding whether it had the power to enjoin extraterritorial activity, stating that "it is unclear whether this Court could enjoin [] manufacture and distribution [] on foreign soil," and "[e]ven assuming that the Court could enjoin such extraterritorial activity, the Court declines to do so at this time." *Id.* The *Danjaq* court was similarly non-committal and even hostile to the position it felt it must take under the Ninth Circuit's decision in *Subafilms*[5]. *Danjaq*, 1998 WL 957053, at *7 ("On the present record before the Court, the scope of the injunction must be limited to Defendants' domestic activities. . . . Although *Subafilms* has been highly criticized, it nonetheless appears to be the law in the Ninth Circuit. Therefore, the Court finds that the Plaintiffs are not entitled to a world-wide injunction based on U.S. Copyright. Although a world-wide injunction is permissible under the Lanham Act . . . ." (internal quotations omitted)).

As such, Defendant has not made a showing of clear error or manifest injustice sufficient to support its motion to reconsider the extraterritorial scope of this Court's PI Order or Amended PI.

---

[5] *Subafilms, Ltd. v. Metro-Goldwyn-Mayer-Path Commc'ns Co.*, 24 F.3d 1088 (9th Cir.), *cert. denied*, 115 S. Ct. 512 (1994).

2.    **The Court Did Not Commit Clear Error or Manifest Injustice By Not Considering Case Law Setting Forth Factors Determining the Extraterritorial Scope of an Injunction under the Lanham Act**

Defendant Tao cites to *Steele v. Bulova Watch Co., Inc.*, 344 U.S. 280 (1952) and *Vanity Fair Mills, Inc. v. T. Eaton Co., Ltd.*, 234 F.2d 633 (2d Cir. 1956) for the proposition that this Court failed to consider authority under the Lanham Act limiting extraterritorial injunctions. Plaintiff believes this Court is not required to reconsider its decision based on arguments Defendant could have previously made (*see* discussion above), and further is not aware of any authority that extends the *Vanity Fair* factors to the scope of an injunction entered under the Copyright Act. Nonetheless, applying the *Vanity Fair* factors to the current facts supports the scope of the Amended PI.

The *Vanity Fair* factors—(1) whether the defendant's conduct has a substantial effect on United States commerce; (2) whether the defendant is a United States citizen; and (3) whether the relief sought would create a conflict with foreign law (*Vanity Fair*, 234 F.2d at 643)—are to be balanced to determine whether "the contacts and interests of the United States are sufficient to support the exercise of extraterritorial jurisdiction." *American Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n*, 701 F.2d at 408, 414 n.5 (5th Cir. 1983). The only factor that cuts against preserving the scope of the Amended PI is that Defendant Tao is not a United States citizen, but the Second Circuit has noted that foreign citizenship alone may not be sufficient to defeat extraterritorial application of the Lanham Act. *See Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 830 (2d Cir. 1993); *see also A.T. Cross Company v. Sunil Trading*, 467 F. Supp. 47, 49 (S.D.N.Y. 1979) ("Inherent in national sovereignty 'is the power to impose, even upon foreigners owing no allegiance (to the United States), liability for acts done abroad which proximately cause damage within the territorial limits of the sovereign.'").

13

Defendant does not identify any conflicts with foreign law because it cannot do so. The evidence shows there is harmony between the anti-circumvention laws of many jurisdictions, including the United States and China. *See* Memorandum of Law in Support of AACS LA's Motion for Preliminary Injunction [Doc. No. 11] at 121 (citing WIPO Copyright Treaty, as implemented by Japan, Germany and other countries, the EU Directive on Harmonization of Certain Aspects of Copyright and Related Rights in the Information Society and the Copyright Law of the People's Republic of China); Memorandum of law in Opposition to Defendant Tao's Motion to Amend Injunction Pursuant to Rule 59(e) [Doc. No. 35] at 20. Nor does Defendant ever try to suggest, as it cannot, that its actions are lawful in any relevant foreign countries. Defendant also does not contest the Court's finding that Feng Tao purposefully directed marketing and sale of its circumvention software into the United States. This Court has recognized that "the importation of allegedly infringing goods alone satisfies the substantial effect factor." *A.V. by Versace v. Gianni Versace*, 126 F. Supp. 2d 328, 341 (S.D.N.Y. 2001). Considering these Lanham Act factors together and balancing the hardships of irreparable harm to AACS LA against Defendants' lack of a legitimate interest in the sale of their products that are illegal everywhere clearly supports the scope of the Amended PI.

