UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCED ACCESS CONTENT SYSTEM LICENSING ADMINISTRATOR, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>LANNY SHEN d/b/a DVDFAB AND FENGTAO SOFTWARE INC., SUNREG TECHNOLOGIES LTD. d/b/a DVDFAB AND FENGTAO SOFTWARE INC., FENG TAO d/b/a DVDFAB AND FENGTAO SOFTWARE INC., SHEN XINLAN d/b/a AUDIO-DVD CREATOR, and JOHN DOE, JANE DOE and/or XYZ COMPANY d/b/a DVDFAB, RIPPERBLU-RAY.COM, DVDFABB.COM and DVDFFAB.COM,<br><br>       Defendants. | Civil Action No.<br>14 Civ. 1112 (VSB) |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR RECONSIDERATION**

Dated: New York, New York
   April 20, 2015

**SCHOEMAN UPDIKE KAUFMAN &
 STERN LLP**
551 Fifth Avenue
New York, New York 10176
(212) 661-5030

*Attorneys for Defendant Feng Tao d/b/a
Fengtao Software*

Defendant Feng Tao d/b/a Fengtao Software ("Tao"), by his undersigned attorneys, submits this reply memorandum of law in support of his motion for reconsideration of (1) the Court's Memorandum & Order entered March 16, 2015 (the "M&O") (a) denying Tao's motion to vacate the Clerk's default, (b) denying Tao's motion to modify by narrowing the Preliminary Injunction entered by the Court on March 4, 2014 ("Original Injunction"), and (c) granting (in part) Plaintiff's motion to modify by expanding the Original Injunction, and (2) the Amended Preliminary Injunction Order entered March 17, 2015 (the "Amended Injunction").

**PRELIMINARY STATEMENT**

Plaintiff does not dispute that "United States copyright laws generally do not have extraterritorial application," (M&O 22), that there is no exception "that permits the DMCA to extend to infringing acts that occur entirely abroad," (M&O 23), and that the M&O flatly rejected the exceptions Plaintiff relied upon as inapplicable because they "involve conduct that crosses borders, so that at least a part of the offense takes place within the United States." (M&O 22).

It is also undisputed that the M&O retained the scope of the extraterritorial Original Injunction, and then expanded it to cover products that do not violate the DMCA.[1] While the Court has authority to enforce an order, an improper order does not become proper due to assertions of non-compliance. As set forth more fully below, reconsideration of the M&O should be granted.

---

[1] Plaintiff's assertion that the Amended Injunction does not specifically reference the Additional Products is undermined by its admission that the Court has indirectly enjoined these products by shutting down Tao's websites, domain names, and payment processors.

1

**ARGUMENT**

I. **THE COURT SHOULD RECONSIDER DENIAL OF TAO'S MOTION TO VACATE THE DEFAULT**

Plaintiff's opposition fails to rebut Tao's showing that Tao's default in this action was not willful, and that the M&O overlooked controlling precedent disfavoring defaults, requiring consideration of prejudice to the plaintiff, and requiring a higher showing to satisfy the willfulness requirement.

The uncontroverted facts in this matter are that Tao is a Chinese national who was served by email and afforded approximately one week to locate counsel in the United States to defend against a preliminary injunction with worldwide effect, that Tao was unable to retain United States counsel in time to defend against the injunction or respond to the Complaint, that once Tao was able to retain counsel he promptly appeared in the case and took steps to defend the action, that Tao moved to vacate the Clerk's default promptly after the issue was first raised, and that Tao was unaware that he could request an extension of time to respond to the Complaint without legal representation.  Plaintiff has not cited a single case in which a default was upheld on a similar record.  To the contrary, the cases Plaintiff cites demonstrate delays of many months, and behavior of a type and degree that is substantially more indicative of a willful default.

For example, *Original Appalachian Artwords, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 114-17 (S.D.N.Y. 1985) involved a default judgment that was entered three months after the complaint had been filed, and the defendant did not move to set aside the default judgment until six months later.  Further, the defendant had been deposed and plaintiff's counsel advised him to secure representation at the deposition and in two subsequent letters.

