UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                :
ADVANCED ACCESS CONTENT  :
SYSTEM LICENSING                :
ADMINISTRATOR, LLC,         :
                :           14-CV-1112 (VSB)
                :
            Plaintiff,  :         **OPINION & ORDER**
                :
     - against -     :
                :
LANNY SHEN, et al.,          :
                :
            Defendants.  :
                :
------------------------------------------------------------X

Appearances:

G. Roxanne Elings
Greenberg, Traurig, LLP
New York, New York

James Nguyen
Lauren Danielle Toaltoan
Davis Wright Tremaine LLP
New York, New York
*Counsel for Plaintiff*

Michael Cukor
McGeary Cukor LLC
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Advanced Access Content System Licensing Administrator, LLC ("AACSLA" or "Plaintiff") initiated this action by simultaneously filing a complaint and obtaining an order to show cause ("OTSC") why a preliminary injunction should not issue against Defendants Lanny Shen d/b/a DVDFab and Fengtao Software Inc.; SunReg Technologies Ltd. d/b/a DVDFab and

Fengtao Software Inc.; Feng Tao d/b/a DVDFab and Fengtao Software Inc.; Shen Xinlan d/b/a Audio-DVD Creator; and John Doe, Jane Doe and/or XYZ Company d/b/a DVDFab, ripperBluray.com, DVDFabb.com and DVDFab.com (collectively, the "DVDFab Group" or "Defendants"), for violations of the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 1201, *et seq.*, in connection with Defendants' trafficking of products designed to circumvent Plaintiff's encryption technology.  (*See* Doc. 1.)  On November 30, 2018, I granted a default judgment against Defendants on the issue of liability and referred this case to Magistrate Judge Stewart Aaron to conduct an inquest concerning Plaintiff's damages.  (Doc. 167.)  Before me is the March 13, 2019 Report and Recommendation of Magistrate Judge Aaron, which recommends awarding $14,927,000.00 in damages to Plaintiff.  (Doc. 188 ("R&R" or "Report").)

On March 26, 2019, Defendant Feng Tao ("Feng Tao" or "Tao") timely filed written objections to the Report.  (Doc. 189 ("Objections").)  On April 16, 2019, Plaintiff filed a response to Tao's Objections.  (Doc. 192 ("Response").)  On April 18, 2019, Tao filed a letter in reply to the Response.  (Doc. 193 ("Reply").)  I have reviewed the R&R, Tao's Objections, Plaintiff's Response, and Tao's Reply.  For the reasons that follow, I overrule the objections and ADOPT the Report in its entirety.

## I.     Factual Background[1]

Plaintiff AACSLA develops and licenses Advanced Access Content System ("AACS") technology to protect the audiovisual content on high-definition media (such as Blu-ray discs)

---

[1] I assume familiarity with the underlying facts related to this case contained in Judge Aaron's Report, (Doc. 180), and my March 16, 2015 Memorandum & Order denying Tao's motion to vacate the entry of the Clerk's Certificate of Default, (Doc. 26), and to amend the preliminary injunction order.  (Doc. 87.)

from unauthorized access, copying, and distribution. (Compl. ¶ 16.)[2]  "[AACSLA] licenses the AACS Technology to motion picture studios and television programming owners, consumer electronics companies, computer software companies, and a large number of companies in related distribution and services industries." (*Id*. ¶ 18.) These AACS licenses allow motion picture and television programming rights holders to distribute their content on Blu-ray discs for consumers to purchase or rent while having encryption measures in place to control access to and protect the contents' copyright. (*Id.*)

The DVDFab Group owns and operates numerous websites that redirect to DVDFab.com for purposes of downloading the DVDFab software. (*Id*. ¶ 21.) The DVDFab software removes nearly all Blu-ray protections and all known AACS copy protections. (*Id.* ¶ 26.) Once AACS encryption protections are removed from a Blu-ray disc, a user can "copy the content on that disc onto another physical disc, which . . . [will have] no AACS Technology protection against further reproduction or distribution." (*Id*. ¶ 24.) "All of the active DVDFab Websites redirect to DVDFab.com for purposes of downloading" the software. (*Id.* at ¶ 21.)

