UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                               :

ADVANCED ACCESS CONTENT SYSTEM : 
LICENSING ADMINISTRATOR, LLC,       :
                               :

                    Plaintiff,     :            14-CV-1112 (VSB)
                               :

           - against -        :         **OPINION & ORDER**
                               :

                               :

LANNY SHEN d/b/a DVDFAB AND           :
FENGTAO SOFTWARE INC., SUNREG        :
TECHNOLOGIES LTD. d/b/a DVDFAB       :
AND FENGTAO SOFTWARE INC., FENG    :
TAO d/b/a DVDFAB AND FENGTAO         :
SOFTWARE INC., SHEN XINLAN d/b/a       :
AUDIO-DVD CREATOR, and JOHN DOE,    :
JANE DOE and/or XYZ COMPANY d/b/a    :
DVDFAB, RIPPERBLURAY.COM, DVD        :
FABB.COM and DVDFFAB.COM,               :
                               :

                 Defendants.  :
                               :
-------------------------------------------------------X


<u>Appearances</u>:

G. Roxanne Elings
James Nguyen
Lauren Danielle Toaltoan
Davis Wright Tremaine LLP
New York, New York

George Pearson Wukoson
Ziff Davis, LLC
*Counsel for Plaintiff*

Michael Cukor
McGeary Cukor LLC
New York, New York
*Counsel for Defendant Feng Tao*

<u>VERNON S. BRODERICK, United States District Judge</u>:

In this matter, Plaintiff[1] requested both monetary damages and equitable relief in the form of a permanent injunction.  (Doc. 2.)  On July 5, 2023, I adopted the Report and Recommendation of Magistrate Judge Stewart D. Aaron, which granted Plaintiff damages in the amount of $14,927,000.00 but did not address Plaintiff's request for injunctive relief.  (Doc. 196.)  Because Plaintiff has shown that it is entitled to such relief, its request for a permanent injunction is GRANTED.

## I.    <u>Background</u>

Plaintiff develops and licenses Advanced Access Content System ("AACS") technology to protect the audiovisual content on high definition media (such as Blu-ray discs) from unauthorized access, copying, and distribution, (the "AACS Technology").  (Doc. 2, the "Complaint," ¶ 15.)  On February 4, 2014, Plaintiff initiated this action by simultaneously filing a complaint, (*id*.), and requesting an order to show cause why a preliminary injunction should not issue against Defendants[2] for violations of the Digital Millennium Copyright Act (the "DMCA"), (Doc. 4.  In the Complaint, Plaintiff requested, among other things, that:

> Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be permanently enjoined and restrained from manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof capable of circumventing the AACS technology – including but not limited to the DVDFab Software (the 'Circumventing Activities')[] [and] That Defendants be ordered not to conduct or participate in any of the Circumventing Activities through any website, social media or online service, or through any offline means.

---

[1] "Plaintiff" refers to Advanced Access Content System Licensing Administrator, LLC.

[2] "Defendants" refers to Lanny Shen d/b/a DVDFab and Fengtao Software Inc., SunReg Technologies Ltd. d/b/a DVDFab and Fengtao Software Inc., Feng Tao d/b/a DVDFab and Fengtao Software Inc., Shen Xinlan d/b/a Audio-DVD Creator, and John Doe, Jane Doe and/or XYZ Company d/b/a DVDFab, RipperBluray.com, DVDFabb.com and DVDFfab.com.

(Doc. 2 at 15–16.)