    **3.**    **The Court Did Not Commit Clear Error or Manifest Injustice In Entering Injunctive Relief That May Ban Defendants' Sale of Additional Products**

Defendant Tao argues that AACS LA is not entitled to injunctive relief with regard to the "Additional Products"—defined by Feng Tao as "the DVD Copy, DVD Ripper, DVD Creator, Blu-ray Creator, Video Converter, and 2D to 3D converter"[6]—because some of these programs

---

[6] Defendant Tao has used the terms "Accused Products" and "Accused Software" throughout its briefing in this matter, but it has apparently only ever defined the term "Accused Software," which it defined to mean "(l) DVDFab Blu-ray Ripper (3D plus); (2) DVDFab Blu-ray Copy; (3) DVDFab Blu-ray to DVD Converter; (4) DVDFab HD Decrypter; (5) Passkey for Blu-ray; and (6) Passkey Lite." Defendant Tao's Reply Memorandum of Law in Support of Motion to Amend Injunction Pursuant to Rule 59(e) [Doc. No. 39] at 2; Defendant Tao's Memorandum of Law in Support of Motion to Vacate Clerk's Default [Doc. No. 50] at 9.

violate the DMCA as it relates to DVDs, not as to Blu-ray discs, and other of these programs do not, used alone violate the DMCA.

First, this Court found that all of Defendants' Additional Products are marketed as part of a package explicitly designed to circumvent AACS LA's technological protection of Blu-ray content, and thus "there are serious questions going to the merits regarding whether the Additional Products: (1) have a limited commercially significant purpose or use other than circumvention; or (2) are marketed for use in circumvention." Memo & Order at 19 (quoting *Macrovision v. Sima Products Corp.*, No. 05 Civ. 5587, 2006 WL 1063284, at *3 (S.D.N.Y. Apr. 20, 2006)). Given these triable issues, it was appropriate to preliminarily enjoin the sale of these Additional Products to prevent irreparable harm to Plaintiff, when balanced against the equities of no discernable harm to Defendant where Defendant has no legal interest in continuing such sales. Memo & Order at 19, 27; *see also WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 620-21 (S.D.N.Y. 2011) ("[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product," and even permanent destruction of a business based on selling illegal products is "not a legally recognized harm.").

Defendant Tao's argument that "[t]he record does not support a finding that each of the Additional Products, which are sold separately, is primarily designed to infringe a copyright right that plaintiff has standing to assert" (Feng Tao Reconsideration Brief at 8) ignores the applicable standards set out by the Court: it need only find serious questions going to whether these products have a limited commercially significant purpose other than circumvention or are marketed for use in circumvention (Memo & Order at 19, 27), not that they are "primarily designed to infringe a copyright right that plaintiff has standing to assert." Defendant Tao does not contest the Court's finding under these standards.

Second, even though serious questions going to the merits justify an order directly reaching the Additional Products, the Amended PI does not directly enjoin sales of any of the "Additional Products." Rather, the Amended PI preliminarily enjoins "Defendants, their officers, agents, attorneys, servants, employees, and any persons in active concert or participation with them," from:

> manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof capable of circumventing the AACS Technology – including but not limited to the ***DVDFab Software*** (the "Circumventing Activities"). Amended PI at 6 (emphasis added).

"DVDFab Software" as defined in the Amended PI, notably does not include any of the defined "Additional Products," but includes only software that on its own or with other software, circumvents AACS technology, namely:

> (1) DVDFab Blu-ray Ripper (3D plus); (2) DVDFab Blu-ray Copy; (3) DVDFab Blu-ray to DVD Converter; (4) DVDFab HD Decrypter; (5) Passkey for Blu-ray; (6) Passkey Lite; (7) BluFab Blu-ray Converter; (8) BluFab Bluray Copy; (9) BluFab Blu-ray to DVD Converter; (10) TDMore Blu-ray Converter; (11) TDMore Blu-ray Copy; (12) DVDFab Passkey 8; (13) Woookao and (14) Boooya.

Amended PI at 3. Therefore, the Court's order was limited to granting relief against the DVDFab Software products that violate the DMCA and form the basis for Plaintiff's Complaint, and on its face, the Amended PI is **not** directed to the Additional Products.

As with Defendant's wholly extraterritorial activities, the Amended PI indirectly reaches Defendant's sale of the Additional Products to the extent those Additional Products are marketed or sold from the same websites or platforms as the DVDFab Software. Amended PI at 8-10. It was Defendant's choice to offer the Additional Products on the same websites and platforms as it offered the DVDFab Software; it therefore must live with the collateral consequences of having those websites and platforms disabled because they were clearly used to violate the DMCA with respect to the DVDFab Software.