In *S.E.C. v. McNulty*, 137 F.3d 732 (2d Cir. 1998), the defendant had been represented by counsel during a lengthy pre-litigation SEC investigation. Defendant's time to answer was extended twice, defendant failed to appear at pre-trial conferences, and defendant declined to join in motions filed by other defendants. Additionally, the SEC sent defendant two letters prior to filing a motion for entry of a default eleven months after the action had been commenced. Defendant did not move to vacate the default judgment until eight months after its entry. Further, the court found that the delay would prejudice the SEC.

In *Entral Group Int'l, LLC v. Melody of Flushing Corp.*, No. 05 Civ. 2007, 2007 WL 74317 (E.D.N.Y. Jan. 5, 2007), the plaintiff moved for a default judgment approximately six months after commencing the lawsuit, defendant failed to oppose the motion or to make submissions on damages, and defendant did not appear or take any action to remedy the default until almost a year after plaintiff commenced the lawsuit. Similarly, in *Silva v. Bridgebar LLC*, No. 09 Civ. 8281, 2011 WL 3423917 (S.D.N.Y. Aug. 4, 2011), the failure to answer existed for fourteen months, and the defendant conceded his knowledge of lawyers and litigation.

By contrast, in the instant case, Plaintiff did not move for entry of a default or file a pre-motion letter in anticipation of seeking a default judgment. The Clerk, acting *sua sponte*, entered a default in this action on March 18, 2014, just *three weeks* after Plaintiff filed proof of service. Tao's counsel contacted Plaintiff's counsel *the following week* (on March 26, 2014), and Tao appeared in this action and moved to modify the preliminary injunction *one week later* (on April 2, 2014). Further, Tao filed a pre-motion letter seeking to set aside the Clerk's default on May 5, 2014, just *two weeks* after Plaintiff first raised the

3

issue of the default. In fact, Plaintiff did not raise the issue of the default until serving its opposition to Tao's motion to amend.

In short, Tao's brief delay in moving to vacate the Clerk's default is not even close to the standard required in this circuit. *See S.E.C. v. McNulty*, 137 F.3d at 738 (defaults are willful where "the conduct of counsel or the litigant was egregious and was not satisfactorily explained."); *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996) (in evaluating the willfulness standard, the Second Circuit looks for "bad faith, or at least something more than mere negligence").

Moreover, willful conduct is a factor that "is relevant but not dispositive" in vacating a default judgment. *I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 823 (S.D.N.Y. Dec. 8, 1997). In other words, a default that "may be justly characterized as willful" can still be excused for "compelling reason[s]." *Wagstaff-EL v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990) (default judgment vacated because defendant had a meritorious defense and plaintiff would not be prejudiced upon default being vacated); *see also Kumar v. Ford*, 111 F.R.D. 34, 39 (S.D.N.Y. June 17, 1986) (the court held that "notwithstanding defendant's willful conduct in deciding not to answer the complaint, the motion to vacate the default judgment is granted. The defendant has established the existence of a possible defense, and there is no prejudice to the plaintiff.").

Here, Plaintiff was aware of the defendants' activities yet waited five years to commence litigation, and then filed suit without first sending a cease and desist letter. Tao is a Chinese national with no presence in the United States, was served by electronic mail and afforded a week to defend against an injunction, does not have a general counsel and has not previously engaged United States counsel, and after engaging counsel appeared promptly and began to defend the action. These facts hardly justify the harsh imposition of a default. *See e.g. Kulwa v. Obiakor OB/GYN P.C.*, No. 12-CV-1868, 2013 WL 504383 at *3

4

(E.D.N.Y. Feb. 8, 2013) ("Mere tardiness in meeting a court deadline does not establish a willful default.")

Unlike the cases Plaintiff cited, Tao does not regularly engage lawyers (Tao Vacate Decl. ¶ 3), and there is no indication he has any experience with litigation, let alone litigation in the United States. Further, Plaintiff concedes that it was not prejudiced by any delay in the motion to vacate. Plaintiff's Vacate Mem., pp. 19-20. Additionally, the sole law firm that solicited Tao (Weiss & Moy), declined to take the case due to lack of staffing. Tao Decl. ¶ 24.

Tao's interest in preliminary rulings on whether he was personally subject to the jurisdiction of the courts, whether it was proper for him to be served by email, and whether the injunction exceeded the Court's powers before he committed to fully defend the case through trial is not evidence of a willful default, particularly since Tao was actively engaged in the litigation. Tao's interest in such preliminary decisions hardly rises to the level or type of willfulness required, such as where a defendant knowingly failed to appear at trial, or expressly represented that it does not intend to defend.