AACSLA, through agents acting on its behalf, acquired "DVDFab Software," downloaded the DVDFab Software in the United States, and conducted testing of the DVDFab Software. (*Id*. ¶ 26.) AACSLA's testing confirmed that the DVDFab Software illegally decrypts and removes AACS Technology protections, and circumvents the AACS Technology's measures that effectively control access to a copyright-protected work and protect the right of a copyright owner to, among other things, reproduce a copy of the work. (*Id*.) The DVDFab Group openly touts these illegal circumvention attributes of the DVDFab Software on its websites, advertising that, among other things, its software products "remove all Blu-ray copy protections," are

---

[2] "Compl." refers to the complaint filed by Plaintiff on February 21, 2014 ("Complaint"). (Doc. 2.)

3

"powerful enough to rip any Blu-ray since it can remove nearly all Blu-ray protections," and "can remove . . . all known AACS copy protections." (*Id.*)

**II.      Procedural History**

On February 21, 2014, Plaintiff filed its Complaint and I granted Plaintiff leave to serve process by email. (Doc. 3.) That same day, Plaintiff sought a preliminary injunction against Defendants. (Doc. 4.) I ordered Defendants show cause why a preliminary injunction should not issue. (*Id.*) Defendants failed to appear at the OTSC hearing and I granted Plaintiff's request to preliminarily enjoin Defendants from, among other things, trafficking in any technology capable of circumventing AACSLA's encryption technology in violation of the DMCA. (Doc. 21.) On March 18, 2014, the Clerk of Court entered a Clerk's Certificate of Default ("Certificate of Default") against all Defendants. (Doc. 26.) On April 1, 2014, Defendant Feng Tao appeared in this action and moved to amend the preliminary injunction. (Doc. 28.) On June 20, 2014, Tao moved to set aside the Clerk's entry of the Certificate of Default against him. (Doc. 47.) On March 16, 2015, I denied Tao's motion to vacate the entry of default and to amend the preliminary injunction order. (Doc. 87.) On March 30, 2015, Tao moved for reconsideration of that denial. (Doc. 89.) I denied the motion for reconsideration on May 24, 2016. (Doc. 108.) Tao appealed my original denial of his motion to vacate the default and to amend the preliminary injunction order, (Doc. 121), and the Second Circuit affirmed that order, *Advanced Access Content Sys. Licensing Adm'r, LLC v. Feng Tao*, 689 F. App'x 661, 662 (2d Cir. 2017) (summary order).

On September 11, 2017, Tao filed a motion to dismiss based on insufficient service of process. (Doc. 136.) On September 12, 2017, Plaintiff filed a motion for default judgment against Tao, citing the Second Circuit's affirmation of my denial. (Doc. 138.) On September 30,

4

2018, I denied Tao's motion to dismiss the Complaint for insufficient service of process. (Doc. 164.)

On November 29, 2018, I issued an order entering a default against Defendants on the issue of liability and referring the action to Magistrate Judge Aaron for an inquest on damages. (Doc. 167.)  The parties filed supplemental briefing regarding the scope of Plaintiff's proposed permanent injunction. (Doc. 174.)  Plaintiff timely filed proposed Findings of Fact and Conclusions of Law on January 11, 2019, ("FOF" (Doc. 175)), as well as the declaration of Matthew Hewlett, (Doc. 176.)  Plaintiff sought $47,049,500.00 in damages. (FOF ¶ 29.)  Defendants did not file any response.  Magistrate Judge Aaron held an inquest hearing on March 6, 2019, (Doc. 186), and issued his Report on March 13, 2019, (Doc. 188).

### III.  Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely, specific objection, a district court reviews de novo the parts of the report and recommendation to which the party objected. *Id.*; *see also* Fed. R. Civ. P. 72(b)(3).  A district court reviews the parts of a report and recommendation that are not objected to for clear error. *Concepcion v. Martuscello*, No. 16-CV-5918 (LAP), 2018 WL 4283736, at *1 (S.D.N.Y. Sept. 7, 2018).  Further, when a party makes only conclusory or general objections, or simply reiterates the original arguments it made before the magistrate judge, the Court will review the Report strictly for clear error.  *See Pearson–Fraser v. Bell Atl.*, No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003).  "However, new arguments and factual assertions cannot properly be raised for the first time in objections to the R&R, and indeed may not be deemed objections at all." *Tarafa v. Artus*, No. 10 CIV. 3870 AJN HBP, 2013 WL 3789089, at *2

5

(S.D.N.Y. July 18, 2013) (quoting *Smith v. Hulihan,* 2012 WL 4928904, at * 1 (S.D.N.Y. Oct.17, 2012) (internal quotation marks omitted)).  "Even where exercising de novo review, a district court 'need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety.'" *Bush v. Colvin*, 15 Civ. 2062 (LGS) (DF), 2017 WL 1493689, at *4 (S.D.N.Y. Apr. 26, 2017) (alteration in original) (quoting *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order)).