      After Defendants failed to appear at the hearing on this motion, on March 4, 2014, I granted Plaintiff's motion for a preliminary injunction. (Doc. 21, the "Preliminary Injunction.") The Preliminary Injunction was consistent with the relief requested in the Complaint. (*Compare id. with* Doc. 2.) On March 18, 2013, the Clerk of Court entered certificates of default against all Defendants. (Doc. 26.) On April 1, 2014, Defendant Feng Tao d/b/a Fengtao Software ("Tao") filed a motion to amend the Preliminary Injunction, (Doc. 28), which Plaintiff opposed on April 21, 2014, (Doc. 35). I held a conference regarding this motion on May 27, 2014. (*See* Docs. 42, 45.) On June 20, 2014, Tao filed a motion to set aside the certificate of default against him, (Doc. 47), which Plaintiff opposed on July 11, 2014, (Doc. 53). On October 3, 2014, Plaintiff moved to amend the Preliminary Injunction, (Docs. 59–62), which Tao opposed on October 30, 2014, (Docs. 72–73). On November 19, 2014, I held a hearing during which Defendants were directed to show cause why an order modifying the Preliminary Injunction as requested by Plaintiff should not be entered. (*See* Docs. 80, 85.) On March 16, 2015, I entered a memorandum & order in which I denied Tao's motion to set aside the Clerk's certificate of default, denied Tao's motion to amend the Preliminary Injunction, and granted Plaintiff's motion to amend in part and denied it in part. (Doc. 87, the "3/16/15 M&O.") On March 17, 2015, I entered an amended preliminary injunction. (Doc. 88, the "Amended Preliminary Injunction.") On March 30, 2015, Tao filed a motion for reconsideration of the 3/16/15 M&O, (Doc. 89), which Plaintiff opposed on April 13, 2015, (Doc. 93), and I denied on May 6, 2016, (Doc. 89).

      On April 21, 2016, Plaintiff moved for an order to show cause "why Defendants should not be held in contempt of this Court's Amended Preliminary Injunction Order . . . and why a Second Amended Preliminary Injunction Order should not be issued," (Docs. 97–100), which I

entered that same day, (Doc. 96).  Tao opposed that motion on May 26, 2016.  (Doc. 110.)
Plaintiff filed a reply brief and two declarations in support on June 2, 2016.  (Doc. 113–115.)  On
June 21, 2016, Tao filed an interlocutory appeal of the 3/16/15 M&O to the United States Court
of Appeals for the Second Circuit (the "Second Circuit").  (Doc. 121.)  On June 22, 2017, the
Second Circuit affirmed the 3/16/15 M&O.  (Doc. 125.)  On September 11, 2017, Tao filed a
motion to dismiss Plaintiff's Complaint based on insufficient service of process.  (Doc. 136.)
The following day, Plaintiff filed a motion for entry of a default judgment against all Defendants.
(Doc. 138.)  At a conference on November 9, 2017, I advised the parties that I intended to first
issue a decision on Tao's motion to dismiss before ruling on Plaintiff's motion for a default
judgment.  On September 30, 2018, I issued an Opinion & Order, denying Tao's motion to
dismiss the Complaint for improper service.  (Doc. 164.)

       On November 30, 2018, I held a status conference with the parties.  Following the status
conference, I entered an order entering default judgment against all Defendants on the issue of
liability, referring the action to Magistrate Judge Aaron for an inquest on damages, and directing
that the parties "file supplemental briefing regarding the scope of Plaintiff's proposed permanent
injunction."  (Doc. 167.)  On January 11, 2019, Plaintiff filed their memorandum of law on the
scope of the permanent injunction.  (Doc. 174.)  On January 29, 2019, Tao filed an opposition
brief.  (Doc. 180.)  On February 8, 2019, Plaintiff filed a reply.  (Doc. 181.)  On March 13, 2019,
Magistrate Judge Aaron issued his Report and Recommendation, (Doc. 188), which Tao objected
to on March 26, 2019, (Doc. 189).  On April 16, 2019, Plaintiff filed a response to Tao's
objections.  (Doc. 192.)  On July 5, 2023, I adopted Magistrate Judge Aaron's Report and
Recommendation in its entirety.  (Doc. 196.)