16

As this Court held in the Memo & Order and Feng Tao does not contest, where "no more narrowly-tailored relief would be effective," an injunction may "incidentally proscribe certain lawful conduct [as] is necessary and appropriate in the public interest." *Philip Morris USA, Inc.*, 331 F. Supp. 2d at 246; *see also United Liquors Corp.*, 77 S. Ct. at 210 (quoted in Memo & Order at 23-24) (this Court has the authority to enjoin actions that are "otherwise lawful"—and thus not proscribed by any statute, whether for territorial or other reasons—"when such action is deemed by [it] necessary to correct the evil effects of unlawful conduct.).

Here, given the record evidence that Defendant Tao concedes it has not established a legitimate interest in selling the Additional Products (Feng Tao Reconsideration Brief at 8) and Defendant Tao's repeated attempts to circumvent the terms of the PI Order "as it related to conduct that results in infringement within the United States," this Court did not commit clear error or manifest injustice in finding the Amended PI to be no broader than necessary to cure the effects of the irreparable harm caused by Defendants' violation of the DMCA with respect to the DVDFab Software. Memo & Order at 23-32.

### 4. The Court Did Not Commit Clear Error or Manifest Injustice By Not Requesting the Parties to Propose Injunction Language

Defendant Tao's final argument is that the Court erred in "overlook[ing] its statement that it would allow the parties to make submissions with regard to proposed language for the injunction." Feng Tao Reconsideration Brief at 9. Defendant Tao then submits that the injunction be limited to prohibiting Defendant Tao from sales and downloads of the "Accused Products" to the United States and that provisions enforcing the injunction through third parties should be removed. Feng Tao Reconsideration Brief at 9. Yet, Defendant Tao fails even to assert that its alternative injunction would be effective and it cannot do so given his past and continued history of violating the PI Order and the Amended PI.

As the Court recognized in the Memo & Order, Defendant Tao's "actions outside of court demonstrate that [it] has no interest in complying with the Preliminary Injunction domestically and has actively sought to circumvent its terms." Memo & Order at 24. These actions include:

- Defendants' threat to offer circumvention software for free—threatening "the very viability of [AACS LA's] business"—that it later made good on by releasing Woookao and other free circumvention software. Memo & Order at 15, 24-25, 30, 33.

- Defendants' bold proclamation in social media that they had "recovered all the normal business to www.dvdfab.cn" after Plaintiff successfully enforced the PI Order against www.dvdfab.com and "promise[d] to reverse the situation through every possible effort." Memo & Order at 24-25.

- Defendant Tao sworn in-court statement that "In compliance with the Injunction, Fengtao Software has discontinued sales of the Accused Products to the United States. Fengtao Software has intentionally programmed its systems to reject sales from the United States." Declaration of Feng Tao, dated May 5, 2014 [Doc. No. 40] ¶ 16.

- Defendants' creation of at least an additional four other new circumvention software packages: TDMore, BluFab, Woookao[7] and Boooya—each of which it sold into the United States under identities other than Feng Tao Software or DVDFab in an attempt to evade detection and effective enforcement through this action. Memo & Order at 25-31/

- Once the additional circumvention software was revealed, Defendant Tao's disclaiming any intention for the product to be used by United States users (despite its marketing to the contrary), and noted an intention to block users from the United States in the future." Memo & Order 26, 31.

Additionally, as the Court found, Defendant Tao has never stated it will defend this suit on the merits and would never have appeared at all had it not been spurred to do so to try to limit the scope of the injunction by the limited enforcement of the PI Order AACS LA was able to achieve through third parties. *See* Memo & Order at 12.

---

[7] Defendant Tao contended that Defendants' connection to the Woookao program is based on "rank speculation," but this Court found and Defendant Tao abundant evidence demonstrates this connection. Memo & Order at 29-30.

## CONCLUSION

Based upon the foregoing, Plaintiff AACS LA respectfully requests that this Court deny

Defendant Tao's motion for reconsideration of the Memo & Order and the Amended PI.

Dated:  New York, New York           Respectfully submitted,
        April 13, 2015

DAVIS WRIGHT TREMAINE LLP


By:   /s/ G. Roxanne Elings
G. Roxanne Elings
(RoxanneElings@dwt.com)
George Wukoson
(GeorgeWukoson@dwt.com)
1633 Broadway, 27th Floor
New York, New York 10019
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

James D. Nguyen
(jimmynguyen@dwt.com)
Sean M. Sullivan
(seansullivan@dwt.com)
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

*Attorneys for Plaintiff Advanced Access*
*Content System Licensing Administrator,*
*LLC*