Further, Tao has demonstrated a meritorious defense insofar as the injunction improperly applies extraterritorially. Tao should not be required to prove he will prevail on every aspect of the case in order for the default to be vacated. *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (defendant seeking to vacate a default judgment need not conclusively establish the validity of the defense(s) asserted); *American Alliance Ins. Co.,* 92 F.3d at 61 *quoting Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.,* 856 F.2d 873, 879 (7th Cir. 1988) ("a defense is meritorious if it is good at law so as to give the factfinder some determination to make."); *I.L.G.W.U. Nat'l Retirement Fund*, 986 F. Supp. at 823 ("in deciding a motion to vacate a default judgment, a court does not pass judgment on the merits of the defense. The court only determines if the defense is

5

supported by more than mere allegations and raises serious questions as to the validity of the claim.").

## II. THE COURT SHOULD RECONSIDER DENYING TAO'S MOTION TO NARROW THE INJUNCTION AND GRANTING PLAINTIFF'S MOTION TO EXPAND THE INJUNCTION

### A. The Court Overlooked the Impact of the Supreme Court's Decision in *Morrison v. Nat'l Australia Bank Ltd.* on Extraterritorial Injunctions

Contrary to Plaintiff's assertions, the M&O does not address the Supreme Court's ruling in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). *Morrison* changed the law, reversing the Second Circuit and reaffirming the centuries-old presumption against extraterritorial application of United States laws. *Morrison* expressly held that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id.* Subsequently, the Supreme Court extended its ruling in *Morrison* to bar extraterritorial claims arising under the Alien Tort Statute. *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659 (2013).

Plaintiff's argument that *Morrison* considers the extraterritorial scope of an injunction as a question on the merits rather than a question of subject matter jurisdiction is beside the point. By this motion, Tao has not argued that the Court lacks subject matter jurisdiction over Plaintiff's claims under the Copyright Act. Rather, Tao is arguing that extending the Copyright Act to enjoin wholly extraterritorial sales is an improper exercise of the Court's power. *See Kiobel* 133 S.Ct. at 1665 ("The principles underlying the presumption against extraterritoriality thus constrain courts exercising their power under the [Alien Tort Statute].").

As Tao has argued, the Original Injunction applies extraterritorially, in violation of the express limitations of the Copyright Act and in contravention of the Supreme Court's decision in *Morrison*.

6

The Court's equitable powers to prevent circumvention are limited by *Morrison*, *Kiobel*, and the presumption against extraterritoriality. Just as the Original Injunction should have been more limited, so too should the Amended Injunction be further constrained. The presumption against extraterritoriality reaffirmed by *Morrison* must be taken into consideration, particularly when proscribing conduct that takes place wholly outside the United States. *See Danjaq LLC v. Sony Corp.*, 1998 WL 957053 (C.D. Cal. July 29, 1998), *aff'd,* 165 F.3d 915 (9th Cir. 1998) ("the scope of the injunction must be limited to Defendants' domestic activities."). *See also CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d. 1070, 1079 (N.D.Cal. Sept. 4, 1998) ("There appear to be no reported cases, however, in which the extraterritorial manufacture and distribution of infringing products was *enjoined* on the basis of copyright infringement occurring within the United States… Accordingly, the injunction will apply only to infringing activity occurring within the United States.").

The continued viability of the substantial effect element of *Vanity Fair Mills* is questionable in light of the Supreme Court's decision in *Morrison*. Even if the *Vanity Fair Mills* standard had been met – which is not the case – it would not support an extraterritorial injunction in this case because unlike the Lanham Act, the Copyright Act does not apply extraterritorially. *Compare EEOC v. Aramco*, 499 U.S. 244, 252 (1991) (finding Lanham Act has extraterritorial effect) *with Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S.Ct. 1351, 1376 (2013), Ginsberg, J. dissenting (citations omitted) ("The Copyright Act, it has been observed time and again, does not apply extraterritorially.").