Section 1203(c)(3)(A) of the DMCA, which provides for statutory damages, states as follows:

> At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.

17 U.S.C. § 1203(c)(3)(A).  The number of violations is determined by the number of devices sold that were designed to circumvent digital walls that control access to a copyrighted work; that number is then multiplied by the statutory damage award the Court determines (*i.e.*, not less than $200 or more than $2,500).  *See Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 583 (S.D.N.Y. 2013).

In determining the amount of statutory damages, "[t]he court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD) (JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007).  A court has "wide discretion in setting the statutory damage award." *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 265 (2d Cir. 2005).  "To determine the appropriate amount of statutory damages to award Plaintiff for each circumvention product sold, within the range of $200.00 to $2,500.00, courts consider what is 'just.'"

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 114CV01112VSBSDA, 2019 WL 2450495, at *9 (S.D.N.Y. Mar. 13, 2019).  Two factors that courts consider when assessing what is just are the willfulness of the conduct and the goal of discouraging wrongful conduct.  *Id*.  *See also Gucci Am., Inc. v. MyReplicaHandbag.com*, No. 07 CIV. 2438 (JGK), 2008 WL 512789, at *2 (S.D.N.Y. Feb. 26, 2008) (a factor considered in assessing statutory damages under copyright law is "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced" (citation omitted)).

**IV.     Discussion**

Based on a de novo review of the relevant factual record, the R&R, Tao's Objections, Plaintiff's Responses, Tao's Reply, and applicable legal authorities, the R&R is adopted in its entirety.  The portions of the R&R as to which no objections were made are adopted because those portions are not clearly erroneous.  Any of Tao's objections not specifically addressed in this decision have been considered de novo and rejected.

First, Tao objects that the R&R adopted an unreliable damages model, based on the testimony of Plaintiff's expert witness, Joshua Hopping, at the damages inquest hearing.  (Objections 5–9.)  All of Tao's objections concerning Hopping's testimony were already considered and addressed by Magistrate Judge Aaron, and I therefore review those portions of the R&R strictly for clear error.  *See Pearson–Fraser*, 2003 WL 43367, at *1.  Tao objects that Hopping applied an "unreliable and unsupportable methodology."  (Objections 6.)  As the R&R notes, Tao made the strategic choice to not submit to Magistrate Judge Aaron during the inquest hearing evidence of the actual sales by Defendants or to offer an expert to rebut Hopping.[3]

---

[3] Tao's actions, and Magistrate Judge Aaron's remarks, support my initial observation about Tao's evasive litigation tactics in the Memorandum & Order denying Tao's motion to set aside the entry of default.  (*See* Doc. 87 at 12 ("It also is clear that Tao's decision to remain in default after March 18th was a strategic tactic to avoid litigating this action on the merits.").)

7

(R&R 17–18.) Without proof of actual sales, there was no proper method for Magistrate Judge Aaron to arrive at a damages amount with mathematic precision. In such situations, "defendants must bear the burden of uncertainty," *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985), and Magistrate Judge Aaron based his decision on "reasonable, even if imprecise" estimates, *Study Logic, LLC v. Clear Net Plus, Inc.*, No. 11-CV-4343 (CLP), 2012 WL 4329349, at *13 (E.D.N.Y. Sept. 21, 2012). Tao further objects that Hopping did not have the adequate expertise to reliably calculate damages. (Objections 6–7.) Tao raised this argument at the inquest hearing, and Magistrate Judge Aaron specifically considered and addressed Hopping's expertise in finding that he qualified as an expert. (*See* R&R at 8–9.) I find no clear error with regard to Tao's first objection.

Second, Tao objects that the R&R adopts an erroneous conversion rate because Hopping's testimony at the hearing showed his definition of "conversion rate" differed from the industry standard he accepted as authoritative. (Objections 9.) Magistrate Judge Aaron specifically addressed this issue when he stated that he "did not find Hopping's testimony regarding conversion rates to be reliable," but, as discussed *supra*, he "found his methodology to be sound." (R&R 10.) In an effort to reach a conservative estimate, Hopping applied the lowest estimated historical conversion rate possible, 2.6%, (*id.*), but Magistrate Judge Aaron accepted defense counsel's finding, as an officer of the court, that the conversion rate of 2.2% should apply for March 2012, (*id.* at n.12, 12.) Magistrate Judge Aaron then applied a 2.2% conversion rate, the lowest applicable rate, precisely to account for any "unknown" fluctuations in conversion rates reported by third parties' conversion rate estimates. (*Id.* at 12.) Magistrate Judge Aaron determined that "[m]ultiplying the conversion rate by the number of website visits results in an estimate of the number of visitors who purchased products on Defendants'

websites." (*Id*. at 10.) The R&R clearly adopted a well-reasoned and conservative approach to determining the conversion rate and applying it to the damages calculation, and I find no error.