## II.    <u>Legal Standard</u>

Pursuant to "well-established principles of equity, a plaintiff seeking a permanent

injunction must satisfy a four-factor test before a court may grant such relief."  *Kiss Nail*

*Products, Inc. v. Shenzhen Kaylux Tech. Co. Ltd.*, No. 18CV5631JMASIL, 2020 WL 13573007,

at \*2 (E.D.N.Y. Sept. 24, 2020) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391

(2006)).  The four-factor test requires that a plaintiff demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such
> as monetary damages, are inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the plaintiff and defendant, a remedy
> in equity is warranted; and (4) that the public interest would not be disserved by a
> permanent injunction.

*Id.*  "A court may issue an injunction on a motion for default judgment provided that the moving

party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets

the prerequisites for the issuance of an injunction."  *Pitbull Prods., Inc. v. Univ. Netmedia, Inc.*,

No. 07 CIV 1784 RMB GWG, 2007 WL 3287368, at \*5 (S.D.N.Y. Nov. 7, 2007) (cleaned up).

## III.    <u>Discussion</u>

### A.    *Entitlement to a Permanent Injunction*

A permanent injunction is justified here.  A court may issue an injunction when the

moving party establishes that there is a statutory basis for relief and that it "meets the

prerequisites for the issuance of an injunction."  *Id.*  The second requirement necessitates that the

party seeking the injunction "demonstrate irreparable harm and the absence of an adequate

remedy at law."  *Id.*  In intellectual property actions, such permanent injunctions generally are

granted when there is "a threat of continuing" violations.  *Software Freedom Conservancy, Inc.*

*v. Best Buy Co.*, No. 09 Civ. 10155(SAS), 2010 WL 2985320, at \*2–3 (S.D.N.Y. July 27, 2010)

(internal quotation marks omitted) (granting permanent injunction because defendant continued

its violations even after being "informed of its unlawful infringement").

Here, the first element is met.  Pursuant to the DMCA, a court "may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation . . . ."  *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 343 (S.D.N.Y. 2000) (quoting 17 U.S.C. § 1203(b)(1)).

As to the second element, Tao argues that Plaintiff has not shown irreparable harm.  I disagree.  I have already found that Plaintiff has made a clear showing that its remedies at law are inadequate, and absent injunctive relief, it faces irreparable harm.  (*See* Doc. 24 at 13:3–4; Doc. 87 at 14–15.)  The Second Circuit has affirmed these findings, holding that "[t]he District Court acted within its discretion in finding that [Plaintiff] would suffer irreparable harm absent the amended preliminary injunction . . . Further, Tao's conduct indicated a strong likelihood of future violations." (Doc. 125 at 3.)  Accordingly, Plaintiff has shown that it is entitled to a permanent injunction.

### B.  *Scope of the Permanent Injunction*

Plaintiff seeks a permanent injunction under the following terms:

> (i) enjoining all Circumventing Activities; (ii) ceasing use of any domain names or websites where the Circumventing Activities take place (including, the DVDFab Domain Names, the DVDFab Websites, the VidOn Domain Names, the VidOn Websites, and any other websites where Defendants conduct the Circumventing Activities and/or market, offer for sale, distribute and/or sell any circumvention products; and (iii) ceasing use of DVDFab Social Media Accounts, or any other social media accounts where Defendants conduct the Circumventing Activities and/or market, offer for sale, distribute and/or sell the Circumvention Products.

(Doc. 174 at 8–9; *see also* Doc. 175, the "Proposed Permanent Injunction.")  Unlike the Amended Preliminary Injunction, which identifies specific domain names, websites, and social media accounts, the permanent injunction Plaintiff seeks would require Defendants to cease use of "any" domain names, websites, and social media accounts where Defendants conduct the

Circumventing Activities.[3]  (*Compare* Doc. 88, *with* Doc. 174-1.)  Tao argues that "Plaintiff has

so overreached that its entire motion should be denied" because "Federal Rule of Civil Procedure

54(c) precludes from inclusion in any permanent injunction any products, websites, social media

accounts or domain name registrars other than those listed" in the Complaint.  (Doc. 180 at 1, 6–

7.)