In any event, Plaintiff's suggestion that it satisfied the substantial effect requirement is not supported by the record. To the contrary, Plaintiff has not put forward any evidence whatsoever that Tao's wholly extraterritorial sales have had any impact, let alone a substantial impact, on United States commerce. *See Atlantic Richfield Co. v. Arco*

7

*Globus Int'l Co.*, 150 F.3d 189, 192 n. 4 (2nd Cir. 1998) ("we have never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce.").[2] Accordingly, United States law should not apply.

Further, Plaintiff's reliance on *TotalPlan Corp. of Am. V. Colborne*, 14 F.3d 824 (2d Cir. 1993), is puzzling. In *TotalPlan*, the Second Circuit agreed that the Lanham Act *did not reach* the appellee's foreign distribution activities:

> First, none of the appellees is a United States citizen. Thus, unlike *Bulova*, this case does not implicate the United States' broad power to regulate the conduct of its citizens in foreign countries. *Vanity Fair*, 234 F.2d at 642. **Although appellees' Canadian citizenship alone may not be sufficient to defeat Totalplan's claim of Japanese infringement, it is a factor weighing against extraterritorial application of the Lanham Act.** *Cf. Calvin Klein Industries v. BFK Hong Kong, Ltd.*, 714 F. Supp. 78, 80 (S.D.N.Y. 1989) (finding jurisdiction under Lanham Act where defendant not a United States citizen but resided in the United States and controlled co-defendant New York corporation); *A.T. Cross Co. v. Sunil Trading Corp.*, 467 F. Supp. 47, 50 n.5 (S.D.N.Y. 1979) (same).

*Id.* at 830 (emphasis supplied). Unlike the situations described in *TotalPlan*, Tao is not a resident alien, nor for that matter, has Plaintiff established that he controls a New York or United States corporation.[3]

---

[2] Moreover, the only case Plaintiff cited on this issue, *A.V. by Versace v. Gianni Versace*, 126 F. Supp. 2d 328 (S.D.N.Y. 2001), is inapposite. In *Versace*, the defendant individual resided in New York, and his lawful conduct in the United States "was an essential part of the unlawful scheme." *Id.* at 50. Here, Tao is not resident in the United States, and he did not engage in any United States conduct that relates to his wholly extraterritorial sales, let alone conduct that constitutes an essential part of such sales.

[3] During oral argument on the subject motions held on November 19, 2014,, Tao's counsel disclosed to the Court that DVDFab.cn is owned by Beijing Goland Tech Company Limited, which is owned by Tao. Tr. 4:20-25.

8

### B. The Court Overlooked the DMCA's Limitation to Products That Violate the DMCA

Although the Amended Injunction does not expressly list the Additional Products, the M&O states that the Court "[does] not find the Preliminary Injunction is overbroad in preliminary enjoining the sale of [the Additional Products]." Plaintiff has not shown that the Additional Products violate the Copyright Act. As set forth in Tao's opening memorandum of law, their inclusion is outside the scope of the DMCA.

### C. Failure to Grant a Narrower Injunction Is Clear Error and Manifest Injustice

Plaintiff has not shown that the only way to keep Tao's products outside the United States is to issue a worldwide injunction that would shut down his business. Tao has taken substantial steps to comply with the Original Injunction, including creating non-AACS decryption ("NAD") versions for the United States and establishing IP address blocking to direct United States users to the NAD versions. Further, in response to the M&O and Amended Injunction, the TDMore.cn website stopped offering circumventing programs to the United States.

As Tao has argued, the injunction should only prohibit sales to and downloads within the United States. The injunction should not shut down web sites or enjoin third party hosts or registrars. Additionally, the injunction should not enjoin payment processors from processing transactions, because doing so enjoins legitimate extraterritorial activity that does not substantially harm United States commerce. Finally, the injunction should not include the NAD Products or the Additional Programs because they do not violate the DMCA. It would be more than sufficient to enjoin the add-ons from being sold to or distributed in the United States.

## CONCLUSION

For the reasons set forth herein, Tao urges the Court to grant reconsideration of its rulings on Tao's motion to vacate the default, Tao's motion to narrow the injunction, and AACS' motion to expand the injunction.

Dated: New York, New York
April 20, 2015

**SCHOEMAN UPDIKE KAUFMAN & STERN LLP**

By: /Nancy J. Mertzel/
Nancy J. Mertzel
551 Fifth Avenue
New York, New York 10176
(212) 661-5030

*Attorneys for Defendant Feng Tao d/b/a Fengtao Software*