Third, Tao asserts that the R&R incorrectly apportioned sales through its findings because (1) the pro rata apportionment is arbitrary, (2) the total number of products is arbitrary, (3) the calculation fails to account for how long the products were available on the websites during the damages period, and (4) Magistrate Judge Aaron should assume that the preliminary injunction entered on March 4, 2014, as modified on March 17, 2015, "effectively stopped sales of the [six] accused [Circumvention Products] after March 4, 2014." (Objections 8, 15.) Relevant to these arguments, the record presented during the inquest hearing demonstrated that Defendants continued to sell the products into the United States after issuance of the preliminary injunction. (*See* Hewlett Decl. Exs. A–D, G, N, O, Q.) Additionally, the product's price is not at issue when assessing statutory damages, so Magistrate Judge Aaron need not have considered the price of the various products when calculating damages. *See MyReplicaHandbag,com*, 2008 WL 512789, at *2. Lastly, Tao again points the finger at Plaintiff to establish Defendants' sales with certainty. Tao refused to submit evidence of actual sales to Magistrate Judge Aaron and any burden of uncertainty therefore weighs upon Tao. *See Louis Vuitton S.A.*, 765 F.2d at 972. Magistrate Judge Aaron assessed the evidence before him at the inquest hearing and recommended that damages be awarded based on these "reasonable, even if imprecise" estimates. *See Study Logic, LLC,* No. 11-CV-4343 (CLP), 2012 WL 4329349, at *13. I find no error in the R&R's apportionment of sales.

Tao also objects to the R&R's adoption of Plaintiff's website traffic evidence. (Objections 18–20.) Tao bases his objection on deficiencies in the testimony and expertise of Hopping and Hewlett, Plaintiff's witnesses at the inquest hearing. (*Id*.) The R&R specifically

9

notes that "[n]o dispute was raised at the inquest regarding the total United States traffic to the DVDFab Domains, totaling roughly 5.9 million site visits during the period February 21, 2011 to July 31, 2017."  (R&R 11–12.)  I will not now consider new evidence not presented to Magistrate Judge Aaron, especially when Tao has had sufficient opportunities thus far to present such an argument.  *Tarafa*, 2013 WL 3789089, at *2 ("new arguments and factual assertions cannot properly be raised for the first time in objections") (quoting *Smith v. Hulihan*, 2012 WL 4928904, at * 1 (S.D.N.Y. Oct.17, 2012)).  I therefore find no error with regards to the R&R's adoption of the website traffic evidence in determining the damages award.

Lastly, Tao objects to Magistrate Judge Aaron's own assessment and opinions of the evidence offered at the inquest hearing.  (Objections 21–23.)  Specifically, Tao objects to Magistrate Judge Aaron's conclusions regarding the number of products sold by Defendants based on his review of screenshots of Defendants' website, which were entered into evidence at the inquest hearing.  (*Id*.)  It is well within a federal judge's authority to calculate damages based on conclusions drawn from the evidence coupled with the judge's own personal knowledge.  *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("the court may rely on detailed affidavits or documentary evidence (here supplemented by the court's personal knowledge of the facts, derived from presiding [over the hearing]) to evaluate the proposed [damages] sum.")  Here, Magistrate Judge Aaron relied on Plaintiff's properly admitted evidence—the only evidence proffered at the inquest hearing—when determining the damages award.  Tao cannot now second guess Magistrate Judge Aaron's determinations based on the evidence, when Tao had every opportunity to submit his own evidence to be considered in the damages calculations and continuously failed or refused to do so.  I find no error with the admissibility of the evidence upon which the R&R relied when making the recommendation for

10

an award of damages.

## V. Conclusion

For the reasons stated above, I hereby ADOPT Magistrate Judge Aaron's Report in its entirety. Accordingly, Plaintiff is awarded $14,927,000.00 in damages. The Clerk of Court is respectfully directed to (1) terminate any open motions, (2) enter judgment in accordance with this Order, and (3) close this case.

SO ORDERED.

Dated: July 5, 2023
      New York, New York

                                     Vernon S. Broderick
                                     United States District Judge