      Fed. R. Civ. P. 54(c) provides that "[a] default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The rationale

behind this provision "is that the defending party should be able to decide on the basis of the

relief requested in the original pleading whether to expend the time, effort, and money necessary

to defend the action."  *Silge v. Merz*, 510 F.3d 157, 159 (2d Cir. 2007) (internal quotation marks

omitted).  Unlike the request for "such other and further relief which this Court deems just and

proper," which the *Silge* court criticized as "formulaic" and "mere boilerplate," *id.* at 160,

Plaintiff requested relief that is consistent in kind and scope of the Proposed Permanent

Injunction.  The Complaint explicitly requests that "Defendants . . . and all persons in active

concert with them be permanently enjoined . . . from manufacturing . . . or otherwise trafficking

in any technology . . . or part thereof capable of circumventing the AACS Technology– including

but not limited to the DVDFab Software" and that I order Defendants "not to conduct or

participate in any of the Circumventing Activities through any website, social media or online

---

[3] The term "Circumventing Activities" refers to manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof capable of circumventing the AACS Technology – including but not limited to the Circumvention Products.  (Doc. 181-1 at 6.)

The term "Circumvention Products" refers to (1) DVDFab Blu-ray Ripper (3D plus); (2) DVDFab Bluray Copy; (3) DVDFab Blu-ray to DVD Converter; (4) DVDFab HD Decrypter; (5) Passkey for Blu-ray; (6) Passkey Lite; (7) BluFab Blu-ray Converter; (8) BluFab Blu-ray Copy; (9) BluFab Blu-ray to DVD Converter; (10) TDMore Blu-ray Converter; (11) TDMore Blu-ray Copy; (12) DVDFab Passkey 8; (13) Woookao; (14) Boooya; (15) DVDFab Blu-ray Ripper; (16) VidOn DVDWatchBox; (17) VidOn Import Utility; (18) Vidus All-In-One Lifetime software; (19) VidOn Server and (20) VidOn Cloud.  (Doc. 174-1 at 2–3.)

service, or through any offline means."  (Doc. 2 at 15–16.)  When Defendants "look[ed] to the demand clause [of the Complaint] to understand their exposure in the event of default," they received the "meaningful notice called for by Rule 54(c)."  *Silge*, 510 F.3d at 161.

The Proposed Permanent Injunction is also not different in kind or scope than the relief granted by the Preliminary Injunction.  As I previously stated, "what I enjoined was, in essence was the circumvention of the technology," because if I was to enforce the injunction as Tao suggests, "we would always be in a position where a violator would be able to dictate whether or not a prior order is being violated or whether or not there's irreparable harm based on that, just by tweaking it in a certain way."  (Doc. 119 at 40.)  Tao has used multiple domains and social media profiles to accomplish the same unlawful goal:  offering software that circumvents the AACS Technology to allow for the reproduction of a piece of work.  (*See* Complaint ¶¶ 21, 26.)  In accordance with my inherent equitable powers and my power to enforce compliance with my lawful orders, it is necessary to enjoin the use of any new domain names, websites, or social media accounts that are used to conduct the Circumventing Activities or support the distribution of the Circumvention Products.  *See Belstaff Grp. SA v. Doe*, No. 15-CV-2242(PKC)(MHD), 2015 WL 10852520, at *2 (S.D.N.Y. June 18, 2015) (granting plaintiff the "ongoing authority to request from this Court . . . an amendment to this [Permanent Injunction] Order . . . for the purpose of disabling such Supplemental Domain Names and/or Websites.").  To narrowly construe the injunction as only barring the use of specific domain names or accounts would render it useless, as Defendants could continue the illegal activity as quickly as they could purchase a new domain name or register for a new social media account.

### C.      *Service Pursuant to Rule 65(d)(2)*

Tao asserts that Plaintiff is required to serve any injunction order on him in accordance with the requirements of The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").  (Doc. 180 at 9.)  Tao does not identify any case law that supports this position.  The language that Tao quotes from Fed. R. Civ. P. 65(d) specifically states that an order granting an injunction binds those "who receive actual notice of it by personal service or otherwise."  Tao is represented by counsel and has clearly received actual notice of other filings through ECF and provides no reason to believe that he would not continue to receive such notice.  Tao's request to require service of the permanent injunction in accordance with the Hague Convention is DENIED.

### D.      *Service of Complaint*

Before me is a letter filed by Tao on July 23, 2023, requesting that I "consider whether supplemental briefing ought to be considered on whether proper service was made in this case at the outset."  (Doc. 200.)  Tao then proceeds to describe *Smart Study Co., Ltd. v. Acuteye-US*, 620 F.Supp.3d 1382 (S.D.N.Y. 2022), a district court case related to service under the Hague Convention.  (Doc. 200*.*)  As I already found when deciding Tao's motion to dismiss, service was properly effectuated.  (Doc. 164.)  I also explained that

> "Courts have typically held that actual knowledge of a suit coupled with extensive participation in pretrial proceedings will result in a waiver of the defense, especially where the delay has operated to the plaintiff's detriment."  *Arthur Williams, Inc. v. Helbig*, No. 00 CIV. 2169 SHS, 2001 WL 536946, at *2 (S.D.N.Y. May 21, 2001) (collecting cases).  Here, Feng Tao admits that he received the summons and complaint by email on February 25, 2014, (Feng Tao Decl. ¶ 12), and on February 26, 2014, a lawyer from Weiss & Moy, P.C. contacted Feng Tao and offered its legal services because Feng Tao was being sued in the United States, (id. ¶ 13).  Feng Tao also extensively participated in this action without previously filing a 12(b) motion, including through submitting letters, briefing five substantive motions (three brought by Feng Tao and two by AACS LA), filing an interlocutory appeal to the Second Circuit, and appearing before me five times over a three year

period.

(*Id*. 6.) Tao does not identify any authority that would justify reconsideration of my decision. Accordingly, I decline to consider supplemental briefing on the issue of service.

## IV.   <u>Conclusion</u>

For the reasons described above, Plaintiff's request for a permanent injunction is GRANTED. Having reviewed the Complaint, the parties' supplemental briefing on the scope of the permanent injunction, and the entire record herein, it is hereby

ORDERED, as follows:

1. Defendants, their officers, agents, attorneys, servants, employees, and any persons in active concert or participation with them are permanently enjoined and restrained from:

(a) manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof capable of circumventing the AACS Technology – including but not limited to the Circumvention Products (the "Circumventing Activities");

(b) moving, destroying, or otherwise disposing of any items, merchandise or documents relating to the Circumvention Products, Defendants' assets and operations, and/or any domain names where Defendants are conducting Circumventing Activities including marketing, distributing, offering for sale and/or selling the Circumvention Products, including but not limited to: DVDFab.cn, Vidon.me and Vidus.cn (as well as prior domain names, DVDFab.com, DVDFab.net, DVDIdle.com, 3d-videoconverters.com, 3dBluRay-ripper.com, Blu-Ray-ripper.us, Blu-Ray-Software.us, BluRayripper.jp, BluRaysbs3d.com, BluRaysoft.jp, CopyBluRay.us, DVDFab.jp, DVDFab9.com, DVDvideosoft.jp, kopiersoftware.com, macBluRaycopy.com, 7 mourlife.com,

readtechnews.com, sbs3d.com, sbs3dconverter.com, sbs3dcopy.com, sbs3dripper.com, tracehotnews.com, videoconverter.jp, wollytech.com, xn--dvdti4bzc1jla2oj3ne.com, 2d-3d-converter.com, copyDVDsoftware.us, sbs3dcreator.com, DVDFab.de, audio-dvd-creator.com, ripperBluRay.com, DVDFabb.com, DVDFfab.com, Woookao.com, Woookao.cn., Boooya.org, TDMore.com, TDMore.cn, BluFab.com, BluFab.cn, FabImg.net (collectively, the "DVDFab Domain Names" and the websites located or operated at those domain names shall be collectively referenced as the "DVDFab Websites"); and

(c) removing, destroying or otherwise disposing of any computer files, electronic files, business records, or documents relating to the DVDFab Domain Names, the DVDFab Websites or the Circumvention Products, and/or Defendants' assets and operations or relating in any way to the manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof capable of circumventing the AACS Technology (including but not limited to the Circumvention Products).

2.  Defendants shall not conduct or participate in any of the Circumventing Activities through any website, social media or social networking site or service, or other online service or platform, or through any offline means.

3.  Defendants shall disable and cease use of the DVDFab Domain Names, the DVDFab Websites, and the social media or online service accounts associated with them, and any pages, profiles, or channels by which Defendants market, distribute, offer for sale and/or sell the Circumvention Products, including but limited to YouTube, Twitter, Google +, FaceBook, Instagram, Amazon (the "DVDFab Accounts").

11

4.   Any third party service providers providing services to Defendants in connection with any of the DVDFab Domain Names, the DVDFab Websites or the DVDFab Accounts (whether or not specifically named in this Order, as long as any one or more of the Circumvention Products are being marketed, distributed, offered for sale and/or download, on the website, social media or other platform) including without limitation, web hosting providers, social media or other online service providers (including without limitation, Facebook, Twitter, YouTube and Google+), back-end service providers, web designers, distributors, search-based online advertising services (such as through paid inclusion, paid search results, sponsored search results, sponsored links, and Internet keyword advertising), and any banks, savings and loan associations, merchant account providers, payment processors and providers, credit card associations, or other financial institutions which receive or process payments or hold assets on Defendants' behalf (including without limitation, Visa, MasterCard, JCB, Bitcoin, Avangate Inc., Avangate B.V., PayPal, MyCommerce, DR MyCommerce, Inc., Alipay, Western Union, PayEase, IPS Ltd., Realypay, WorldPay, Opus Payments, Amazon Payments, WorldPay, Money Gram International, WebMoney, Discover, American Express, Visa Electron, Maestro, Solo, Laser, and Carte Bleue) for any Defendant or any of the DVDFab Domain Names or the DVDFab Websites, shall within three (3) days of receipt of this Order cease or disable providing such services to: (i) Defendants in relation to the Circumvention Products and/or any other products or services that circumvent the AACS Technology; and (ii) any and all of the DVDFab Domain Names, the DVDFab Websites or DVDFab Accounts.

5.   Any third party persons or entities who are members or participants in Defendants' "DVDFab affiliate program" (whereby affiliates earn commissions by promoting or selling the Circumvention Products) and who receive actual notice of this Order, shall within three (3) days

of receipt of this Order cease offering to the public, providing, promoting, selling or otherwise trafficking, on their websites or through any other means, in the Circumvention Products and/or any other products or services offered by Defendants that circumvent the AACS Technology.

6.   Service by ECF upon Defendant Feng Tao of this Default Judgment and Permanent Injunction once entered by the Court is deemed sufficient notice to Defendants, without the need for Defendants to sign any form of acknowledgement of service.

7.   Defendants shall provide a copy of this Permanent Injunction to their officers, agents, attorneys, servants, employees, and any persons in active concert or participation with them; and it is further

8.   Violation of this Permanent Injunction shall expose Defendants and all other persons bound by this Permanent Injunction to all applicable penalties, including contempt of Court.

9.   Within 14 days of the date the Court enters this Permanent Injunction, Defendants shall file and serve a report in writing and under oath setting forth in detail the manner and form with which Defendants have complied with the Permanent Injunction.

10.  I find there is no just reason for delay in entering this Permanent Injunction, pursuant to Fed. R. Civ. P. 54(a), I direct immediate entry of this Permanent Injunction.

11.  I shall retain jurisdiction of this action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and enforce the provisions of this Permanent Injunction.

SO ORDERED.

Dated: August 21, 2023
        New York, New York

Vernon S. Broderick
United States District Judge